Pages 1 - 9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SUSAN ILLSTON, JUDGE

MEYSAM MORADPOUR,                    )
                                     )
          Plaintiff,                 )
                                     )
  VS.                                ) NO. 21-cv-01486-SI
                                     )
VELODYNE LIDAR INC, et al.           )
                                     )
          Defendants.                )
_____)

ROBERT REESE,                        )
                                     )
          Plaintiff,                 )
  VS.                                ) NO. 21-cv-01736-VC
                                     )
VELODYNE LIDAR INC, et al.           )
                                     )
          Defendants.                )
_____)

CAROL E. NICK,                       )
                                     )
          Plaintiff,                 )
  VS.                                ) NO. 21-cv-01950-JST
                                     )
VELODYNE LIDAR INC, et al.           )
                                     )
          Defendants.                )
_____)

                              San Francisco, California
                              Friday, July 2, 2021

**TRANSCRIPT OF PROCEEDINGS**

Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
              Official Reporter, U.S. District Court

    (Appearances, next page)

**APPEARANCES**:   (By Zoom Webinar)

For Movants Diane and William P. Smith:

KAHN SWICK & FOTI LLP
912 Cole Street
Suite 251
San Francisco, California  94117

**BY:  RAMZI ABADOU, ESQ.**

For Defendants:

WILMER CUTLER PICKERING
   HALE AND DORR, LLP
One Front Street
Suite 3500
San Francisco, California  94111

**BY:  KEVIN P. MUCK, ESQ.**
**WILLIAM Z. BRENC, ESQ.**

**Friday - July 2, 2021**                                    **10:34 a.m.**

                    **P R O C E E D I N G S**

          **THE COURTROOM DEPUTY:**  Now calling Case No.

21-CV-1486, Maradpour versus Velodyne Lidar, Incorporated,

et al.

     Counsel, please state your appearances for the record,

starting with Velodyne.

          **MR. MUCK:**  This is Kevin Muck of WilmerHale for the

defendants.

          **MR. BRENC:**  And I'm William Brenc of WilmerHale, also

for defendant.

          **THE COURT:**  Good morning.

          **MR. BRENC:**  Good morning, Your Honor.

          **MR. ABADOU:**  And this is Ramzi Abadou from Kahn Swick

& Foti in San Francisco on behalf of the proposed lead

plaintiffs, Diane and William P. Smith.

          **THE COURT:**  Okay, good morning.

          **MR. ABADOU:**  Good morning.

          **THE COURT:**  Is that it?

          **THE COURTROOM DEPUTY:**  That is it.

          **THE COURT:**  Okay.  This is the motion to consolidate

case Nos. 21-1486, 21-1736, and 21-1950.  And appointment of

lead plaintiff, and appointment of lead counsel.

     No one disagrees, including the Court, about

consolidation.  So I'll grant the motion to consolidate.  And

it would be consolidated on the low number.

The issue before the Court today is, really, lead -- lead plaintiff and lead counsel.  The prevailing statutes and rules require that the presumptive lead plaintiff is the one with the biggest loss.  And there's -- appears to be no question in this case but what the -- Diane and William Smith -- Mr. Abadou's clients, correct?

**MR. ABADOU:**  That's correct.

**THE COURT:**  -- have the --

**MR. ABADOU:**  Correct, Your Honor.

**THE COURT:**  -- (Inaudible) loss here.  I was struck that all of the losses in this case are fairly large, compared with what we often see.  And the Smiths have a really impressive -- what is it?  Three and a half million dollars.

I would like to know a little bit about Mr. and Mrs. Smith, Mr. Abadou.  What -- can you tell me about them?

**MR. ABADOU:**  Sure, Your Honor.  Mr. and Mrs. Smith are a married couple.  They live in Scottsdale, Arizona. Mr. Smith was a truck driver for about 25 years, before an injury that left him as quadriplegic.

Ms. Smith takes care of her husband on a full-time basis. For many years, she worked in data entry, and also in real estate.  She started and owned a real estate company, and also a business selling hospital supplies.

And this was a significant investment on their part in a

company that they believed in, and that's why they're here, motivated to serve as lead plaintiffs in this matter.

Your Honor, they also submitted a PSLRA certification, which they are obviously required to do, pursuant to the statute.  In addition, also submitted -- and it's at Document 45-4 -- a declaration outlining their bona fides as proposed lead plaintiffs, their interest in serving as lead plaintiff, and their -- their understanding of the responsibility of serving as fiduciary on behalf of absent class members.

THE COURT:  Well, that's just such a huge amount of money.

MR. ABADOU:  It sure is.

THE COURT:  So he's a disabled truck driver.  And --

MR. ABADOU:  Correct, Your Honor.

THE COURT:  And the wife takes care of him, and has a real estate business?

MR. ABADOU:  Correct.

THE COURT:  That -- is that where the money came from?

MR. ABADOU:  The money came from, yes, their work, and also a settlement in connection with his injuries as a truck driver.

THE COURT:  Oh, I see.  All right.  Thank you.

And Mister -- Mr. Abadou, the name of your firm is -- tell me again?

**MR. ABADOU:**  It's Kahn Swick & Foti.

**THE COURT:**  And one of the concerns that the Court has to examine is the ability of lead counsel to do all the things that are required, which these days, in these kinds of actions, are really expensive matters.

**MR. ABADOU:**  Certainly.

**THE COURT:**  So I wanted to make sure that you feel your firm is in a position to do that.

**MR. ABADOU:**  We are, Your Honor.  I have been a securities practitioner for approximately 20 years.

I think many years ago, you and I actually sat on a PLI panel in San Francisco.

**THE COURT:**  Uh-huh.

**MR. ABADOU:**  I started my career at two bigger firms. Kahn Swick is a smaller boutique securities class action firm. We have offices in New Orleans, and New York, as well.  We handle primarily securities class actions, although we do some antitrust work and some consumer work.  But, primarily focus on circuits class actions.

We were the firm responsible for obtaining a resolution in the *Khoja v. Orexigen* matter that I argued before the Ninth Circuit.  We also resolved a case against Halliburton that went to the Supreme Court twice, for $100 million.

So we have the resources and the capability to litigate against the best of them, including Mr. Muck and his firm,

Your Honor.

**THE COURT:**  Because Mr. Muck and his firm are really good, as you probably know.

**MR. ABADOU:**  I know Mr. Muck well.

**THE COURT:**  So I don't have any concern about your intellectual ability to do it, or your legal skills to do it. The only thing that these days worries me is financial ability.  And you're confident that you have that.

**MR. ABADOU:**  We are absolutely confident, Your Honor. And we have been held adequate at the Rule 23 stage by courts throughout the country, including cases I recently worked on. And we are a firm that is willing to take a case to trial, as necessary.  And we have the capital and the resources to do that.

**THE COURT:**  Okay.  All right.  Well, does the loyal opposition want to say anything at this point?

**MR. MUCK:**  No --

**THE COURT:**  Uh-oh, you have frozen.

**MR. MUCK:**  No, Your Honor, we have no position on the appointment of either the lead plaintiffs or counsel.

**THE COURT:**  Okay.

**MR. MUCK:**  Apologize.  Is that better, Your Honor?  I apologize.

**THE COURT:**  It's now better, yeah.

**MR. MUCK:**  Okay.  Apologies.  This always happens

whenever I'm about to speak.

We have no position on either the appointment of either lead counsel or lead plaintiffs, Your Honor.  Thank you.

**THE COURT:**  Well, and if you did, one would have to question its -- question it, anyway.  So --

**MR. MUCK:**  Indeed.

**THE COURT:**  All right.  Well, I'm going to grant the motion.  I'm going to consolidate the actions.

How long do you want, Mr. Abadou, to file an amended consolidate complaint?

**MR. ABADOU:**  Your Honor, at Document 49, ECF entry 49, the Court already entered a stipulation on a briefing schedule.

**THE COURT:**  Oh, we did.

**MR. ABADOU:**  And we're happy to abide by that schedule.  That gives us 60 days from the order appointing us as lead counsel and our clients as lead plaintiff to file an amended or consolidated complaint.

**THE COURT:**  Okay.  So that would be -- assume it starts today.  Okay.  Let's say it's due September 1st, all right?

**MR. ABADOU:**  That sounds fine, Your Honor.

**THE COURT:**  Okay.  All right.  Because I'm ordering that, as of this moment.  I'll get you a written order as well.

Okay.  Thank you all very much.

**MR. ABADOU:**  Thank you, Your Honor.

**MR. MUCK:**  Thank Your Honor.

**MR. BRENC:**  Thank you, Your Honor.

(Proceedings concluded)

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Belle Ball*

_____

/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Tuesday, July 6, 2021