KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
WILLIAM Z. BRENC (SBN 318544)
william.brenc@wilmerhale.com
WILMER CUTLER PICKERING HALE
    AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1002
Facsimile: (628) 235-1001

IVAN PANCHENKO (admitted *pro hac vice*)
ivan.panchenko@wilmerhale.com
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

SARAH E. MACIEL (SBN 333410)
sarah.maciel@wilmerhale.com
WILMER CUTLER PICKERING HALE
    AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Defendants Velodyne Lidar, Inc.,*
*Anand Gopalan, Andrew Hamer, James A. Graf,*
*Michael Dee and Joseph B. Culkin*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEYSAM MORADPOUR, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VELODYNE LIDAR, INC., ANAND GOPALAN, ANDREW HAMER, JAMES A. GRAF, MICHAEL DEE, and JOSEPH B. CULKIN,<br><br>Defendants. | Case No. 3:21-cv-01486-SI<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br><br>Date:   May 6, 2022<br>Time:   10:00 a.m.<br>Place:  Courtroom 1, 17th Floor<br>Judge:  The Honorable Susan Illston |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................ 1

II.     PLAINTIFFS FAIL TO IDENTIFY CONTEMPORANEOUS FACTS SHOWING
        THAT ANY CHALLENGED STATEMENT CAN SUPPORT A CLAIM ..................... 2

        A.      The Opposition Underscores That Plaintiffs' Reliance on Mr. Hall's
                Unverified and Vague Accusations is Improper ........................................................ 2

        B.      The Opposition Confirms Plaintiffs' Inability to Plead an Actionable
                Misstatement Regarding Mr. Hall's Role at the Company ..................................... 4

                1.      Despite Being Specifically Challenged, Plaintiffs Identify No Facts
                        to Establish the Existence of a Plan to Remove Mr. Hall ........................... 4

                2.      The Opposition Cites No Facts to Show that the Results of the
                        Audit Committee Investigation Were Known Prior to February
                        2021, and as a Result There Was No Obligation to Disclose It
                        Sooner ................................................................................................................ 5

                3.      The Opposition Does Not Even Try to Argue That Any Statement
                        Was Actionable for Failure to Disclose Mr. Hall's Supposed
                        "Grave Concerns" ........................................................................................... 7

                4.      Plaintiffs Have No Cogent Response to Their Reliance on Puffery ........... 7

        C.      Plaintiffs Fail to Show that Any Projection Was Actionable ................................ 8

                1.      The Opposition Is Unable to Circumvent the Safe Harbor ........................ 8

                        a.      Plaintiffs Effectively Concede That the Projections Were
                                Identified as Forward-Looking and Accompanied by
                                Meaningful Cautionary Language ..................................................... 8

                        b.      None of the Challenged Statements is "Mixed" ............................ 8

                        c.      Plaintiffs' Tortured Interpretation of the Safe Harbor Is
                                Inconsistent with the Statutory Language, Their Own
                                Allegations, and Recent SEC Pronouncements ........................... 10

                2.      The Opposition Confirms That Plaintiffs Rely Entirely on Mr.
                        Hall's Conclusory Allegations and Hindsight, Which Are
                        Insufficient to Show Actual Knowledge of Falsity or Deliberate
                        Recklessness .................................................................................................... 11

        D.      The Opposition Cannot Salvage the Claim Regarding Ford ................................ 13

        E.      Plaintiffs Have Effectively Abandoned Their Internal Controls Claims .............. 15

III.    THE OPPOSITION CONFIRMS THAT THE "SCHEME" LIABILITY CLAIM
        AGAINST MESSRS. GRAF AND DEE MUST BE DISMISSED ................................ 16

IV.     PLAINTIFFS' ADDITIONAL SCIENTER THEORIES REMAIN BASELESS ........... 16

V.      CONCLUSION................................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bruce v. Suntech Power Holdings Co.*,
  64 F. Supp. 3d 1365 (N.D. Cal. 2014) ...................................................................... 15

*Camelot Event Driven Fund v. Alta Mesa Res., Inc.*,
  2021 WL 1416025 (S.D. Tex. Apr. 14, 2021) ........................................................... 15

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017)...................................................................................... 18

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) ....................................................................... 9

*Commc'ns Workers of Am. Plan for Employees' Pens. & Death Benefits v. CSK
    Auto Corp.*,
  525 F. Supp. 2d 1116 (D. Ariz. 2007)........................................................................ 16

*Constr. Laborers Pens. Tr. for S. Cal. v. CBS Corp.*,
  433 F. Supp. 3d 515 (S.D.N.Y. 2020)...................................................................... 6, 7

*Costabile v. Natus Med. Inc.*,
  293 F. Supp. 3d 994 (N.D. Cal. 2018) ......................................................................... 4

*Costanzo v. DXC Tech. Co.*,
  2020 WL 4284838 (N.D. Cal. July 27, 2020).............................................................. 10

*Elec. Workers Pens. Fund, Local 103, I.B.E.W. v. HP Inc.*,
  2021 WL 4199273 (N.D. Cal. Sept. 15, 2021) ............................................................. 3

*Glazer Cap. Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008)...................................................................................... 15

*Habelt v. iRhythm Techs., Inc.*,
  2022 WL 971580 (N.D. Cal. Mar. 31, 2022)................................................................ 9

*Hampton v. Aqua Metals, Inc.*,
  2020 WL 6710096 (N.D. Cal. Nov. 16, 2020).............................................................. 8

*Higginbotham v Baxter Int'l Inc.*,
  495 F.3d 753 (7th Cir. 2007)........................................................................................ 6

*In re Cloudera, Inc. Sec. Litig.*,
  2021 WL 2115303 (N.D. Cal. May 25, 2021) ........................................................ 10, 11

*In re Connetics Corp. Sec. Litig.*,
  542 F. Supp. 2d 996 (N.D. Cal. 2008) .......................................................................... 3

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ................................................................................ 11

*In re Fastly, Inc. Sec. Litig.*,
2021 WL 5494249 (N.D. Cal. Nov. 23, 2021) ..................................................... 4, 7

*In re HP ERISA Litig.*,
2015 WL 3749565 (N.D. Cal. June 15, 2015), *aff'd sub nom.*,
*Laffen v. Hewlett-Packard Co.*, 721 F. App'x 642 (9th Cir. 2018) ...................................... 6

*In re Juniper Networks, Inc. Sec. Litig.*,
2004 WL 547598 (N.D. Cal. Mar. 11, 2004) ....................................................... 3

*In re Mattel, Inc. Sec. Litig.*,
2021 WL 1259405 (C.D. Cal. Jan. 26, 2021) ....................................................... 2

*In re Mindbody, Inc. Sec. Litig.*,
489 F. Supp. 3d 188 (S.D.N.Y. 2020) ................................................................ 16

*In re Nimble Storage, Inc. Sec. Litig.*,
2017 WL 4355570 (N.D. Cal. Oct. 2, 2017) ....................................................... 13

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) .............................................................................. 9

*In re QuantumScape Sec. Litig.*,
2022 WL 137729 (N.D. Cal. Jan. 14, 2022) ...................................................... 2, 9

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ......................................................................... 15, 17

*In re Stillwater Cap. Partners Inc. Litig.*,
858 F. Supp. 2d 277 (S.D.N.Y. 2012) ................................................................ 17

*Iron Workers Local 580 Jt. Funds v. NVIDIA Corp.*,
522 F. Supp. 3d 660 (N.D. Cal. 2021) .............................................................. 13

*Karinski v. Stamps.com, Inc.*,
2020 WL 281716 (C.D. Cal. Jan. 17, 2020) ......................................................... 6

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......................................................................... 6, 7

*Lopes v. Fitbit, Inc.*,
2020 WL 1465932 (N.D. Cal. Mar. 23, 2020), *aff'd*,
848 F. App'x 278 (9th Cir. 2021) ...................................................................... 14

*Luna v. Marvell Tech. Grp.*,
2017 WL 2171273 (N.D. Cal. May 17, 2017) ..................................................... 18

*McGovney v. Aerohive Networks, Inc.*,
2019 WL 8137143 (N.D. Cal. Aug. 7, 2019)..............................................................13, 14

*McIntire v. China MediaExpress Holdings, Inc.*,
927 F. Supp. 2d 105 (S.D.N.Y. 2013)............................................................................17

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008).........................................................................................6

*Mulderrig v. Amyris, Inc.*,
492 F. Supp. 3d 999 (N.D. Cal. 2020) ............................................................................9

*Mulligan v. Impax Labs., Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) ..............................................................................3

*Nieman v. Duke Energy Corp.*,
2013 WL 4004274 (W.D.N.C. July 26, 2013) ................................................................5

*Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*,
2018 WL 3126393 (N.D. Cal. June 26, 2016) ...........................................................4, 13

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021)........................................................................................17

*Rodriguez v. Gigomon Inc.*,
325 F. Supp. 3d 1041 (N.D. Cal. 2018) ..........................................................................9

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001)....................................................................................13, 17

*Sakkal v. Anaplan, Inc.*,
2021 WL 3885987 (N.D. Cal. Aug. 31, 2021).............................................................7, 17

*Sayce v. Forescout Techs., Inc.*,
2021 WL 1146031 (N.D. Cal. Mar. 25, 2021)................................................................12

*Sayce v. Forescout Techs., Inc.*,
2021 WL 4594768 (N.D. Cal. Oct. 6, 2021)...................................................................12

*Sgarlata v. PayPal Holdings, Inc.*,
2018 WL 6592771 (N.D. Cal. Dec. 13, 2018) ...............................................................18

*Smith v. NetApp, Inc.*,
2021 WL 1233354 (N.D. Cal. Feb. 1, 2021) ..................................................................11

*Strome v. DBMK Enterprises, Inc.*,
2014 WL 4437777 (N.D. Cal. Sept. 9, 2014) ..................................................................3

*Van Noppen v. InnerWorkings, Inc.*,
136 F. Supp. 3d 922 (N.D. Ill. 2015) ...............................................................................2

*Wanca v. Super Micro Computer, Inc.*,
    2018 WL 3145649 (N.D. Cal. June 27, 2018) ................................................................ 15

*Weston Family P'ship LLLP v. Twitter, Inc.*,
    --- F.4th ---, 2022 WL 853252 (9th Cir. Mar. 23, 2022)................................. 7, 8, 11, 15

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 1190-91 (9th Cir. 2021) ........................................................................ 8, 9

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)......................................................................................... 2

**STATUTES AND RULES**

Securities Exchange Act of 1934

        Section 10(b), 15 U.S.C. § 78(j)(b).......................................................................... 18

        Section 20(a), 15 U.S.C. § 78t-1 ............................................................................. 18

        Section 21E, 15 U.S.C. § 78u-5 ................................................................................. 8

Federal Rules of Civil Procedure

        Rule 11 ................................................................................................................. 1, 3

**OTHER AUTHORITIES**

SEC Release Nos. 33-11048; 34-94546; IC-34549 (Mar. 30, 2022)
        (https://www.sec.gov/rules/proposed/2022/33-11048.pdf)............................................. 10

Coates, Harvard Law School, *SPAC Law and Myths* (Feb. 11, 2022).......................................... 10

## I.    INTRODUCTION

In their motion to dismiss ("Motion" or "Mot." [ECF No. 102]), Defendants[1] challenged Plaintiffs to identify *particularized, contemporaneous facts* – as opposed to hindsight, bare conclusions, or speculation lifted from someone else's unverified complaint – to state a claim for securities fraud in accordance with the PSLRA.  Far from meeting that challenge, Plaintiffs' opposition ("Opposition" or "Opp." [ECF No. 105]) confirms their inability to plead facts showing that any statement was false when made, or that any Defendant acted with scienter.

At the outset, the Opposition is unable to justify Plaintiffs' wholesale reliance on David Hall's hopelessly vague and fact-free allegations – *e.g.*, asserting long after the fact that he expressed unspecified "concerns" to unspecified people at unspecified times, or that projections he himself endorsed in SEC filings were unachievable – or square that reliance with the PSLRA and Fed. R. Civ. P. 11(b).  Indeed, the Opposition concedes that Plaintiffs have never even spoken to Mr. Hall (or, apparently, anyone else who worked at Velodyne) to clarify his nebulous claims or ascertain the extent (if any) of his personal knowledge.  But even if Plaintiffs could clear that hurdle, nowhere in the 30-page Opposition do they point to *facts* showing that specific Class Period statements regarding Mr. Hall's anticipated role at Velodyne, its projected revenues, its relationship with Ford, or the Company's internal controls were false when made.  And the Opposition does not even try to show what facts were known by each Individual Defendant at the time of each challenged statement that would give rise to a strong inference of scienter.  Instead, the Opposition – like the CAC – tries to obscure that pleading failure by indiscriminately lumping all "Defendants," and multiple statements made over a period of five months, together.

The Opposition also fails to circumvent the PSLRA's safe harbor for forward-looking statements.  Plaintiffs' argument that the September 2020 merger should be treated as an "initial public offering" is irreconcilable with the statute.  It is also irreconcilable with the CAC, which alleges that the Company's stock traded in an "open, well-developed and efficient" market long before the transaction they want to pretend was an "IPO."  In addition, new proposed SEC rules make clear that, at present, the safe harbor does apply to transactions such as the September 2020

---

[1] Unless otherwise specified, all defined terms have the same meaning as in the Motion.

merger.  In light of that, and because the Opposition effectively concedes the relevant statements were sufficiently identified and accompanied by cautionary language, the safe harbor provides a separate basis for dismissing claims based on projections and other forward-looking statements.

In sum, it is clear that the CAC does not satisfy the PSLRA.  Given that Plaintiffs have now had multiple pleading opportunities and the Opposition does not identify any additional facts that could be alleged, the CAC should be dismissed without further leave to amend.

## II.   PLAINTIFFS FAIL TO IDENTIFY CONTEMPORANEOUS FACTS SHOWING THAT ANY CHALLENGED STATEMENT CAN SUPPORT A CLAIM

### A.   The Opposition Underscores That Plaintiffs' Reliance on Mr. Hall's Unverified and Vague Accusations is Improper

Plaintiffs do not dispute that, because their CAC is premised almost entirely on Mr. Hall's claims, the PSLRA requires them to: (1) plead particularized facts establishing his personal knowledge of the relevant allegations; and (2) demonstrate that those allegations are indicative of falsity and scienter.  Mot. at 10-12.  The Opposition is unable to show that Plaintiffs satisfy these requirements with respect to Mr. Hall's unverified (and nebulous) accusations.

To begin, the threshold issue is not one of "reliability" – as Plaintiffs misleadingly suggest (Opp. at 18) – but whether the CAC alleges facts showing Mr. Hall's personal knowledge of the relevant matters.  As discussed in more detail below, the CAC is devoid of such facts.  Simply referring to Mr. Hall's prior position with Velodyne (Opp. at 17) is insufficient, for reasons Plaintiffs make no attempt to refute.  *See* Mot. at 11-12.  Nor is it enough to note that Mr. Hall was once "deeply involved in all aspects of Velodyne's business."  Opp. at 18; *see also* CAC ¶¶ 369-370.  That statement does not satisfy Plaintiffs' burden to show that Mr. Hall has personal knowledge of the *specific allegations* attributed to him.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009) (allegations that witnesses "worked extensively" on certain matters insufficient to show their accounts were "based on … personal knowledge).[2]

---

[2] Plaintiffs' cited authorities (Opp. at 18-19) emphasize how far short of the mark the CAC falls. *See In re QuantumScape Sec. Litig.*, 2022 WL 137729, at *6, 9 (N.D. Cal. Jan. 14, 2022) (report based on interviews of employees that contained detailed *facts* regarding pertinent issues, relied on the "overlapping and corroborative" accounts of *nine* employees, and was consistent with other available information); *In re Mattel, Inc. Sec. Litig.*, 2021 WL 1259405, at *1-3, 8 (C.D. Cal. Jan. 26, 2021) (detailed allegations regarding matters the witness "personally observed or surmised through dependable sources"); *Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 946

Moreover, as set forth more fully in the following sections, Mr. Hall merely offers vague averments that are not indicative of falsity or scienter. *See* Mot. at 12. The problem is not merely that (as Plaintiffs acknowledge) his unverified "accusations remain allegations and are not yet proven facts." Opp. at 3. His allegations do not "provide the 'who, what, when, where, and how' required by the PSLRA." *In re Juniper Networks, Inc. Sec. Litig.*, 2004 WL 547598, at *3 (N.D. Cal. Mar. 11, 2004); *see also Elec. Workers Pens. Fund, Local 103, I.B.E.W. v. HP Inc.*, 2021 WL 4199273, at *8 (N.D. Cal. Sept. 15, 2021). And Plaintiffs' attempt to rehabilitate their source by claiming his "concerns" supposedly "c[a]me to fruition" (Opp. at 19) gets them nowhere. As the CAC makes clear, those "concerns" were only voiced long after he left Velodyne, and the Opposition identifies no *facts* establishing that he ever expressed such concerns during the Class Period, when they were expressed, the nature of the concerns, and to whom they were expressed.

The absence of such facts highlights the failure to comply with Plaintiffs' "nondelegable" duty under Fed. R. Civ. P. 11(b). *See In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005-06 (N.D. Cal. 2008); *see also* Mot. at 10-11. Plaintiffs concede (Opp. at 3, 17) they have *never* spoken to Mr. Hall. Their response – that the "PSLRA discovery stay" prohibits them from "depos[ing]" Mr. Hall (*id.* at 3 n.3) – is a *non sequitur*. Plaintiffs in PSLRA cases routinely speak with (and obtain information from) witnesses without deposing them. The fact that Plaintiffs chose not to speak with Mr. Hall (or *vice versa*) does not excuse them from complying with the PSRLA or Rule 11. And Plaintiffs' claim to have spoken with Mr. Hall's counsel (Opp. at 3 n.3) is unavailing because: (1) no allegation concerning any such discussion appears in the CAC (*see Strome v. DBMK Enterprises, Inc.*, 2014 WL 4437777, at *4 (N.D. Cal. Sept. 9, 2014)); and (2) more notably, Plaintiffs do not suggest that meeting provided them with any facts to support their claims. Put simply, Plaintiffs have chosen to sue multiple defendants for securities fraud, and they cannot shirk their statutory responsibility to provide the requisite facts by complaining that their putative source refused – or was unable – to support his conclusory accusations.

(N.D. Ill. 2015) (witnesses recounted conversations with CEO describing "false-invoicing scheme"); *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 962 (N.D. Cal. 2014) (allegations from "thirteen confidential witnesses who … provided consistent accounts of" facts, including matters that they heard and "witnessed first hand").

**B.** **The Opposition Confirms Plaintiffs' Inability to Plead an Actionable Misstatement Regarding Mr. Hall's Role at the Company**

**1.** **Despite Being Specifically Challenged, Plaintiffs Identify No Facts to Establish the Existence of a Plan to Remove Mr. Hall**

The CAC contains no facts to support the central theory that Defendants implemented a plan to "remove" Mr. Hall from Velodyne beginning in July 2020 (Mot. at 13-14), and the Opposition offers no real argument to the contrary. Nor do Plaintiffs dispute that Mr. Hall's bare accusations of a "power grab" designed to "hijack" the Company and "push him out" are ineffective to plead falsity or scienter. *Id*. at 13-14. And Plaintiffs do not claim to plead facts showing that Mr. Hall's decision to resign was the product of any "plan." *Id.*

Having abandoned a linchpin of their case, Plaintiffs focus on an alleged September 2020 meeting attended by Mr. Hamer (but no other Defendant) and Sheetal Patel. Opp. at 6, 15-16. But they rely on *third-hand hearsay* (repeating Mr. Hall's unverified version of what his wife supposedly heard from Ms. Patel) without speaking to Ms. Patel or pleading facts to corroborate an account of a meeting as to which Plaintiffs and Mr. Hall lack personal knowledge. *See Costabile v. Natus Med. Inc.*, 293 F. Supp. 3d 994, 1010 (N.D. Cal. 2018). And unexplained "discussions with Patel's counsel" (Opp. at 17) are no substitute for facts establishing personal knowledge, reliability, and what was actually discussed. *See Costabile*, 293 F. Supp. 3d at 1010.

More fundamentally, Plaintiffs fail to show that the account is indicative of falsity or scienter. *See* Mot. at 12. The Opposition argues that unspecified revisions to Mr. Hall's "sign off" authority over indeterminate aspects of "compensation" and "audit[s]" were at odds with statements that he would "remain[] deeply involved in all aspects of [the] business" (Opp. at 6, 15-16 n.12), but offers no facts to show any contradiction. *See* Mot at 12; *see also In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249, at *11 (N.D. Cal. Nov. 23, 2021). Indeed, the Company clearly *disclosed* before the merger that *only* independent directors (and not Mr. Hall) would serve on the Audit and Compensation Committees. *See, e.g.*, Ex. F at 237-38. Moreover, nothing in the third-hand account of the September meeting suggests that any Defendant believed the revisions were inconsistent with a challenged statement. *See, e.g.*, *Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*, 2018 WL 3126393, at *8 (N.D. Cal. June 26, 2016). And Plaintiffs have no answer to the fact

that sending the proposed revisions to Mr. Hall for *his advance review and approval* is incompatible with an inference of scienter.  *See* Mot. at 15.

### 2. The Opposition Cites No Facts to Show that the Results of the Audit Committee Investigation Were Known Prior to February 2021, and as a Result There Was No Obligation to Disclose It Sooner

The Opposition fares no better with the argument that the Audit Committee investigation should have been disclosed earlier.  Opp. at 13-16.  Plaintiffs begin by misstating their own pleading, arguing that the investigation began "no later than November 2020" (Opp. at 7) when the CAC alleges it "commenced on or around December 9, 2020" (and quotes Mr. Hall to the same effect).  CAC ¶ 118 & n.24; *see also* Mot. at 15.  That is important, because it means that only two challenged statements could even potentially be actionable: comments attributed solely to Mr. Gopalan on January 7 (CAC ¶¶ 377-378) and January 12, 2021 (*id.* ¶ 383).

Plaintiffs do not – and cannot – allege that Mr. Gopalan (or anyone else) was aware of the outcome of the investigation on January 7 or 12.  The claim that "Defendants were actively working to remove Hall" and "retained outside counsel to achieve that goal" (Opp. at 14) is devoid of supporting facts and again misstates the CAC: it was the *independent Audit Committee*, not "Defendants," who retained Keker (CAC ¶¶ 6, 23, 61), and the contention that Keker was hired to "remove Hall" is pulled from thin air.  Indeed, the moving papers noted that Plaintiffs' conclusory characterization of the investigation as "pretextual" is belied by the fact that it was run by an *independent committee* and *highly regarded counsel* with no incentive to tarnish its reputation (*see* Mot. at 16), and the Opposition does not contest that point.[3]

Plaintiffs are thus left to argue that the mere fact of a pending investigation with an uncertain outcome should have been disclosed (Opp. at 15), but that is contrary to law.  *See* Mot. at 16 (citing cases).  Plaintiffs' attempt to distinguish the relevant cases on the grounds that they did not involve a senior executive (Opp. at 15) is baseless.  The underlying rationale applies with equal force regardless of the subject of the investigation: "Prudent managers conduct inquiries

---

[3] Plaintiffs' citation to *Nieman v. Duke Energy Corp.*, 2013 WL 4004274 (W.D.N.C. July 26, 2013), highlights their pleading failure. The *Nieman* plaintiffs pleaded specific facts – including internal documents – showing defendants' decision to remove the CEO well before disclosure. *Id.* at *1-4.  It is precisely the absence of such allegations that dooms Plaintiffs' claim here.

rather than jump the gun with half-formed stories as soon as a problem comes to their attention." *Higginbotham v Baxter Int'l Inc.*, 495 F.3d 753, 758, 760-61 (7th Cir. 2007).[4] !Plaintiffs cite no authority to support a "special rule" for investigations involving key executives, nor could they: no such rule exists. *See Constr. Laborers Pens. Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 536-38 (S.D.N.Y. 2020) (rejecting claim that company was obligated to disclose unresolved investigation involving its CEO and Chairman). As the *CBS Corp.* court explained:

> It would have been strange – and irresponsible – for CBS to publicly predict the outcome of its independent investigation into [the CEO and Chairman] before the investigation was complete or to disclose that [he] was at risk of being ousted ….

*Id*. at 537. The same analysis and holding apply here.

Nor does *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), salvage the claim. *Khoja* applied the well-established rule that if a statement addresses a topic, it may not omit existing information rendering the discussion of that topic materially misleading. *Id*. at 1010-11 (misleading for drug company to tout interim results without concurrently disclosing that FDA considered those results unreliable). Nothing comparable is alleged here: the CAC does not plead that the outcome of the investigation was known on January 7 or 12, and Plaintiffs identify nothing said on either date that mentioned Mr. Hall or would have triggered a duty to disclose an uncertain inquiry.[5] As the Ninth Circuit has made clear – in a case Plaintiffs ignore – there is no claim under these circumstances. *See Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1071 (9th Cir. 2008); *see also CBS Corp.*, 433 F. Supp. 3d at 536-38.[6] And to the extent Plaintiffs argue that *earlier* statements about Mr. Hall imposed a freestanding duty to disclose the investigation regardless of what was said on January 7 or 12, that is contrary to controlling law.

---

[4] *See also In re HP ERISA Litig.*, 2015 WL 3749565, at *8 (N.D. Cal. June 15, 2015) ("[T]here is little doubt that [the company] would have been subject to claims of imprudence had it disclosed uninvestigated allegations."), *aff'd sub nom.*, *Laffen v. Hewlett-Packard Co.*, 721 F. App'x 642 (9th Cir. 2018).

[5] For the same reasons, *Karinski v. Stamps.com, Inc.*, 2020 WL 281716 (C.D. Cal. Jan. 17, 2020), is inapposite. There, plaintiff alleged specific facts showing that at the time defendants touted a strong relationship with the USPS, they were aware the USPS had expressed its displeasure with the company. *Id*. at *12-13. Again, nothing similar is alleged here.

[6] There is only one statement made on January 7 or 12 that Plaintiffs try to tie to Mr. Hall: "there is no change in our fundamental outlook for the future." Opp. at 14. But because Plaintiffs do not plead that any Defendant knew or believed that the investigation would change Velodyne's outlook, the statement is not actionable. *See CBS Corp.*, 433 F. Supp. 3d at 536-38.

*See Weston Family P'ship LLLP v. Twitter, Inc.*, --- F.4th ---, 2022 WL 853252, at \*6 (9th Cir. Mar. 23, 2022) (omission is not actionable unless it renders a statement materially misleading; "companies do not have an obligation to offer an instantaneous update of every internal development"); *see also CBS Corp.*, 433 F. Supp. 3d at 536-38 (fact that the company previously stressed CEO's importance did not require disclosure of pending investigation).

Finally, even if Plaintiffs could plead that the investigation should have been disclosed, they identify no facts showing that any Defendant knew of or deliberately disregarded such a disclosure duty. Scienter is therefore lacking. *See, e.g.*, *Fastly*, 2021 WL 5494249, at \*18.

**3.      The Opposition Does Not Even Try to Argue That Any Statement Was Actionable for Failure to Disclose Mr. Hall's Supposed "Grave Concerns"**

Although Plaintiffs make two passing references to the allegation that Mr. Hall conveyed "grave concerns" regarding Velodyne's business at unspecified times to unspecified persons (Opp. at 10, 19), they do not contest that it is far too vague to plead falsity or scienter. *See* Mot. at 17; *see also Weston*, 2022 WL 853252, at \*5 (allegations are insufficient where they are not "accompanied by the who, what, when, where, and how of the misconduct charged"). Nor do Plaintiffs have any answer to the fact that Mr. Hall himself signed the challenged October 19, 2020 Registration Statement even though his "concerns" were not disclosed. Mot. at 17. The Opposition's silence is a further concession that the allegation cannot support a claim.

**4.      Plaintiffs Have No Cogent Response to Their Reliance on Puffery**

Plaintiffs cannot dispute that many of the challenged statements are the types of comments courts routinely find to be puffery (Mot. at 17-18), and they make no effort to distinguish the cases cited by Defendants. *Id*. at 18 & n.11. Rather, the Opposition again miscites *Khoja*, this time for the ostensible proposition that puffery may be "material" (Opp. at 13 n.7) – even though *Khoja* says no such thing and did not even address puffery. Plaintiffs' argument is contrary to governing law, as the Ninth Circuit recently reiterated. *Weston*, 2022 WL 853252, at \*5. And the throwaway claim that the statements are objectively verifiable (Opp. at 14 n.8) is unaccompanied by any analysis of what was actually said. *Cf. Sakkal v. Anaplan, Inc.*, 2021 WL 3885987, at \*5 (N.D. Cal. Aug. 31, 2021) (finding substantially similar statements to be non-actionable puffery).

C.    **Plaintiffs Fail to Show that Any Projection Was Actionable**

1.    **The Opposition Is Unable to Circumvent the Safe Harbor**

a.    **Plaintiffs Effectively Concede That the Projections Were Identified as Forward-Looking and Accompanied by Meaningful Cautionary Language**

All of the challenged statements regarding projected results were identified as forward-looking and accompanied by meaningful cautionary language.  Mot. at 18-19.  Plaintiffs largely concede the point: with just two exceptions (oral statements on July 2 and September 1, 2020), they make no effort to dispute that the projections were properly identified, or that the cautionary language was adequate.  *Id.* at 18-19 & n.12; *see also Weston*, 2022 WL 853252, at *9.  In fact, their entire argument in that regard is one sentence – "Defendants' projections were also not accompanied by 'meaningful' cautionary language" (Opp. at 23) – which is insufficient to "vitiate" the safe harbor.  *See Wochos v. Tesla, Inc.*, 985 F.3d 1180 1190-91 (9th Cir. 2021).

As to the July 2 and September 1 oral statements (Opp. at 23), the safe harbor is invoked "if the oral statement identifies a readily available document where the cautionary statements may be found."  *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *5 (N.D. Cal. Nov. 16, 2020) (citations omitted).  On both dates, listeners were directed to specific written presentations (Exs. Q and R) identifying the projections as forward-looking and containing appropriate risk factors (Mot. at 19).  Nothing more was required.  *See Hampton*, 2020 WL 6710096, at *5.

b.    **None of the Challenged Statements is "Mixed"**

Unable to dispute that the projections are forward-looking (Mot. at 18), Plaintiffs argue that some of the statements were "mixed" because they also referred to revenues estimated to be received from existing "signed and awarded" contracts.  *See* Opp. at 22.  The Ninth Circuit rejected a similar argument in *Wochos*, emphasizing that a statement is forward-looking if, when viewed in its entirety, it expresses an expectation of future results – even if it also refers to underlying assumptions.  985 F.3d at 1191-92; *see also id*. at 1195-96.[7]  That is the case here.  According to Plaintiffs, the statements relate to "revenue targets" and "[e]stimated revenues"

---

[7] As the Ninth Circuit noted, every forward-looking statement "*necessarily* reflects an implicit assertion" that it is consistent with "current circumstances," and such underlying assumptions are protected by the safe harbor.  *Wochos*, 985 F.3d at 1192 (citing 15 U.S.C. § 78u-5(i)(1)(D)).

from signed contracts (*see* Opp. at 22; citations omitted) and allegedly were false *because* the assumed *projections* of *future revenues* from the contracts were "untenable" or unrealistic. *See id*. at 8, 19-20. Thus, the statements are forward-looking. *See Wochos*, 985 F.3d at 1192; *see also Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at *11-12 (N.D. Cal. Mar. 31, 2022) (statements regarding contract pricing and negotiations were protected by safe harbor because they were assumptions underlying projections of, *inter alia*, "the company's revenue streams").[8]

Even if some of the statements could be viewed as "mixed," the Opposition identifies no facts showing that the "signed and awarded" contracts were misstated. Plaintiffs do not dispute that Velodyne entered into such contracts, or that the numbers of contracts were accurately reported; instead, they argue the contracts were not binding. *See* Opp. at 22; *see also* CAC ¶¶ 33, 34. But the Opposition ignores that Velodyne disclosed *from the beginning of the Class Period* that its contracts reflect "agreed terms and conditions of supply," are not binding obligations, and "do not reflect firm orders unless and until firm orders are received." Mot. at 22 & n.16 (quoting CAC ¶ 204); *see also* CAC ¶ 208 (explaining that contracts may "move[] in or out" of the "pipeline"); Ex. F at 199 (explaining that agreements "generally provide for one-year demand forecasts," and "[a]fter the first year, we and the customer have the ability to evaluate need and price for subsequent forecasts"). Needless to say, a statement cannot be misleading for "omitt[ing]" facts that were actually disclosed. *See, e.g.*, *Habelt*, 2022 WL 971580, at *14.[9] And any suggestion that those disclosures were not sufficiently prominent (Opp. at 24 n.26) is both belied by the documents cited in the CAC and contrary to law. *See, e.g.*, *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1066 (N.D. Cal. 2012).

---

[8] The cases cited by Plaintiffs (Opp. at 22-23) are inapposite because, unlike here, they involved representations of existing or historical facts that were purportedly false *apart from* statements of future expectations. *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141-43 (9th Cir. 2017) (representation of "current and past" state of sales pipeline); *Quantumscape*, 2022 WL 137729, at *14 (statements regarding advantages of existing technology); *Rodriguez v. Gigomon Inc.*, 325 F. Supp. 3d 1041, 1050 (N.D. Cal. 2018) (statements regarding existing state of deferred service, backlog and linearity); *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1021 (N.D. Cal. 2020) (statements regarding "current revenues and … pipeline").

[9] Similarly meritless is the argument (Opp. at 24 n.26) that contracts included products in development. Putting aside that Plaintiffs identify no inconsistent statement, Velodyne made clear that its estimates (going out four years) included assumptions regarding future product development and identified the associated risks. *See, e.g.*, Ex. I at 45-52, 64, 142-43.

### c. Plaintiffs' Tortured Interpretation of the Safe Harbor Is Inconsistent with the Statutory Language, Their Own Allegations, and Recent SEC Pronouncements

Equally futile is the claim that the "plain language" of the safe harbor's exclusion for "initial public offerings" applies to the September 2020 merger. Opp. at 21-22. To the contrary, a "merger" is generally considered to be distinct from an IPO. *See Costanzo v. DXC Tech. Co.*, 2020 WL 4284838, at \*7 (N.D. Cal. July 27, 2020). And the *CAC itself* dispels any notion that the September 2020 merger could be recast as an IPO: (1) Plaintiffs allege that, at the time of the merger, the Company's stock had *been publicly traded for almost two years* (CAC ¶ 83); (2) they sue on behalf of purchasers who acquired publicly traded shares nearly *four months before* the merger (*id*. ¶ 3); and (3) they allege that, *well before the merger*, the market for the Company's stock was "open, well-developed and efficient" (*id*. ¶ 459). *See* Mot. at 20. Plaintiffs are unable to explain (much less cite authority to support) how a merger could be deemed an "initial public offering" long after the issuer's stock was trading in an "open, well-developed and efficient" market. *See Costanzo*, 2020 WL 4284838, at \*7 (merger was not an IPO for purposes of the safe harbor, despite plaintiffs' argument that it "ha[d] all the salient hallmarks of an [IPO]").[10]

Moreover, the SEC Staff has now disposed of Plaintiffs' argument by proposing new rules that, if adopted, would change the definition of "blank check company" to make the safe harbor inapplicable to future "de-SPAC" transactions. *See* SEC Release Nos. 33-11048; 34-94546; IC-34549 (Mar. 30, 2022) (https://www.sec.gov/rules/proposed/2022/33-11048.pdf). Whether or not those changes ultimately go into effect, it underscores the SEC's view that, *as the law currently exists*, the September 2020 merger is not exempt from the safe harbor.[11]

---

[10] The only "authority" Plaintiffs cite – an article by the SEC's former General Counsel (Opp. at 21 n.24) – is contrary to their "plain language" argument, opining that "initial public offering" may be "at least ambiguous" enough to permit some de-SPAC transactions to be included. *See* Coates, Harvard Law School, *SPAC Law and Myths* (Feb. 11, 2022), at 20. Moreover, the author's thesis that a de-SPAC transaction is akin to an IPO because it is "the introduction of a new company to the public" (*id*.) is: (1) legally unavailing given the statutory language (*Costanzo*, 2020 WL 4284838, at \*7); and (2) inapplicable *in this case* given Plaintiffs' allegations that the market for the stock was "open, well-developed and efficient" *before* the merger (CAC ¶ 459).

[11] Even if the merger were exempt, the projections made thereafter (CAC ¶¶ 322, 336-337, 353-356) would still be subject to the safe harbor. *See In re Cloudera, Inc. Sec. Litig.*, 2021 WL 2115303, at \*18 & n.4 (N.D. Cal. May 25, 2021).

## 2. The Opposition Confirms That Plaintiffs Rely Entirely on Mr. Hall's Conclusory Allegations and Hindsight, Which Are Insufficient to Show Actual Knowledge of Falsity or Deliberate Recklessness

Because the revenue projections were identified as forward-looking and accompanied by meaningful cautionary language, Plaintiffs' arguments regarding "actual knowledge" of falsity (Opp. at 20-24) are irrelevant as a matter of law. *See, e.g.*, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112-13 (9th Cir. 2010). Nonetheless, the Opposition confirms that Plaintiffs cannot satisfy the PSLRA's rigorous standards for pleading actual knowledge.

The Opposition actually underscores Plaintiffs' pleading failure by eschewing any real attempt to examine specific projections and show that they were known to be false *when made*. Thus, while Plaintiffs broadly assail 2020 revenue forecasts of $100-101 million (Opp. at 8, 10, 19-20), the Opposition cites no contemporaneous facts suggesting that anyone made the 2020 forecast knowing it could not be achieved. *See, e.g.*, *Smith v. NetApp, Inc.*, 2021 WL 1233354, at *7-8 (N.D. Cal. Feb. 1, 2021). Instead, Plaintiffs rely on Mr. Hall's conclusory *post hoc* assertion that unspecified "Defendants" somehow knew at unspecified times that Velodyne "would miss its 2020 projections." Opp. at 21-22. The Opposition cites no authority suggesting such nebulous averments suffice to plead actual knowledge, and cannot meaningfully distinguish the authorities discussed in the moving papers. *See* Mot. at 21-22. And while Plaintiffs focus on Mr. Hall's alleged disagreement with the Board on November 16, 2020 (Opp. at 20), they ignore that he does *not* claim to have expressed reservations about the *2020 forecast* at that time. *See id.*[12]

Plaintiffs also continue to rely on results that Velodyne *eventually* reported in the first quarter of 2021 (*see* Opp. at 21, 24), ignoring that "[t]he fact that a prediction proves to be wrong in hindsight," does not mean it was "untrue when made" (much less known to be false). *See, e.g.*, *Cloudera,* 2021 WL 2115303, at *11 (citation and quotation omitted). The fact that the last 2020 projection was made two months before the Company announced a modest revenue shortfall for the year (*see* Opp. at 21 & n.22) is likewise unavailing, as the Ninth Circuit has repeatedly (and recently) confirmed. *See Weston*, 2022 WL 853252, at *7 ("temporal proximity" is not sufficient

---

[12] Plaintiffs also gloss over the fact that Mr. Hall appears to have recanted his conclusory claim regarding the 2020 forecast and now only alleges that Velodyne "overstat[ed] revenue projections for *2021 and beyond*." Opp. at 20 (quoting CAC ¶ 16; emphasis added).

REPLY MEM. ISO
MOTION TO DISMISS                   - 11 -                   No. 3:21-cv-01486-SI

to plead scienter).  And while Plaintiffs purport to express doubt that the eventual 2020 revenue miss was attributable to the COVID-19 surge in December 2020 (Opp. at 21), the Opposition does not cite a single *fact* to support Plaintiffs' conjecture.  *See* Mot. at 22; *see also Sayce v. Forescout Techs., Inc.*, 2021 WL 1146031, at *6 (N.D. Cal. Mar. 25, 2021).

Further highlighting Plaintiffs' pleading failure are their misrepresentations of the record. For example, the Opposition avers that Defendants "admitted" the 2020 revenue miss was due to "lost customer contracts they previously claimed were 'signed and awarded'" (Opp. at 21), but that claim is pure fiction – and, unsurprisingly, the paragraphs of the CAC cited as putative support say nothing of the sort.  Even more audacious is Plaintiffs' effort to justify their reliance on Mr. Hall with the specious claim that Defendants "asked this Court to accept [a press release by Mr. Hall] as true." *Id*. at 20.  Defendants did no such thing; to the contrary, they cited the press release to show that Mr. Hall continues to reiterate "unsupported claims."  Mot. at 9 n.3.  If Plaintiffs genuinely believed their CAC passed muster under the PSLRA, they would hardly resort to such easily dispelled mischaracterizations.

The Opposition fares no better trying to salvage a claim based on projections for 2021 or later years.  Merely reiterating Mr. Hall's conclusory claim that he "repeatedly and vehemently" argued the 2021 revenue projection was "impossible" (Opp. at 20) – without indicating when or to whom he allegedly expressed that opinion, or the basis for it – falls far short of the specificity required by the PSLRA.  Mot. at 20-23; *see also Sayce v. Forescout Techs., Inc.*, 2021 WL 4594768, at *6 (N.D. Cal. Oct. 6, 2021).  The Opposition cites no authority to the contrary.  Nor does the Opposition have any answer to the fact that *Mr. Hall himself* signed the October 19, 2020 Registration Statement (Mot. at 17), which Plaintiffs allege contained the very forecasts (for 2021 and beyond) they now challenge.  CAC ¶ 337.  Unable to explain why their own source endorsed purportedly "impossible" forecasts, Plaintiffs simply ignore the point – and, in the process, tacitly concede their inability to plead that the forecasts were known to be false.

Repetition of Mr. Hall's allegations concerning the November 16, 2020 Board meeting (Opp. at 4, 8) fares no better.  The Opposition does not dispute that this is the earliest date (in fact, the only date) identified by Mr. Hall on which he supposedly expressed disagreement with

forecasts for 2021 (or beyond). *See* Mot. at 22. Thus, even if one could credit his account, it would not undermine the projections as of a prior date. *See In re Nimble Storage, Inc. Sec. Litig.*, 2017 WL 4355570, at *5 (N.D. Cal. Oct. 2, 2017) (projections not actionable absent showing that they were known to be unachievable when they were made). Nor does it undermine a later projection, because the CAC does not challenge any forecast made after November 16, 2020. *See id.*; *see also* Mot. at 22. Bizarrely, while Plaintiffs purport to contest this point – claiming that they challenge projections after November 2020 (Opp. at 19 n.18) – they immediately contradict themselves, citing eight paragraphs of the CAC relating to projections made between July 2020 (CAC ¶ 227) and October 2020 (*id.* ¶ 337). Indeed, chronologically, the very next statement challenged in the CAC is January 7, 2021, when Velodyne *withdrew* its guidance. *Id.* ¶ 377.

In any event, the Opposition never comes to grips with a more basic problem: even if Plaintiffs could plead that Mr. Hall conveyed specific concerns to specific individuals on specific dates (which they have not done), that would not establish that any Defendant shared those concerns or *knew* the forecasts were *unattainable* as a result. Mot. at 22; *see also Solazyme*, 2018 WL 3126393, at *3. Rather, Plaintiffs repeat Mr. Hall's vaguely articulated grievances – *e.g.*, engineering or other challenges associated with developing products, no assurance that customers would continue to purchase products (Opp. at 20) – without identifying any facts to show that the forecasts did not take those contingencies into account. *See, e.g.*, *McGovney v. Aerohive Networks, Inc.*, 2019 WL 8137143, at *15 (N.D. Cal. Aug. 7, 2019); *see also Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) ("Problems and difficulties are the daily work of business people. That they exist does not make a lie out of any of the alleged false statements."). The Opposition thus confirms Plaintiffs' inability to plead actual knowledge of falsity.[13]

### D.   The Opposition Cannot Salvage the Claim Regarding Ford

The Opposition abandons any claim that Velodyne failed to disclose Ford's termination of a "major contract," making no effort to show that the CAC's allegations suffice to plead such a claim. *See* Mot. at 24-25. And although Plaintiffs argue they have stated a claim based on Ford's

---

[13] Putting aside actual knowledge of falsity, the absence of facts contradicting the projections means that Plaintiffs do not even plead deliberate recklessness. *See Iron Workers Local 580 Jt. Funds v. NVIDIA Corp.*, 522 F. Supp. 3d 660, 674-75 (N.D. Cal. 2021).

sale of its Velodyne shares, the Opposition confirms that claim is based on nothing but hindsight.

Plaintiffs aver that "investors … learned about Ford's sale from Ford on February 12, 2021" (Opp. at 25) but cannot identify a single fact to show that any Defendant was aware of the sale prior to that date. *See* Mot. at 23. Indeed, at the same time Plaintiffs continue to stress the depth of Mr. Hall's supposed relationship with Ford (Opp. at 25), they ignore that *not even he* claims to have known of Ford's decision before it was announced in February 2021. Mot. at 23.

None of the jumbled arguments offered in the Opposition (Opp. at 25-26) can obscure that pleading failure. Plaintiffs argue it was misleading to state that "Ford is expected to hold greater than 5% … after the Business Combination" (*e.g.*, CAC ¶ 320; *see also* Opp. at 25) but cite nothing to show any Defendant's contemporaneous knowledge of facts at odds with the statement – which was last made in early November 2020 (Opp. at 26), more than three months before Ford announced its sale. Additionally, Plaintiffs make no effort to contest that the statement was protected by the safe harbor. *See* Mot. at 25.

Equally unavailing is Plaintiffs' reference to the agreement permitting Ford to sell stock following the Merger. Opp. at 24. While that agreement – which was publicly disclosed (Mot. at 23-24) – demonstrates that Defendants (and the investing public) knew of Ford's *ability* to sell, it does *nothing* to show knowledge of a *plan* to sell. Moreover, Plaintiffs do not contest that Defendants' repeated disclosures that Ford was free to sell its stock further negate any inference of scienter. *See* Mot. at 24 (citing *McGovney*, 2019 WL 8137143, at *23).

Nor do Plaintiffs explain how a planned investment by Ford in another lidar company announced in *February 2017* (Opp. at 24-25; CAC ¶ 171 n.33), the *February 2021* decision by a former Ford executive (Ms. Samardzich) not to seek reelection as a Velodyne director (Opp. at 26), or a supposed *February 2021* decision to terminate a contract with Velodyne (*id.*), bears on Ford's plans in *late 2020* – much less Defendants' knowledge of such plans. And Mr. Hamer's after-the-fact observation that Ford generally prefers not "to stick around as a financial investor" (Opp. at 26) does nothing to suggest prior knowledge of facts inconsistent with a challenged statement. *See Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) (later statement not an admission where it did not "contradict[] the substance of an earlier statement and

essentially state[], 'I knew it all along'"), *aff'd*, 848 F. App'x 278 (9th Cir. 2021).[14]

Even assuming Plaintiffs could show that specific Defendants had contemporaneous knowledge of Ford's divestment plans during the Class Period, that would still not support a claim. Plaintiffs concede that the principal statement on which they pin their claim ("Ford is expected to hold greater than 5% … after the Business Combination") was true. *See* Opp. at 26. To the extent that Plaintiffs contend the statement would have been understood to contain an implicit representation that Ford would hold its stake for some extended period of time, they offer no facts to support such an interpretation – let alone facts to show that any Defendant knew that is how it would have been understood or believed that investors would have been misled absent further information. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 883 (9th Cir. 2012). And the Opposition (Opp. at 25) points to no facts showing that Ford's sale of its stock (even if known) would have contradicted Mr. Gopalan's January 7, 2021 statement that "there is no change in our fundamental outlook for the future." *See Weston*, 2022 WL 853252, at *6.

**E.      Plaintiffs Have Effectively Abandoned Their Internal Controls Claims**

By failing to make any real effort to address the deficiencies in the internal controls claim (Mot. at 25-27) – including the failure to plead that any Defendant had contemporaneous knowledge of control issues at the time of a challenged statement, and Plaintiffs' inability to show that the existence of later-discovered issues rendered any statement materially misleading when made – Plaintiffs concede that their claim lacks merit. *See* Opp. at 27. The bare assertion that Mr. Gopalan's and Mr. Hamer's November 9, 2020 SOX certifications support a claim (*id.*) is unsupported by factual allegations and ignores controlling authority cited by Defendants. *See* Mot. at 27; *see also Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008); *Wanca v. Super Micro Computer, Inc.*, 2018 WL 3145649, at *6 (N.D. Cal. June 27, 2018).[15]

---

[14] Thus, Plaintiffs' citation to *Bruce v. Suntech Power Holdings Co.*, 64 F. Supp. 3d 1365 (N.D. Cal. 2014), does not help them. By contrast to this case, *Bruce* involved specific factual allegations demonstrating defendant's receipt of information contradicting his public statements before he made them. *Id*. at 1374.

[15] *Camelot Event Driven Fund v. Alta Mesa Res., Inc.*, 2021 WL 1416025 (S.D. Tex. Apr. 14, 2021), is distinguishable because (as Plaintiffs concede) it involved a drastic write-down that "constituted over 80% of [the company's] value" (*id.* at *12), which is not even remotely akin to the modest revenue shortfall Velodyne experienced in 2020 (CAC ¶ 148). And *Commc'ns*

REPLY MEM. ISO
MOTION TO DISMISS                              - 15 -                              No. 3:21-cv-01486-SI

Plaintiffs' perfunctory (and unexplained) assertion that the "weaknesses in control over financial reporting are directly connected to" the challenged statements (Opp. at 27 n.30) merely confirms their inability to identify facts or authority to support a claim. *See* Mot. at 25-27.

**III.    THE OPPOSITION CONFIRMS THAT THE "SCHEME" LIABILITY CLAIM AGAINST MESSRS. GRAF AND DEE MUST BE DISMISSED**

The Opposition does not contest that a "scheme" liability claim requires "deceptive conduct apart from misrepresentations or omissions." Mot. at 27 (quoting *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 200 (S.D.N.Y. 2020)). The only "fact" that Plaintiffs identify to suggest a separate "scheme" is that Mr. Dee (but not Mr. Graf) served on the Audit Committee when it investigated the Halls' conduct. Opp. at 28-29. However, Plaintiffs plead no facts to show that the Audit Committee investigation was improper. *See* Sec. IV.B.2, *supra*. Nor do they try to reconcile their claim with two critical undisputed facts: (1) the other Audit Committee members (Mr. Thomas and Ms. Samardzich) were independent directors who are not accused of wrongdoing; and (2) the Committee retained highly regarded and independent counsel (Keker) with no reason to participate in an allegedly unlawful "scheme." *See id.*; *see also* Mot. at 16.

**IV.    PLAINTIFFS' ADDITIONAL SCIENTER THEORIES REMAIN BASELESS**

*Access to Information*. Plaintiffs do not dispute that boilerplate allegations of Defendants' "access to … information" (CAC ¶¶ 399, 401) are ineffective to plead scienter. Mot. at 28.

*Motive and Opportunity*. While the CAC avers that Defendants' Class Period stock dispositions contribute to an inference of fraud (CAC ¶¶ 412-415), the Opposition abandons that claim and makes no effort to dispute that those transactions are *inconsistent* with an inference of fraud. Mot. at 29. Nor do Plaintiffs contest that controlling Ninth Circuit authority holds that mere "motive and opportunity" allegations are insufficient to plead scienter (*id*. at 28) – yet the Opposition makes clear that Plaintiffs have nothing else to offer. They continue to rely on generic averments that the Individual Defendants were motivated to engage in fraud in order to

---

*Workers of Am. Plan for Employees' Pens. & Death Benefits v. CSK Auto Corp.*, 525 F. Supp. 2d 1116 (D. Ariz. 2007) – a pre-*Glazer* decision – identified numerous facts beyond defendants' SOX certifications, including a massive accounting restatement covering three years, misstatements that the company attributed to "senior management," and reports from multiple confidential witnesses. *Id.* at 1118, 1124-25. Those allegations bear no resemblance to this case.

complete the September 2020 merger or secure unspecified "executive compensation and incentive awards" (Opp. at 27-28), even though the Ninth Circuit has made clear that scienter may not be inferred from executive compensation, the successful completion of a transaction, or achievement of other "key corporate goals." *Rigel*, 697 F.3d at 884.[16]

In any event, Plaintiffs' conjecture regarding motive ultimately undermines their effort to plead scienter. For example, while they focus on the hypothetical value of Mr. Dee's, Mr. Graf's and Dr. Culkin's post-merger holdings, they ignore that none of those Defendants is alleged to have capitalized on that valuation by selling their shares – a fact that cuts against scienter. *See* Mot. at 29; *see also Ronconi*, 253 F.3d at 435. And while Plaintiffs argue the Court may infer motive from the fact that Dr. Culkin (Mr. Hall's brother-in-law and a director of Old Velodyne) held stock once worth as much as $335 million post-merger (Opp. at 28),[17] they conspicuously ignore that, using the same methodology, *Mr. Hall's* post-merger holdings were worth *more than $2 billion*. *See* Ex. I at 272. Thus, if Plaintiffs' theory were accepted, the person with *by far* the greatest "motive and opportunity" to engage in fraud would be Mr. Hall – the principal source for Plaintiffs' entire case.

*Resignations*. It is undisputed that personnel departures do not support a strong inference of scienter absent facts to show those departures were "for other than legitimate reasons." *Sakkal*, 2021 WL 3885987, at *7. Plaintiffs identify no such facts and instead highlight their reliance on

---

[16] Without any legitimate basis for disregarding *Rigel* or the other controlling authorities cited by Defendants (Mot. at 28), the Opposition resorts to the fatuous argument that none of those cases "involve" a "Reverse Merger." Opp. at 28. The Opposition tellingly makes no effort to identify any aspect of the holdings or analyses in those cases that would suggest they are inapplicable to a case involving a transaction such as the September 2020 merger. Equally telling is that the only authority Plaintiffs rely upon, *In re Stillwater Cap. Partners Inc. Litig.*, 858 F. Supp. 2d 277 (S.D.N.Y. 2012), applied the Second Circuit rule that scienter may be alleged via "motive and opportunity" (*id*. at 285-86) – a standard that, as discussed above, the Ninth Circuit has rejected. *See, e.g.*, *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021). Moreover, even under the lesser Second Circuit standard, courts have found that the principal scienter theory advanced by Plaintiffs is inadequate. *See McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 127 (S.D.N.Y. 2013) (allegation that founders' shares would "become worthless" if "the transaction … did not go through" did not establish scienter).

[17] Plaintiffs' decision to call out Dr. Culkin is particularly noteworthy given that they remain unable to identify a single factual allegation that would even arguably justify naming him as a defendant. Indeed, Dr. Culkin's name appears in the Opposition just four times – once in the caption, once in the statement of issues, and twice mentioning his ownership of Velodyne stock.

rank speculation – *e.g.*, maybe there was some connection between Ms. Samardzich choosing not to stand for re-election and Ford's announcement that it had previously sold its stock, and perhaps COO Thomas Tewell's departure had something to do with internal controls (Opp. at 29-30). Such conjecture does not contribute to an inference of scienter. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017).[18]  The theory that Mr. Graf might have resigned from the Board to avoid a contested election months later (Opp. at 29) is not only devoid of factual support, but it undermines a key aspect of Plaintiffs' case: resigning shortly before the Board voted to censure Mr. Hall for misconduct and replace him as Chairman is inconsistent with the notion that Mr. Graf "scheme[d]" to "oust" Mr. Hall.  *Id.* at 28.  And Plaintiffs cannot dispute that their allegations regarding Mr. Gopalan's employment agreement (*id.* at 30) are inconsistent with an inference of scienter.  *See* Mot. at 28 n.21.[19]

## V.    CONCLUSION

For the foregoing reasons, as well as those discussed in Defendants' Motion to Dismiss, the Court should dismiss the CAC without further leave to amend.

Dated:  April 8, 2022

WILMER CUTLER PICKERING HALE
AND DORR LLP

By:    */s/ Kevin P. Muck*
Kevin P. Muck

*Attorneys for Defendants Velodyne Lidar, Inc., Anand Gopalan, Andrew Hamer, James A. Graf, Michael Dee and Joseph B. Culkin*

---

[18] Unlike *Luna v. Marvell Tech. Grp.*, 2017 WL 2171273, at *5 (N.D. Cal. May 17, 2017), none of the departures in the present case is alleged to be an involuntary termination.  And *Luna* held that *voluntary* departures of senior executives did *not* suffice to establish scienter where, as here, plaintiffs "offer[ed] no more than the timing" of the departures.  *Id.* at *6.

[19] Plaintiffs do not dispute that failure to plead a primary violation of Section 10(b) also dooms their Section 20(a) claim.  *See* Mot. at 30.  In addition, Plaintiffs make no effort to show that they have stated a control person claim as to Mr. Gopalan, Mr. Hamer and Dr. Culkin (Opp. at 30 n.34).  And the contention that Mr. Graf and Mr. Dee "served as Velodyne directors while signing or having ultimate authority over numerous documents filed with the SEC" (*id.*) does not suffice to state a control person claim for the period following the merger.  *See Sgarlata v. PayPal Holdings, Inc.*, 2018 WL 6592771, at *8 (N.D. Cal. Dec. 13, 2018).