**WILMERHALE**

April 12, 2023

**Kevin P. Muck**

+1 628 235 1029 (t)
+1 628 235 1001 (f)
kevin.muck@wilmerhale.com

<u>**VIA ECF**</u>

The Honorable Susan Illston
United States District Judge
450 Golden Gate Avenue
San Francisco, California

Re:  *Moradpour v. Velodyne Lidar, Inc., et al.*, No. 3:21-cv-01486-SI
      Defendants' Response to Plaintiffs' Improper Letter Brief of April 11, 2023

Dear Judge Illston:

In contravention of this Court's Standing Order, Plaintiffs have needlessly submitted a premature and improper individual letter brief (ECF 163) less than one week after a productive in-person meet and confer session.  In their April 11, 2023 letter, Plaintiffs claim – without a hint of explanation – that it was somehow "not possible" for the parties to submit a "concise joint statement" concerning the matters raised in their letter, as required by the Standing Order.  In reality, Plaintiffs unilaterally chose to disregard Paragraph 3 of the Court's Standing Order, making no effort to coordinate with Defendants[1] and providing no notice that Plaintiffs were seeking the Court's intervention.  Had Plaintiffs bothered to do so, they would have learned that one of the two "disputes" raised in their letter is moot, as explained below.  While Defendants address the substance of Plaintiffs' contentions herein, Defendants respectfully request that the Court admonish Plaintiffs to refrain from such game-playing going forward.[2]

**I.      <u>INTERROGATORIES 5, 6, 7(a), 7(b), AND 7(c)</u>**

On April 5, 2023, the parties held an in-person meet and confer session to discuss several issues each side had raised during the course of discovery to date.  Among the issues raised by Plaintiffs were Defendants' responses to Interrogatories Nos. 5, 6, 7(a), 7(b), and 7(c).  Following the April 5 meeting, Defendants determined, in the spirit of compromise, to supplement their prior responses and provide the names of specific individuals at third-party law firms and consulting firms who, to Defendants' knowledge, were involved in the matters at issue in those interrogatories.  Indeed, at the very same time that Plaintiffs chose to ignore the Standing Order and submit (without notice) their individual letter brief, Defendants were in the process of drafting supplemental interrogatory responses; Defendants intend to serve those supplemental responses by Monday, April 17.  As a result, this purported issue is moot.

---

[1] The term "Defendants" refers to Velodyne Lidar, Inc. ("Velodyne" or the "Company"), Anand Gopalan, Andrew Hamer, Michael Dee and James Graf.

[2] Defendants do not believe it is necessary to respond to Plaintiffs' inaccurate characterization of other discovery matters that are not currently before the Court.  *See, e.g.*, ECF 163 at n.3 & 4.

The Honorable Susan Illston
April 12, 2023
Page 2

WILMERHALE

## II.   REQUESTS FOR PRODUCTION NOS. 30, 31 AND 34

Lead Plaintiffs' Consolidated Amended Complaint (ECF 99) alleged four categories of alleged misstatements: (1) David Hall's supposed ouster from Velodyne (MTD Order [ECF 119] at 21); (2) Velodyne's financial outlook (*id.* at 23); (3) Ford Motor Co.'s status as an investor and customer (*id.* at 28); and (4) Velodyne's internal controls (*id.* at 29).  The Court dismissed three of these four claims (*id.* at 27, 29, 30), and the *only* issue remaining is whether Defendants made false statements regarding Mr. Hall's role at the Company.  *Id.* at 23.

While Plaintiffs had an opportunity to amend their complaint, they chose not to.  ECF 123. Nonetheless, they are now transparently seeking to resuscitate these dismissed claims through exceedingly broad discovery requests that have no relevance to the sole remaining claim.[3]  Such tactics are improper.  *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) ("[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken.").  Instead, Plaintiffs may only conduct discovery that is appropriately tailored to the sole claim that survived a motion to dismiss.  *See Sweeney v. ManorCare Health Servs., Inc.*, 2005 WL 8173183, at *2 (W.D. Wash. Sept. 23, 2005) (discovery pertaining to dismissed claims must be focused "narrow[ly]" on issues relevant to remaining claims).  Requests Nos. 30, 31 and 34, however, are not narrowly tailored.  To the contrary, they are excessively broad, seeking documents relating to, among other things, Velodyne's finances, corporate governance, and customers – issues having no bearing on whether Defendants made alleged misstatements regarding Mr. Hall's ongoing role at Velodyne.  *See Sweeney*, 2005 WL 8173183, at *2 ("quashing" plaintiff's overbroad document requests and directing the parties to "confer … so that the parties [can] confer with one another so that the written requests may be redrafted with the narrow question of the defendants' allegedly retaliatory motive in mind").

Responding to these requests would be unduly burdensome and in no way proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  For example, applying Plaintiffs' newly proposed search terms[4] to Request No. 30 alone returned nearly 300,000 hits across the relevant ESI data for agreed-upon custodians.  Given that Defendants have not yet had a chance to respond to Plaintiffs' initial search term proposal from last week, it is no surprise that Plaintiffs' letter brief fails to explain "how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied" by these RFPs.  *See* Civ. L.R. 37-2.  This is yet another example of an issue that could potentially have been resolved – or at the very least narrowed – had Plaintiffs not rushed to file a premature letter brief in violation of the Court's Standing Order.

---

[3] *See, e.g.*, ECF 163-3 (RFP 30: "All documents and communications between [Defendants] and the Halls concerning Velodyne's revenue projections"; RFP 31: "All documents and communications between [Defendants] and the Halls concerning Velodyne's internal controls"; RFP 34: "All documents and communications concerning: (i) Velodyne's loss of customers and/or cancellation of customer contracts; (ii) Velodyne's intellectual property theft by Velodyne's competitors; and (iii) the departure of research and development personnel from Velodyne.").

[4] Plaintiffs did not provide any proposed search terms until April 5, 2023 – despite having promised to provide such proposed terms in late January.  Thus, the parties have not even had an opportunity to discuss the impact of Plaintiffs' belated search term proposal, which includes such broad terms as "project*," "forecast*," "revenue*," "estimate*," "earnings*," and "guidance."

The Honorable Susan Illston                                    WILMERHALE
April 12, 2023
Page 3

Moreover, contrary to Plaintiffs' false assertion, Defendants have already agreed to produce a substantial quantity of documents going well beyond those pertaining to Mr. Hall's supposed ouster from Velodyne.  Indeed, Defendants have agreed to produce documents *in response to 59 of Plaintiffs' 63 requests*, including documents concerning such tangential matters as Graf Industrial Corporation's ("GIC's") search for merger partners, Velodyne's exploration of a potential initial public offering, the GIC-Velodyne merger, nominations and resignations of various officers and directors, and various internal corporate governance issues.

Additionally, as to the three requests at issue (Nos. 30, 31 and 34), Defendants have already offered to produce documents sufficient to show concerns expressed by David Hall, if any, to the Individual Defendants or Velodyne Board regarding the topics specified in those three requests. Plaintiffs rebuffed that offer without discussion.  In their letter brief, Plaintiffs now complain that Defendants' offer was insufficient because it did not include documents relating to concerns raised by Mr. Hall's wife, Marta Hall.  In the spirit of compromise, Defendants are willing to produce documents sufficient to show complaints expressed by Ms. Hall to the Individual Defendants or the Board regarding the topics at issue in Requests Nos. 30, 31 and 34 – and would have done so had Plaintiffs suggested it at any earlier time.

Finally, Plaintiffs' argument that Requests Nos. 30, 31 and 34 go to purported "retaliation" against Mr. Hall for making specific statements is a red herring.  Defendants have already agreed to produce documents relevant to these statements, including "documents and communications between and/or among any of the Individual Defendants, Board of Directors, and/or the Audit Committee concerning David Hall's and Marta Hall's conduct or statements that were the subject of the Audit Committee Investigation."  ECF 163-3 at RFP No. 5.[5]

For these reasons, the Court should reject Plaintiffs' improper attempt to compel production of documents in response to Requests Nos. 30, 31 and 34.  Alternatively, the Court should require Plaintiffs to: (i) meet and confer in good faith in light of the new search terms they proposed for the first time last week; and (ii) if that meet-and-confer effort is not successful, fully comply with the Court's Standing Order with respect to any remaining areas of dispute.

Respectfully submitted,

*/s/ Kevin P. Muck*

Kevin P. Muck
Counsel for Defendants


cc:  All Counsel (via ECF)

---

[5] *See also* RFP No. 2 ("documents concerning the decision to conduct an Audit Committee investigation and/or inquiry related to conduct or statements by David Hall"); RFP No. 28 ("documents sufficient to describe the process, findings, and/or conclusions of the Special Committee regarding David Hall's and Marta Hall's corporate governance proposals, as described on page 37 of Velodyne's Definitive Proxy Statement filed with the SEC on May 17, 2021.").