**KSF**

**KAHN SWICK & FOTI, LLC**

580 California Street, Suite 1200
San Francisco, CA 94104

TEL +1 504.455.1400
FAX +1 504.455.1498
KSFcounsel.com

NEW ORLEANS
NEW YORK
CHICAGO
NEW JERSEY
**SAN FRANCISCO**

**FILED UNDER SEAL**

July 19, 2023

***Via ECF***

The Honorable Susan Illston
U.S. District Court – N.D. Cal.
San Francisco Division
450 Golden Gate Avenue
Courtroom 1 – 17th Floor
San Francisco, CA 94102

Ramzi Abadou
Partner – Admitted in CA
Direct: 415.231.4313
ramzi.abadou@ksfcounsel.com

> RE:    *Moradpour v. Velodyne Lidar, Inc., et al.*,
> No. 3:21-cv-01486-SI (N.D. Cal.)

Dear Judge Illston,

The parties met and conferred pursuant to ¶ 3 of the Court's Standing Order on July 6, 2023, and were unable to resolve the following two discovery disputes.

## I.   FIRST DISPUTE: WHETHER PRIVILEGE-BASED REDACTIONS MUST BE LOGGED

**PLAINTIFF'S POSITION**

**The Parties Never Agreed That Privilege-Based Redactions Should Not Be Logged:** Disputes about attorney-client privilege should be resolved early, and privilege logs are often a "gating item" to resolving them. *In re Stubhub Refund Litig.*, 2022 U.S. Dist. LEXIS 92941, at *10-11 (N.D. Cal. 2022) (ordering rolling production of privilege logs). The ESI Protocol provides that the: "[p]roduction of privilege logs shall occur on a rolling basis, within a reasonable time following each volume of production." *See* ECF No. 146 at § 19. But despite redacting and claiming privilege over more than 1,900 pages of their 7,210-page production (to date),[1] Defendants have not produced any privilege logs. Further, Defendants believe they are not required to log redacted information in their privilege logs.

---

[1]    Defendants' assertion that they "have produced fewer than 30 documents with privilege redactions" is inaccurate. Not counting their July 13 production of 21,322 pages, which they provided only after Plaintiff submitted her positions on the parties' disputes to them, Defendants have withheld or redacted approximately 1,928 documents for privilege. Defendants partially redacted approximately 146 pages and fully redacted 1,783 pages, including by replacing multiple pages with slip sheets stating, "PAGES X-X REDACTED." In three instances (VLDR_SL_000001024, x1462, x1478), the slipsheet notes that there are pages redacted but does not indicate how many). Furthermore, if Defendants' assertion were correct, then it is inconceivable that producing a privilege log for "fewer than 30 documents with privilege redactions" would be burdensome, as Defendants now claim.

-2-                                                                July 19, 2023

"Documents which are redacted based on privilege must be accounted for in a privilege log." *Terry v. Register Tapes Unlimited, Inc.*, 2018 U.S. Dist. LEXIS 109458, at *18 (E.D. Cal. 2018); *see also Franco-Gonzalez v. Holder*, 2013 U.S. Dist. LEXIS 186499, at *20-21 (C.D. Cal. 2013) (". . . defendants shall provide plaintiffs with a detailed privilege log, individually identifying each document that has been redacted on the basis of a privilege."). This applies equally to materials originally produced in related litigation—such as the derivative litigation materials Defendants produced here. *See Orthopaedic Hosp. v. DJO Glob., Inc.*, 2020 U.S. Dist. LEXIS 241393, at *26-27 (S.D. Cal. 2020) ("Plaintiff shall supplement its privilege log [. . .] to include entries for the redacted portions of documents produced from the *DePuy* litigation.").

Privilege logs which exclude redacted documents are viewed with suspicion. In *Humphreys v. Regents of the University of California*, this Court referred a similar discovery dispute to Magistrate Judge Laporte, noting: "[t]he Court agrees with plaintiff, however, that the privilege log contains suspiciously few documents. In particular, the log contains no entries for redacted documents." 2006 U.S. Dist. LEXIS 34769, at *3 (N.D. Cal. 2006) (Illston, J.). Magistrate Laporte agreed, ordering the "privilege log" to include entries for redacted documents. *See Humphreys v. Regents of the Univ. of Cal.*, No. 3:04-cv-3808-SI, Slip. Op., at 1 (Jun. 15, 2006) ("Defendants shall review their document production to date for redacted documents and shall include those on the privilege log."). Neither this Court nor Magistrate Laporte distinguished between a "privilege log" and a "redaction log."

Defendants' entire position turns on a single edit they made to the draft ESI Protocol, changing one reference from "privilege/redaction logs" to simply "privilege logs." Defendants now claim this single edit created an "express agreement" that no privilege log would be required if materials were *redacted* on a claim of privilege, versus *withheld* in their entirety. Despite their claim that this is a "settled matter," no such agreement was ever reached and/or is reflected in the ESI Protocol. Nor anywhere else. Defendants cannot point to a single email or letter demonstrating a meeting of the minds with respect to their expansive definition of "redaction log," nor any evidence that the parties (or the Court, when it entered the ESI Protocol) understood that their view would overrule the mandatory requirements of Rule 26. *See* FED. R. CIV. P. 26(b)(5)(A)(ii) (the party withholding discoverable information on a claim of privilege must "describe the nature of the . . . things not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim."). "Civil litigation in federal court is not a game of 'gotcha.'" *OptoLum, Inc. v. Cree, Inc.*, 2017 U.S. Dist. LEXIS 114717, at *13 (D. Ariz. 2017). Furthermore, they overlook that the burden to establish privilege rests on the party claiming it. *See Verinata Health, Inc. v. Sequenom, Inc.*, 2014 U.S. Dist. LEXIS 115448, at *7-8 (N.D. Cal. 2014).

When the ESI Protocol was negotiated, the most substantive discussion concerning privilege logs addressed Defendants' initial refusal to produce them on a rolling basis. When Lead Plaintiff did not agree, the parties met and conferred on December 16, 2022 and Plaintiff provided uncontroversial authorities holding that privilege logs should be produced on a rolling basis. *Stubhub*, 2022 U.S. Dist. LEXIS 92941, at *10-11; *A.J.C. v. San Diego Family Hous.*, 2021 U.S. Dist. LEXIS 250640, at *11 (C.D. Cal. 2021); and *Loop Ai Labs, Inc. v. Gatti*, 2016 U.S. Dist. LEXIS 68756, at *4-7 (N.D. Cal. 2016). Defendants relented but have yet to live up to their agreement.

KSF
KAHN SWICK & FOTI

Defendants' semantic distinction between "privilege logs" and "redaction logs" is untenable as it would enable Defendants to sidestep their obligation to produce privilege logs altogether by continuing to redact thousands of pages such that no documents were "withheld."[2] This form-over-substance loophole would, if permitted, run counter to both the letter and the spirit of the ESI Protocol, and FED. R. CIV. P. 26, which clearly place the burden of establishing privilege on the party asserting it.

Defendants claim that their liberal and broad redactions enable Lead Plaintiff to decipher the privilege asserted and/or to discuss the redactions on a document-by-document basis. Not so as many of Defendants' redacted documents span hundreds of pages and simply state "REDACTED – PRIVILEGED" without asserting the type of privilege claimed, nor distinguishing between attorney-client privilege or work product protection. Many of the redactions are not narrowly tailored and don't even include an attorney. It is not Lead Plaintiff's burden to decode Defendants' claims of privilege on the scant information they've thus far provided. *Jones v. Hernandez*, 322 F.R.D. 411, 415 (S.D. Cal. 2017) ("If discovery is withheld based on any privilege or protection, such should be stated in a privilege log to provide the other side an opportunity to [. . .] possibly challenge that claimed privilege.").

Defendants' proposal to meet-and-confer on a document-by-document basis, while implicitly conceding their obligation to comply with Rule 26, misses the point. *See* Defs' June 8, 2023 Letter ("To the extent you have concerns about specific redactions, Defendants are available to discuss."). Lead Plaintiff has concerns about all of Defendants' redactions for the simple reason that they don't comply with the Federal Rules. Explanations scattered across multiple correspondences are a poor substitute for a proper privilege log. *United States v. Lonich*, 2016 U.S. Dist. LEXIS 21983, at *12 (N.D. Cal. 2016) (Illston, J.) (ordering privilege logs; correspondence and explanatory spreadsheets insufficient to support privilege). Lead Plaintiff would like to provide a sample of documents for *in camera* review to demonstrate as much. Defendants refused to agree to submit redacted documents of Lead Plaintiff's choosing for *in camera* review without their prior approval, indicating that they do not stand by their redactions.

During the parties' July 6, 2023 meet-and-confer, Defendants did not deny the ease with which a privilege log justifying their redactions could be generated. Instead, they invoked a nonexistent "agreement" between the parties whereby Defendants' striking of the word "redaction" from the ESI Protocol amounted to an "agreement" to overrule the Federal Rules and this District's clear instructions to the contrary. And while Plaintiff was content in December to spare Defendants the burden of producing redaction logs for, *e.g.*, personal identifiable information such as social security numbers, Plaintiff never agreed to exclude privilege-based redactions from a "privilege log." Nor did the Court in entering the ESI Protocol as negotiated by the parties.

**DEFENDANTS' POSITION**

---

[2]      Indeed, only Plaintiff has produced a privilege log to date, which included material so redacted.



**The Parties Agreed that Redaction Logs Would Not Be Required in this Matter**:  Plaintiff is apparently unwilling to stick by the parties' agreement regarding how discovery would be conducted in this matter.  The Court should not reward this change of heart.

More than eight months ago, the parties began negotiating the terms of an ESI Protocol. Defendants shared a draft ESI Protocol with Plaintiff on November 16, 2022, based on the model protocol on the Court's website, which contains no mention of redaction logs.  One week later, Plaintiff proposed expansive edits to Defendants' draft ESI Protocol.  One of Plaintiff's proposed edits was an express provision that would obligate the parties to produce "redaction logs"—distinct from and in addition to "privilege logs."  In the spirit of compromise, Defendants agreed to the vast majority of Plaintiff's proposed edits, but Defendants did not agree to and rejected Plaintiff's insertion of a redaction log requirement in the draft Defendants shared on December 5, 2022. Defendants did so because redaction logs are exceedingly burdensome and atypical in securities litigation, since redacted documents—as opposed to fully-withheld documents—contain information identifying the basis for the redaction that is more than sufficient to evaluate the privilege claim.  Consistent with the parties' use of "track changes" to communicate all other negotiated positions, Defendants' rejection of the redaction log provision was obvious to anyone reviewing Defendants' revisions to the ESI Protocol.

At no point in the ensuing negotiations, including a lengthy meet and confer on December 16, 2022 to resolve the remaining issues with the ESI Protocol, did Plaintiff object to Defendants' deletion of the redaction log requirement, despite a substantive discussion regarding the protocol for production of privilege logs.  The parties filed the agreed-upon ESI Protocol and the Court entered the protocol on December 22, 2022.  ECF No. 146.  In the subsequent months, Defendants have relied on the parties' agreement that redaction logs would not be required in this case.

Plaintiff does not dispute any of these facts.  Instead, she provides a laundry list of excuses in an attempt to skirt the parties' agreement.  *First*, Plaintiff argues that the distinction between a privilege log and a redaction log is mere semantics.  That position is belied by the parties' negotiations: if Plaintiff believed there was no distinction between a privilege log and a redaction log, there would have been no reason for her initial demand of a "redaction log" in the ESI Protocol.  Plaintiff offers no explanation for this.  *Second*, Plaintiff claims there was no meeting of the minds on this issue because there is no written discussion (other than the ESI Protocol itself) regarding the redaction log issue.  But aside from  the parties' December 16, 2022 meet and confer (at which Plaintiff did not object to Defendants' explicit rejection of the redaction log requirement), the *only* medium through which the parties negotiated the ESI Protocol was to exchange drafts, propose edits, and accept or reject the other party's proposed edits.  Defendants' rejection of Plaintiff's redaction log insertion and Plaintiff's acquiescence to that rejection is sufficient proof of a meeting of the minds.  *Third*, Plaintiff argues she agreed to removal of the "redaction log" term because she believed it would only apply to redactions for "personally identifiable information."  But that position makes no sense; Plaintiff added the redaction log requirement to the  section of the ESI Protocol called "Privileged Communications."  The words "personally identifiable information" or "PII" do not appear in the ESI Protocol or any of the drafts.

The discovery process cannot proceed apace if Defendants are not confident Plaintiff will stand by her agreements, particularly ones filed with and entered by the court. *See Pinks v. M&T Bank Corp.*, 2016 WL 1216813, at *4 (S.D.N.Y. Mar. 25, 2016) (where "[p]arties enter into agreements on the best way to conduct discovery, courts should uphold and honor such agreements"); *Samuel, Son & Co. Inc. v. Beach*, 2014 WL 5089718, at *4 (W.D. Pa. Oct. 9, 2014) (The "meet and confer process [i]s an efficient means to resolve discovery disputes" which "can only be furthered if the Court enforces agreements reached during meet and confer sessions and requires the parties and their counsel to perform their respective obligations under the bargains which have been achieved."). The Court should enforce the parties' agreement.

**Requiring Redaction Logs is Burdensome, Inefficient, and Unnecessary**: Setting aside Plaintiff's agreement not to require them, redaction logs are unnecessary and unduly burdensome. "There is [] no need, and the federal rules do not require a defendant, to create a log that describes the author, the date, the type of document, and so on, when the requesting party can see that information simply by looking at the document." *Graham v. Mukasey*, 247 F.R.D. 205, 207 (D.D.C. 2008) (rejecting plaintiff's request for a "log of partially redacted documents"). Fed. R. Civ. P. 26(b)(5)(A) requires parties to communicate "the nature of the documents, communications, or tangible things not produced or disclosed ... in a manner that ... will enable other parties to assess the claim." This information is apparent on documents appropriately redacted for privilege. *Pinson v. Prieto*, 2013 WL 12377239, at *1 (C.D. Cal. May 31, 2013) (rejecting request for a redaction log because "defendants have done all that they would be required to do on a privilege log, particularly since the nature of the redacted information should be evident on the face of the pages").[3]

Indeed, during the parties' meet and confer discussions about this topic, Plaintiff's example of why a redaction log is required illustrates precisely the opposite: the document consists of an email string with redactions but where the **author**, **recipient**, **date**, **subject line**, and presence of **attachments** – the **exact** information that would be included in a privilege log – are unredacted and thus fully available to Plaintiff should Plaintiff elect to challenge the privilege assertion. *See* JF_005253.

Defendants anticipate that more than 1,000 documents in this litigation will require privilege redactions. Requiring Defendants to log every redacted document would be unduly burdensome, extraordinarily expensive, and unnecessary to enable Plaintiff to evaluate Defendants' privilege claims. This is why courts frequently find redaction logs unnecessary – even in cases where the parties have not already reached agreement on them. *See, e.g., Mid-State Automotive, Inc. v. Harco Nat'l Ins. Co.*, 2020 WL 1488741, at *4 (S.D.W.V. Mar. 25, 2020) ("Plaintiffs can ascertain from the face of the document all the information necessary … to determine whether Defendant has properly redacted privileged material. To require Defendant to

---

[3]      Many of the cases Plaintiff cites are not on point. *E.g.*, *Terry v. Register Tapes Unlimited, Inc.*, 2018 WL 3207892, at *6 (E.D. Cal. June 29, 2018) (redactions for personal information did not need to be logged). With regard to *Humphreys*, Defendants do not dispute that courts have, on occasion, ordered parties to log redacted documents, but Plaintiff does not demonstrate that this is required by the Federal Rules – particularly where the parties have already agreed such logs are not necessary.

set out that information in a privilege log is, quite simply, an inefficient use of time and resources.").

**Plaintiff's Descriptions of Defendants' Redactions are Inaccurate**:  Plaintiff complains about redactions from a set of documents that was produced in a related matter (*see* footnote 1), which Defendants re-produced (without alteration) in this matter.  Specifically, in response to one of Plaintiff's 63 requests for production, Defendants provided Plaintiff with an exact copy of a production of documents that Velodyne had made to shareholders in response to a books and records demand under Delaware Code Title 8 Corp. § 220 ("Section 220").  As is customary in a Section 220 production, Velodyne redacted information that was not responsive to the shareholder demands.  Defendants produced to Plaintiff here a copy of the documents produced in response to the Section 220 demand.  Defendants have also separately produced to Plaintiff responsive documents from the same set of Board minutes and materials **without** these responsiveness redactions.

**This Issue is Premature**:  Where Defendants have applied redactions for privilege, Defendants have been exceedingly careful to ensure that any redactions applied for privileged are narrowly tailored and permit Plaintiff to assess the privilege contention.  To date, Defendants have produced fewer than 30 documents with privilege redactions, but because Defendants' privilege review is ongoing, that number will increase substantially in the coming weeks.  Accordingly, any dispute regarding the nature of Defendants' redactions is not ripe.  Defendants have reiterated consistently that if Plaintiff has concerns that Defendants' redactions are overbroad, they are willing to discuss those concerns at that time.[4]

## II.    SECOND DISPUTE: PRIVILEGE ISSUES REGARDING THIRD-PARTY JOELE FRANK

### PLAINTIFF'S POSITION

**The information Defendants shared with outside public relations firms is not privileged:** As Velodyne's pretextual Audit Committee investigation wound down, its outside counsel, Keker, Van Nest & Peters ("Keker"), *itself* retained a public relations firm named Joele Frank to handle Velodyne's public responses to the Halls' ouster. On December 8, 2022, Lead Plaintiff subpoenaed Joele Frank. The retainer agreement between Keker and Joele Frank was entered into ████████████████████████████████████████ ████████████████████████████████ JF_000471. Defendants have nevertheless claimed privilege over hundreds of communications concerning the Audit Committee investigation and Joele Frank's public relations work but have produced no privilege log (at all) supporting those claims.

It is now undisputed that Velodyne and Keker shared otherwise privileged information about the Audit Committee investigation with Joel Frank. Without more, as Judge Spero clearly holds under similar facts, any privilege that may have existed was thereby waived. *See Anderson*

---

[4]      At the parties' July 6, 2023 meet and confer, counsel for Plaintiff asked if Defendants would agree to submit documents with redactions *in camera*, presumably to review Defendants' privilege claims.  Defendants responded that they would consider a proposal from Plaintiff.  Plaintiff has not provided such a proposal to date.

*v. Seaworld Parks & Entm't Inc.* 329 F.R.D. 628, 634 (N.D. Cal 2019) (Spero, J.); *Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 136875, at *52-53 (D.N.J. 2021) (privileged communications with a PR firm hired by corporation's outside counsel waived privilege).

Defendants bear the burden of showing that their communications with Joele Frank were privileged and that the privilege has not been waived. *See, e.g.*, *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). As explained below, Defendants cannot do so particularly given that



. *See* JF_005227 (redacted email                                                             ); JF_005253-54 (redacted internal            containing                                    and beginning with "                                            .").

**No Privilege Attached:** Keker's retention of a PR firm to address public investor relations is a business matter—not a legal one. *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 136875, at *52-53 (D.N.J. 2021) (rejecting privilege claim over communications with a PR company hired by corporation's outside counsel). The preparation and publication of press releases relating to the removal of the Company's founder is not a legal function. *See Seaworld*, 329 F.R.D. at 634 ("in order for disclosure to a third party to be 'reasonably necessary' for an attorney's purpose, and thus not to effect a waiver of privilege, it is not enough that the third party weighs in on legal strategy. Instead, the third party [like a translator or accountant] must facilitate communication between the attorney and client.") (Spero, J.); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1242 (D. Or. 2017) ("Having outside counsel hire a public relations firm is insufficient to cloak that business function with the attorney-client privilege."); *Valeant*, 2021 U.S. Dist. LEXIS 136875, at *59-62 (noting that how a PR firm could "actually assist [outside counsel] in providing legal advice to [the company] remains a mystery.").

Defendants cannot establish that Joele Frank fits the so-called "functional employee" exception to waiver. *See, e.g.*, *In re CV Therapeutics, Inc. Secs. Litig.*, 2006 U.S. Dist. LEXIS 41568, at *7 (N.D. Cal. 2006). **First,** Joele Frank was hired by outside counsel, not Velodyne. *See, e.g.*, *Stardock Sys., Inc. v. Reiche*, U.S. Dist. LEXIS 204438, at *6 (N.D. Cal. 2018) (describing a party's reliance on the functional equivalent test as "misguided" where the client's attorneys, and not the client, hired the PR firm). **Second**, there is no evidence that Joele Frank was integral to the Company's day-to-day operations. *Contra Schaffer v. Gregory Village Partners*, 78 F. Supp. 3d 1198, 1204-05 (N.D. Cal. 2015); *Medversant Techs., LLC v. Morrisey Assoc., Inc.*, 2011 Dist. LEXIS 159749, at *4-5 (C.D. Cal. 2011) (consultants were functional employees as they "essentially function[ed] as Medversant's public relations department."). **Finally**, the retainer agreement between Keker and Joele Frank demonstrates that it was hired to assist with, and Plaintiff quotes, "strategic communications and investor relations." *See Dig. Mentor, Inc. v. Ovivio USA, LLC*, 2020 U.S. Dist. LEXIS 18527, at *4-5 (W.D. Wash 2020) (third party consultant failed the functional equivalent test where there was "little to indicate that communications between [the consultant and the plaintiff's counsel] were primarily of a legal, as opposed to a business, nature."). Simply put, Velodyne has not demonstrated that Joele Frank was retained for

July 19, 2023

any purpose other than to act as an additional PR arm at a time of expected media scrutiny. *Valeant*, 2021 U.S. Dist. LEXIS 136875, at \*61.

  **<u>*The Privilege Was Waived:*</u>** As set forth above, by sharing attorney-client communications with a non-essential third party like Joele Frank, Velodyne waived any claim of attorney-client or work product protection. *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1070 (N.D. Cal. 2002). Any communications which might have been privileged absent Joele Frank's involvement result in waiver of that privilege when the information was shared with the PR firm. As here, "when a public relations consultant has performed nothing other than standard PR services, the normal rule applies in disclosure of privileged documents such as to result in waiver." *Valeant*, 2021 U.S. Dist. LEXIS 136875 at \*47; *Bd. of Trs. of the Cal. Winery Workers Pension Tr. Fund v. Union Bank Na*, 2012 U.S. Dist. LEXIS 206259, at \*9 (N.D. Cal. 2012) (Illston, J). Judge Spero is in accord under facts far more like those here than in Judge Corley's *Kirkpatrick v. City of Oakland* decision. *See Anderson*, 329 F.R.D. at 632-35. There, following an *in camera* review of exemplar communications (which Defendants here resist), the court found the communications were privileged because the PR consultant was hired specifically to, unlike here, assist with litigation. Further, Defendants, as the party resisting privilege, have not met their burden to prove that Joele Frank actually assisted with anticipated litigation or that they would have communicated with Joele Frank in a "substantially similar form but for the prospect of litigation." *Id*. (citation omitted).

  Velodyne has also waived privilege by failing to provide a privilege log for any of their own or Joele Frank's productions, despite being required to do so under the ***express*** ESI Protocol agreement and applicable discovery rules. *See* ECF No. 146, at § 19. A party withholding information otherwise discoverable by claiming privilege or work product protection must "describe the nature of the documents, communications, or other tangible things not produced or disclosed." FED. R. CIV. P. 26(b)(5)(A)(ii). "Boilerplate objections or blanket refusals [. . .] are insufficient to assert a privilege." *Burlington N. Santa Fe Ry. Co. vs. U.S. Dist. Court for the Dist. of Mont.*, 408 F. 3d. 1142, 1149 (9th Cir. 2005); *see Humphreys*, 2006 U.S. Dist. LEXIS 20148, at \*5 (ordering defendant to produce a privilege log by a date certain and deeming privilege waived, if defendant failed to do so) (Illston, J.). Defendants' failure to produce privilege logs for more than ***six months*** and counting after Joele Frank first responded to Plaintiff's subpoena waives any purported privilege over their communications with Joele Frank.[5] *See Burlington*, 408 F.3d at 1149 (affirming finding of waiver where producing party failed to file a privilege log five months after the 30-day deadline for responding to discovery requests). Indeed, it is standard practice in this District that privilege logs be produced either concurrently with, or within 14 days of, a production of documents and that failure to produce timely privilege logs results in waiver. *See*, *e.g.*, *Civ.*

---

[5]  Defendants misleadingly imply that Joele Frank withheld or redacted documents in its production on the basis of privilege. Not so. As stated in an April 25, 2023 email from Joele Frank's counsel to Lead Plaintiff's counsel: "the privilege is being asserted by Velodyne. As a result, that review is being conducted by counsel for Velodyne." Lead Plaintiff will gladly provide this email to the Court upon request.

*Standing Orders for Mag. J. Joseph C. Spero*, at § 15 (N.D. Cal. 2021).[6] Accordingly, Defendants' failure to produce privilege logs further supports a finding of waiver here.

**Ripeness:** While Defendants claim this dispute is not ripe because, ironically, Plaintiff has yet to review their nonexistent privilege log, Defendants' interrogatory responses establish this matter is ripe for adjudication. **Exhibit A**, at Response No. 10. There, Defendants admitted sharing privileged information with Joele Frank, stating, "Joele Frank orally discussed the Audit Committee investigation with one or more of Defendants and/or Keker on numerous occasions." *Id*. Given Defendants' obligation to produce a privilege log on a rolling basis under the ESI Protocol and their failure to do so, Defendants' ripeness argument is not well taken.

## DEFENDANTS' POSITION

Plaintiff argues that, as a categorical matter, ***none*** of the communications between and among Velodyne, the Audit Committee of its Board, the Audit Committee's attorneys (Keker, Van Nest & Peters ("Keker")), and Joele Frank are protected by attorney-client privilege or the work product doctrine. That sweeping proposition is meritless.

**Background**: In December 2020, the Audit Committee retained independent counsel, Keker, to assist in an investigation of potential misconduct by David Hall and Marta Hall. As the Court knows, Keker is one of the nation's most respected law firms, with deep expertise in advising companies and boards on corporate governance matters (including investigations). The Keker team was led by Laurie Carr Mims (currently the firm's Managing Partner) and Steven Ragland (Partner and Keker's Associate General Counsel). Among the purposes for which the Audit Committee retained Keker was to provide "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." VLDR_SL_000002528.

In connection with that representation, Keker retained Joele Frank, one of the world's leading communication consulting firms. Joele Frank is routinely engaged to assist with litigation support, investor relations, corporate transactions and communications, crisis communications and shareholder activism. (See https://www.joelefrank.com/.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ JF_000471. Despite the indisputably legal nature of the Audit Committee's retention of Keker, and Keker's retention of Joele Frank, Plaintiff nevertheless contends that by hiring Joele Frank to help provide legal advice to the Audit Committee, Keker somehow waived privilege as to (i) ***all*** communications where Joele Frank was a participant, and (ii) ***every*** document Joele Frank touched. Plaintiff's position is contrary to law.

**Documents Shared With Crisis Communications Firms May Be Protected From Disclosure**: Contrary to Plaintiff's novel and radical position, documents shared with crisis communications firms such as Joele Frank are routinely found to be privileged, especially if (as here) the "communications were made for the primary purpose of giving or receiving legal advice." *Klein*

---

[6]       The standing orders for Magistrate Judges Beeler and Cisneros are also in accord.

-10-                                                            July 19, 2023

*v. Meta Platforms, Inc.*, 2022 WL 767096, at \*3 (N.D. Cal. Mar. 11, 2022).  Indeed, in *Kirkpatrick v. City of Oakland*, 2022 WL 137628 (N.D. Cal. Jan. 14, 2022), Magistrate Judge (now Judge) Corley specifically considered whether ***communications involving Keker, its client and a third-party public relations consultant were privileged and held that they were***.  *Id.* at \*1-2.  Judge Corley explained that disclosure to a third-party PR consultant does not necessarily constitute a waiver, noting that "where disclosure to the third party is necessary for the attorney to render sound legal advice, the privilege is not waived."  *Id.* at \*1 (citation and internal quotation marks omitted).  Judge Corley went on to elaborate that "[t]he critical question when considering whether a third party is an agent of the attorney – thus extending the privilege – is whether a communication to that party was made for a legal purpose."  *Id.* (citation and internal quotation marks omitted).  Because Keker's communications with the PR professional were "part of a litigation strategy and the communications would not have been created in substantially similar form but for the prospect of litigation," the communications were privileged and there was no waiver.  *Id.* at \*2 (internal citations omitted).  Judge Corley's reasoning and conclusion apply with equal force here: Keker's communications with Joele Frank were "for a legal purpose," were "part of a litigation strategy," and were prompted by (and reflect) "the prospect of litigation."

Judge Corley's decision is consistent with other cases addressing the issue.  Specifically, in determining if documents shared with a communications firm are privileged, courts assess whether they are "(1) confidential communications (2) between lawyers and public relations consultants (3) hired by the lawyers to assist them in dealing with the media in cases [that present public relations concerns] (4) that are made for the purpose of giving or receiving advice (5) directed at handling the client's legal problems [and if so, they] are protected by the attorney-client privilege."  *In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003) (hereinafter *Grand Jury Subpoenas*); *see also Stardock Sys., Inc. v. Reiche*, 2018 WL 6259536, at \*1, \*6 (N.D. Cal. Nov. 30, 2018) (adopting *Grand Jury Subpoenas* standard).  Each element is satisfied here.

Even the cases Plaintiff cites make clear that "[t]here may be situations in which an attorney's use of a public relations consultant to develop a litigation strategy ... make communications between the attorney, the client, and the consultant reasonably necessary for the accomplishment of the purpose for which the attorney was consulted."  *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 632 (N.D. Cal. 2019); *see also Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, \*7 (D.N.J. July 22, 2021) (communications involving PR professionals may be protected if "the communications … principally involved and were directed at the provision of legal advice."); *In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL 1699536, at \*6–7 (N.D. Cal. June 16, 2006) ("[C]ourts have taken an ***expansive view of protected communications*** between independent contractors ***and counsel***… If the third party consultant is involved in the giving of legal advice, the privilege obtains.") (emphasis added).

In addition to attorney-client privilege, Joele Frank's documents may be protected by the work product doctrine.  As noted, Keker expressly retained Joele Frank to assist it in its legal representation of Velodyne's Audit Committee, which focused on the litigation risk posed by the Halls' conduct.  Given that relationship, it is clear that Joele Frank's documents are within the scope of protected work product.  *See, e.g., Kirkpatrick*, 2022 WL 137628, at \*2 (finding

challenged documents were "all … protected by the attorney-client or attorney work-product privileges"); *see also Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (sharing documents with a public relations firm does not waive work product protection); *Schmidt v. Levi Strauss Co.*, 2007 WL 628660, at *4 (N.D. Cal. Feb. 28, 2007) ("[T]he work product privilege is not automatically waived by any disclosure to third persons.").

To be clear, Defendants have never claimed that ***all*** of the Joele Frank communications are protected by the attorney-client privilege or the work product doctrine. However, given the purpose for which Joele Frank was hired, it is evident that documents created by Joele Frank at the direction of Keker, as well as confidential communications involving Joele Frank and the Audit Committee, Velodyne and their counsel, fit within the framework laid out in *Grand Jury Subpoenas*. Again, Keker retained Joele Frank in February 2021, only after the Audit Committee began to consider how to address the Halls' inappropriate conduct. Given the Halls' positions, the nature of their conduct, and their refusal to cooperate with the Audit Committee, the Audit Committee's determination presented a clear litigation risk—one that would require a careful, legally-driven communication strategy to effectively navigate. Because Joele Frank's role was to assist counsel in crafting such a strategy, *see Kirkpatrick,* 2022 WL 137628, at *2, the Court should reject Plaintiff's categorical argument that no privilege can apply to the Joele Frank documents.

**Defendants' Privilege Review of the Joele Frank Documents**: As *Grand Jury Subpoenas* instructs, the only way to determine which of the Joele Frank documents are privileged is to conduct a document-by-document analysis. That is exactly what Defendants have done. Joele Frank has to date produced 1,828 non-privileged documents responsive to Plaintiff's subpoena, and has redacted for privilege portions of only 44 documents.[7] The Joele Frank privilege review is expected to be completed within the next two weeks, and Defendants will produce a privilege log by that time. Plaintiff will have ample time to follow up on specific privilege assertions (if necessary). This timeline is entirely appropriate given the complexity of this privilege review.

Moreover, Plaintiff's argument that a purportedly late privilege log somehow triggered a wholesale waiver of Velodyne's privilege is contradicted by black-letter Ninth Circuit law—as Plaintiff's own case makes clear. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005) (rejecting "the per se waiver rule" for untimely privilege logs); *see also Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 282 (N.D. Cal. 2015) (denying waiver despite delay of over one year); *LD v. United Behavioral Health*, 2022 WL 4878726, at *5 (N.D. Cal. Oct. 3, 2022) (waiver for delay would be "too drastic a sanction").

**Ripeness**: Finally, Defendants note that there is no ripe dispute at this point. As noted above, Defendants anticipate producing a privilege log within the next two weeks. That privilege log may well resolve whatever issues exist – or, at the very least, narrow those issues. Plaintiff cannot justify jumping the gun with any claim of prejudice given (1) the imminent completion of the Joele Frank production and privilege log, and (2) the fact that there is not yet any deadline for completion

---

[7]     Plaintiff misleadingly implies that Defendants redacted documents discussing conversations between Velodyne's counsel and a reporter, but in reality, the portions reflecting correspondence with a reporter were unredacted. Only the privileged portions were redacted.

-12-                                                                    July 19, 2023

of fact discovery.  *See, e.g.*, *Pension Plan for Pension Tr. Fund for Operating Eng'rs v. Giacalone Elec. Servs., Inc.*, 2015 WL 3956143, at *4 n.1 (N.D. Cal. June 29, 2015).

Dated: July 19, 2023                                     Respectfully submitted,


**KAHN SWICK & FOTI, LLP**

By:  _____
                                *s/ Ramzi Abadou*
                                RAMZI ABADOU
                        *Attorneys for Class Representative*
                                Diane Smith


**WILMER CUTLER PICKERING HALE AND DORR LLP**

By:  _____
                                *s/ Kevin P. Muck*
                                KEVIN P. MUCK
                        *Attorneys for Defendants*
        Velodyne Lidar, Inc., Anand Gopalan, Andrew Hamer,
                James A. Graf, and Michael Dee


## SIGNATURE ATTESTATION

I, Ramzi Abadou, am the ECF User whose ID and password are being used to file this JOINT CASE MANAGEMENT STATEMENT. In compliance with Civil Local Rule 5-1(i), I hereby attest that concurrence in the filing of this document has been obtained from the signatory.


                                *s/ Ramzi Abadou*
                                RAMZI ABADOU