1  Ramzi Abadou (SBN 222567)
   KAHN SWICK & FOTI, LLP
2  580 California Street, Suite 1200
   San Francisco, California 94104
3  Telephone: (415) 459-6900
   Facsimile: (504) 455-1498
4  ramzi.abadou@ksfcounsel.com

5
   *Class Counsel and Counsel for*
6  *Class Representative, Diane Smith*

7  [Additional counsel on signature page]

8
                    **UNITED STATES DISTRICT COURT**
9                  **NORTHERN DISTRICT OF CALIFORNIA**
                      **SAN FRANCISCO DIVISION**
10

11  MEYSAM MORADPOUR, et al.,          )   Case No. 3:21-CV-01486-SI
                                       )
12                      Plaintiffs,    )
                                       )   **CLASS REPRESENTATIVE DIANE**
13                                     )   **SMITH'S NOTICE OF MOTION AND**
                                       )   **MOTION FOR PRELIMINARY APPROVAL**
14            v.                       )   **OF PROPOSED CLASS ACTION**
                                       )   **SETTLEMENT AND MEMORANDUM OF**
15  VELODYNE LIDAR, INC., et al.,      )   **POINTS AND AUTHORITIES IN SUPPORT**
                                       )   **THEREOF**
16                      Defendants.    )
                                       )   **CLASS ACTION**
17                                     )
                                       )   Judge:      Hon. Susan Illston
18                                     )   Date:       April 19, 2024
                                       )   Time:       10:00 a.m.
19                                     )   Courtroom:  1 – 17th Floor
                                       )
20  _____)

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................2

II.  BACKGROUND .................................................................................................3

   A.  The Pleading Stage ..............................................................................3

   B.  Class Certification ...............................................................................5

   C.  Discovery .............................................................................................6

   D.  Settlement ............................................................................................7

III.  SUMMARY AND REASONS FOR THE SETTLEMENT.................................8

IV.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED .........................9

   A.  The Law Favors and Encourages Settlements ........................................9

   B.  The Proposed Settlement Should be Preliminarily Approved ...............10

      1.  The Proposed Settlement Was Vigorously Negotiated, Is Supported by Experienced Counsel, and Was Reached with the Assistance of an Experienced and Neutral Mediator ............................................................12

      2.  Class Representative and Class Counsel have Adequately Represented the Class ...................................................................................13

      3.  The Proposed Settlement Provides a Favorable Recovery for the Class ...14

      4.  The Cost, Risks, and Delay of Trial and Appeal Support Approval of the Settlement .................................................................................14

      5.  The Proposed Settlement Does Not Unjustly Favor any Settlement Class Members, Including Lead Plaintiff ...............................................16

      6.  The Range of Possible Recovery and the Point in the Ranges at Which Settlement is Reasonable Support Settlement..............................................17

      7.  The Stage of the Proceedings and the Discovery Completed Support Settlement .............................................................................18

   C.  The Proposed Notice to the Class is Adequate .......................................20

   D.  The Proposed Attorneys' Fees, Expenses, and Class Representative's Reimbursement Amount are Reasonable .................................................22

V.  THE PROPOSED CLAIMS ADMINISTRATOR ...........................................24

VI.  PROPOSED SCHEDULE OF EVENTS ........................................................25

VII.  CONCLUSION...............................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Acosta v. Frito-Lay, Inc.*,
   2018 U.S. Dist. LEXIS 75998 (N.D. Cal. 2018) ........................................................ 10

*Alberto v. GMRI, Inc.*,
   252 F.R.D. 652 (E.D. Cal. 2008) ............................................................................. 11

*Bower v. Cycle Gear, Inc.*,
   2016 U.S. Dist. LEXIS 112455 (N.D. Cal. 2016) ...................................................... 16

*Chan v. Sutter Health Sacramento Sierra Region*,
   2016 U.S. Dist. LEXIS 192338 (C.D. Cal. 2016) ...................................................... 12

*Craft v. Cnty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) .................................................................... 23

*Davis v. Yelp, Inc.*,
   2022 U.S. Dist. LEXIS 131628 (N.D. Cal. 2022) ...................................................... 22

*Durham v. Sachs Elec. Co.*,
   2022 U.S. Dist. LEXIS 113075 (N.D. Cal. 2022) ...................................................... 18

*Edwards v. Nat'l Milk Producers Fed'n*,
   2017 U.S. Dist. LEXIS 145217 (N.D. Cal. 2017) ........................................................ 9

*Etter v. Allstate Ins. Co.*,
   2018 U.S. Dist. LEXIS 90287 (N.D. Cal. 2018) .................................................... 10-11

*Fleming et al. v. Impax Labs. Inc. et al.*,
   No. 16-cv-06557-HSG (N.D. Cal. 2022) ................................................................... 23

*Flynn v. Sientra, Inc.*,
   2017 U.S. Dist. LEXIS 223044 (C.D. Cal. 2017) ...................................................... 10

*Foster v. Adams & Assocs.*,
   2022 U.S. Dist. LEXIS 25071 (N.D. Cal. 2022) ....................................................... 13

*Gudimetla v. Ambow Educ. Holding*,
   2015 U.S. Dist. LEXIS 187106 (C.D. Cal. 2015) ...................................................... 12

*Hall v. Gopalan, et al.*,
   No.22CV005713 (Cal. Sup. Ct. January 21, 2022) ...................................................... 3

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................... 11, 13

*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 U.S. Dist. LEXIS 162120 (N.D. Cal. 2016) ........................................................ 15

*Hefler v. Wells Fargo & Co.*,
   2018 U.S. Dist. LEXIS 213045 (N.D. Cal. 2018) .................................................. 13, 15

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. 2006) ........................................................ 15

*In re Celera Corp. Sec. Litig.*,
   2015 U.S. Dist. LEXIS 42228 (N.D. Cal. 2015) ........................................................ 16

*In re Charles Schwab Corp. Secs. Litig.*,
   2011 U.S. Dist. LEXIS 44547 (N.D. Cal. 2011) ........................................................ 16

*In re CV Therapeutics, Inc. Sec. Litig.*,
   No. 03-cv-03709-SI (N.D. Cal. Apr. 4, 2007) ........................................................ 23

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 U.S. Dist. LEXIS 121886 (N.D. Cal. 2019) .................................................. 18, 19

*In re Haier Freezer Consumer Litig.*,
   2013 U.S. Dist. LEXIS 72132 (N.D. Cal. 2013) ........................................................ 10

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .......................................................................................... 9

*In re Gilead Scis. Sec. Litig.*,
   No. 03-cv-04999-SI (N.D. Cal. 2010) ........................................................................ 23

*In re Illumina, Inc. Secs. Litig.*,
   2019 U.S. Dist. LEXIS 217596 (S.D. Cal. 2019) ...................................................... 11

*In re LinkedIn User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) .......................................................................... 14-15

*In re Lyft Inc. Sec. Litig.*,
   2022 U.S. Dist. LEXIS 226982 (N.D. Cal. 2022) ...................................................... 17

*In re MacBook Keyboard Litig.*,
   2023 U.S. Dist. LEXIS 92063 (N.D. Cal. 2023) ........................................................ 18

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .................................................................................. 17-18

*In re Merit Med. Sys., Inc., Sec. Litig.*,
   No. 19-cv-02326-DOC (C.D. Cal. 2022) .................................................................... 23

*In re MGM Mirage Sec. Litig.*,
   708 F. App'x 894 (9th Cir. 2017) ................................................................................ 21

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007)................................................................. 18, 22

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ...................................................................................... 11

*In re Portal Software Sec. Litig.*,
  2007 U.S. Dist. LEXIS 51794 (N.D. Cal. 2007) ................................................... 17, 22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 49885 (N.D. Cal. 2013) ........................................................ 23

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2019 U.S. Dist. LEXIS 79679 (N.D. Cal. 2019) ........................................................ 19

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
  445 F. Supp. 3d 508 (N.D. Cal. 2020) ........................................................................ 24

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  845 Fed. Appx. 563 (9th Cir. 2021) ............................................................................ 24

*In re Zynga Sec. Litig.*,
  2015 U.S. Dist. LEXIS 145728 (N.D. Cal. 2015) ...................................................... 10

*Janus Capital Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ..................................................................................................... 12

*Lagarde v. Support.com, Inc.*,
  2013 U.S. Dist. LEXIS 42725 (N.D. Cal. 2013) ........................................................ 18

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ................................................................................. 11, 20

*Mendoza v. Hyundai Motor Co.*,
  2017 U.S. Dist. LEXIS 9129 (N.D. Cal. 2017) .......................................................... 11

*Mild v. PPG Indus.*,
  2019 U.S. Dist. LEXIS 124352 (C.D. Cal. 2019) ................................................. 13-14

*Moradpour v. Velodyne Lidar, Inc.*,
  2022 U.S. Dist. LEXIS 117273 (N.D. Cal. 2022) ...................................................... 19

*Moradpour v. Velodyne Lidar, Inc.*,
  2022 U.S. Dist. LEXIS 117272 (N.D. Cal. 2022) ...................................................... 19

*Moradpour v. Velodyne Lidar, Inc.*,
  2022 U.S. Dist. LEXIS 241994 (N.D. Cal. 2022) ...................................................... 19

*Moradpour v. Velodyne Lidar, Inc.*,
  2023 U.S. Dist. LEXIS 84234 (N.D. Cal. 2023) ........................................................ 19

*Moradpour v. Velodyne Lidar, Inc.*,
2023 U.S. Dist. LEXIS 142783 (N.D. Cal. 2023) ........................................................ 19

*Morales v. Stevco, Inc.*,
2011 U.S. Dist. LEXIS 130604 (E.D. Cal. 2011) ................................................... 12-13

*Sudunagunta v. NantKwest, Inc.*,
2019 U.S. Dist. LEXIS 81337 (C.D. Cal. 2019) ......................................................... 12

*Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................ 18

*Nguyen v. Radient Pharms. Corp.*,
2014 U.S. Dist. LEXIS 63312 (C.D. Cal. 2014) ......................................................... 12

*Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*,
774 F.3d 598 (9th Cir. 2014) ...................................................................................... 12

*Ramirez v. Trans Union, L.L.C.*,
2022 U.S. Dist. LEXIS 226302 (N.D. Cal. 2022) ....................................................... 18

*Rieckborn v. Velti PLC*,
2015 U.S. Dist. LEXIS 13542 (N.D. Cal. 2015) ......................................................... 17

*Seb Inv. Mgmt. AB v. Symantec Corp.*,
2022 U.S. Dist. LEXIS 24241 (N.D. Cal. 2022) ......................................................... 18

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ...................................................................................... 22

*Vataj v. Johnson*,
2021 U.S. Dist. LEXIS 214678 (N.D. Cal. 2021) ....................................................... 21

*Wash. Pub. Power Supply Sys. Secs. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ...................................................................................... 22

*Williams v. Condensed Curriculum Int'l, Inc.*,
2022 U.S. Dist. LEXIS 244178 (N.D. Cal. 2022) ................................................... 9, 12

*Williams v. Costco Wholesale Corp.*,
2010 U.S. Dist. LEXIS 19674 (S.D. Cal. 2010) ......................................................... 10

*Wong v. Arlo Techs.*,
2021 U.S. Dist. LEXIS 58514 (N.D. Cal. 2021) ......................................................... 14

*Xuechen Yang v. Focus Media Holding, Ltd.*,
2014 U.S. Dist. LEXIS 126738 (S.D.N.Y. 2014) ....................................................... 12

*Young v. Cnty. of Contra Costa*,
2021 U.S. Dist. LEXIS 37813 (N.D. Cal. 2021) ........................................................... 9

**Statutes**

15 U.S.C. § 78u-4 ..................................................................................................... *passim*

28 U.S.C. § 1715 (2005) ........................................................................................................ 22

**Rules**

FED. R. CIV. P. 23 ..................................................................................................... *passim*

FED. R. CIV. P. 30 ........................................................................................................... 7

**Other**

Edward Flores and Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review*, NERA Econ.
  Consulting (2024) ............................................................................................... 2, 14

5 Daniel R. Coquillette, Gregory P. Joseph, Georgene M. Vairo & Chilton Davis Varner,
  *Moore's Federal Practice,* § 23.85[2][e] (3d ed. 2018)) ............................................. 18

Procedural Guidance for Class Action Settlements,
  https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last
  accessed March 12, 2024) (N.D. Cal. Aug. 4, 2022)................................................. *passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

**PLEASE TAKE NOTICE** that on April 19, 2024, at 10:00 a.m. PST, or as soon thereafter as counsel may be heard, Diane Smith ("Lead Plaintiff," or "Class Representative") will and does hereby move the Court for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"): (1) preliminarily approving the proposed settlement ("Settlement") as set forth in the parties' Stipulation of Settlement dated March 6, 2024 ("Stipulation"); (2) approving the form and manner of giving notice of the proposed Settlement to the Class; (3) scheduling a hearing before the Court to determine whether the proposed Settlement, the proposed Plan of Allocation, and counsel's motion for an award of attorneys' fees and litigation expenses, including an award to Class Representative, should be approved; and (4) providing such other and further relief as this Court deems just and proper.[1]

This motion is based on the Memorandum of Points and Authorities below, the Declaration of Ramzi Abadou ("Adabou Decl.") and exhibits attached thereto, all prior pleadings in this Litigation, and such additional evidence or argument as may be requested by the Court. A [Proposed] Order Granting Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement, For Issuance of Notice to the Class, and for Scheduling of Fairness Hearing ("Notice Order") is also submitted herewith as Exhibit A to the Stipulation. *See, generally,* Abadou Decl. Ex. 1.

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the proposed $27,500,000 cash recovery and other terms of the proposed Settlement are within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to Class Members.

2.    Whether the Court should approve the form and substance of the proposed Notice of Pendency and Proposed Settlement of Class Action ("Notice"), Summary Notice of Proposed Settlement of Class Action ("Summary Notice"), and the Proof of Claim and Release ("Proof of

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation.

1    Claim"), appended as Exhibits A-1 through A-3, respectively, to the Stipulation, as well as the manner

2    of notifying the Class of the proposed Settlement.

3           3.      Whether the Court should set a date for a hearing to determine whether the Settlement

4    and the Plan of Allocation should be finally approved and to consider counsel's application for an

5    award of attorneys' fees and payment of expenses, including Awards to the class representative

6    pursuant to 15 U.S.C. § 78u-4(a)(4) ("Fairness Hearing").

7    **MEMORANDUM OF POINTS AND AUTHORITIES**

8    **I.    INTRODUCTION**

9          The parties have entered the Stipulation to resolve the Class's claims against Defendants

10   Velodyne Lidar, Inc. ("Velodyne" or the "Company"), Anand Gopalan, James A. Graf, Michael Dee,

11   and Andrew Hamer (collectively "Defendants"). The Settlement is memorialized in the Stipulation,

12   and filed concurrently herewith. The Settlement provides for the payment of $27,500,000 in cash for

13   the benefit of the Class, which represents a recovery of approximately 14.5% of the maximum class-

14   wide damages as estimated by Lead Plaintiff's expert.[2] This recovery is substantial under any measure

15   but particularly considering that the median settlement recovery for all securities cases since 2021

16   represented 1.8% of investor losses. *See* Edward Flores and Svetlana Starykh, *Recent Trends in*

17   *Securities Class Action Litigation: 2023 Full-Year Review*, NERA Econ. Consulting (2024). The result

18   obtained demonstrates the tenacity and skill of Lead Counsel and the dedication by Lead Plaintiff (and

19   her husband) to successfully resolve this novel case on the Class's behalf.

20         The Settlement is the product of efficient but zealous litigation followed by numerous and

21   extensive arm's-length negotiations between experienced and knowledgeable counsel, facilitated by

22   mediator Jed Melnick, Esq. (JAMS). To obtain this exceptional result, Lead Plaintiff and Lead

23   Counsel, Kahn Swick & Foti, LLC ("KSF"), conducted an extensive investigation, including review

24   of: (i) filings with the Securities and Exchange Commission ("SEC"); (ii) Velodyne press releases;

25

26       [2]    The Class was certified by order of the Court dated July 14, 2023. ECF No. 193. The definition
27   of the Class as set forth therein and in the Stipulation is consistent with the Court's July 14, 2023
     Order. *Id.* In addition, the Class ("Settlement Class" or "Class") as set forth herein is identical to the
28   certified Class.

(iii) news reports about Velodyne; (iv) analyst reports; and (v) other publicly available information about Velodyne. In addition, Lead Counsel interviewed several key witnesses in connection with its investigation.

Lead Counsel also: (i) investigated, drafted and filed a comprehensive Consolidated Complaint and Consolidated Amended Complaint; (ii) defeated Defendants' Motion to Dismiss, in part; (iii) filed a motion for class certification, which the Court granted following the depositions of Lead Plaintiff and her husband; (iv) obtained and reviewed approximately 341,780 pages of documents from Defendants and numerous third parties; (v) engaged in several rounds of briefing regarding discovery disputes with Defendants; (vi) prepared and noticed an exhaustive 30(b)(6) deposition of Velodyne; and (vii) participated in an arm's-length mediation process, including two lengthy mediation sessions with Defendants and extensive negotiations outside those sessions *via* Mr. Melnick that involved detailed briefs from the parties.

Based on an informed evaluation of the facts and governing legal principles, and their recognition of the substantial risk and expense of continued litigation, Lead Plaintiff and Lead Counsel respectfully submit that the proposed Settlement is fair, reasonable, and adequate under Rule 23. Accordingly, Lead Plaintiff moves for preliminary approval of the proposed Settlement and submits this Memorandum of Points and Authorities in support thereof.

## II.    BACKGROUND

### A.    The Pleading Stage

Lead Plaintiffs filed their Consolidated Complaint on September 1, 2021. ECF No. 73. Defendants moved to dismiss it on November 1, 2021, and Lead Plaintiffs responded in opposition on January 7, 2022. ECF Nos. 83, 92. Then on January 26, 2022, the parties stipulated to vacate briefing on Defendants' motion to dismiss, so that Lead Plaintiffs could file an amended complaint, based on facts alleged in David Hall's filing of a lawsuit captioned *Hall et al., v. Gopalan, et al.*, Superior Court of California (County of Alameda) Case No. 22CV005713 on January 21, 2022. ECF No. 95.[3]

---

[3]    Neither the *Hall* Action, nor any other related litigation, will be affected by the settlement in this matter.

On February 11, 2022, Lead Plaintiffs filed the operative Consolidated Amended Complaint for Violations of the Federal Securities Laws (ECF No. 99, "CAC"). The CAC pled the longest alleged class period ("Class Period") from the initial actions spanning from July 2, 2020 through March 17, 2021, inclusive. CAC ¶ 3. The CAC also added multiple allegations concerning Defendants' alleged failure to disclose their efforts to oust Mr. Hall. Specifically, the CAC alleged that, since July 2, 2020, Defendants and Mr. Hall were "actively engaged in an undisclosed and highly damaging dispute over control of Velodyne which, unbeknownst to investors, was harming the Company's business operations and prospects." *Id*. at ¶ 6. The CAC further alleged that: (i) the purpose of the pretextual Audit Committee Investigation, which commenced no later than December 9, 2020, was to oust Mr. Hall; (ii) Velodyne was losing major customers and investors, including Ford Motor Co.; (iii) Velodyne was not on track to achieve its stated guidance due to a loss of customers, increased expenses, and competition; (iv) "Velodyne's internal controls over financial reporting suffered from multiple undisclosed material weaknesses"; and (v) "as a result of the foregoing, Defendants' statements about Velodyne's business, operations, and prospects were materially misleading when made."

Defendants moved to dismiss the CAC on March 4, 2022. ECF No. 102. Defendants principally argued that: (i) Plaintiffs could not state a claim by basing their allegations on David Hall's accusations of wrongdoing; (ii) Plaintiffs did not plead that anything said about Mr. Hall was actionable; (iii) Plaintiffs pled no facts to support the claim that Defendants had a longstanding plan to remove Mr. Hall; (iv) the Audit Committee Investigation was properly disclosed; (v) Mr. Hall's "grave concerns" did not state a claim; (vi) Plaintiffs could not state a claim based on Velodyne's guidance; (vii) the statements regarding Ford did not support a claim; (viii) the CAC did not state a claim regarding internal controls and governance; (ix) the scheme allegations did not state a claim; (x) Plaintiffs' additional scienter theories were insufficient; and (xi) Plaintiffs' control person claim failed. *Id.* Lead Plaintiffs opposed on March 25, 2022 and Defendants replied on April 8, 2022. ECF Nos. 105, 109.

After extensive in-person oral argument on June 10, 2022 (ECF No. 115), the Court denied in

part Defendants' motion on July 1, 2022 as to "(i) the Section 10(b) claims against Velodyne, Gopalan, and Dee based on Hall's ouster; and (ii) the Section 20(a) claims against Gopalan, Dee, and Graf based on Hall's ouster." ECF No. 119, at 31. On July 22, 2022, Lead Plaintiff moved to clarify the Court's Order regarding Defendant Hamer's role as a control person. ECF No. 124. On August 5, 2022, Defendants filed an opposition to Lead Plaintiffs' motion to clarify, and Plaintiffs replied in support on August 12, 2022. ECF Nos. 125-26. On October 12, 2022, the Court clarified its dismissal order to confirm that Defendant Hamer remained a Defendant in this Litigation. ECF No. 130. On August 22, 2022, all Defendants except Defendant Hamer filed their Answer to the CAC, and Defendant Hamer answered the CAC on October 26, 2022. ECF Nos. 127, 132.

**B.    Class Certification**

On March 20, 2023, after retaining a market efficiency expert and submitting an exhaustive expert report to that end, Lead Plaintiff filed her Motion for Class Certification. ECF No. 157. On March 27, 2023, William Smith moved to withdraw as Lead Plaintiff due to his health condition. ECF No. 159. Defendants did not oppose Mr. Smith's motion to withdraw but insisted that his deposition go forward over Plaintiffs' objection. ECF No. 162. On May 3, 2023, the Court granted Mr. Smith's motion to withdraw as well as Defendants' request to depose him. ECF No. 174. On April 20 and May 11, 2023, respectively, Defendants deposed Mrs. Smith and her husband, William.

On May 19, 2023, following the close of class certification discovery, Defendants filed a notice stating they did not oppose class certification. ECF No. 182. Accordingly, following the Class Certification hearing on July 14, 2023 (ECF No. 190), the Court issued an Order that same day granting Lead Plaintiff's Notice of Motion and Motion for Class Certification, enabling the Action to proceed as a class action. ECF No. 193. The Class is defined as all Persons who purchased Velodyne publicly traded securities between July 2, 2020 and March 17, 2021, inclusive and were damaged thereby. ECF No. 193; *See* Stipulation ¶ 1.25. All claims which survived dismissal were certified for class treatment.[4] Excluded from the Class are Defendants and members of their immediate families, the

---

[4]    The claims to be released for purposes of the Settlement are identical to those certified for class treatment.

officers and directors of the Company, at all relevant times, and members of their immediate families, the legal representatives, heirs, successors or assigns of any of the foregoing, and any entity in which Defendants have or had a controlling interest. *Id.* Also excluded from the Class will be those persons, if any, who timely and validly request exclusion from the Class pursuant to the procedure described in this Notice. The Class as defined herein is identical to the Class the Court certified on July 14, 2023.

### C.    Discovery[5]

The parties actively engaged in discovery. Defendants and third parties produced approximately 341,780 pages of documents pursuant to Lead Plaintiff's document requests and 20 subpoenas and litigated various discovery disputes. Specifically, Lead Plaintiffs served Defendants with their first set of Requests for Production of Documents, Interrogatories, and Requests for Admission in November and December of 2022. Defendants responded to Plaintiffs' first set of discovery requests in January of 2023. On May 1, 2023, Lead Plaintiffs served Defendants with their second set of Interrogatories, which Defendants answered on June 14, 2023. On September 12, 2023, Lead Plaintiff served Defendants with her second set of Requests for Production, to which Defendants responded on October 12, 2023. On October 11, 2023, Lead Plaintiff served her third set of Interrogatories on Defendants, which Defendants answered on November 13, 2023.

Defendants began producing documents on November 23, 2022 and concluded document production in substantial part on November 9, 2023, producing a total of 263,502 pages of documents. Lead Plaintiff also subpoenaed, and obtained documents from, multiple third parties, including, *inter alia*: (i) Joele Frank Wilkinson Brimmer Katcher ("Joele Frank"); (ii) Keker, Van Nest & Peters ("Keker"); (iii) David and Marta Hall; (iv) Landis Communications, Inc.; (v) Oppenheimer & Co., Inc. (vi) FINRA Regulation, Inc. ("FINRA"); and (vii) the United States Securities and Exchange Commission. Third parties subpoenaed by Lead Plaintiff produced 11,849 documents in response thereto. On April 11, 2023, following an in-person meet and confer with Defense Counsel, Lead Counsel filed a letter brief regarding disputes over several of Defendants' discovery responses. ECF

---

[5]     Lead Plaintiff will provide a more detailed description of discovery in connection with her motion for final approval.

No. 163. Defendants responded on April 12, 2023. ECF No. 164. On May 4, 2023, the Court resolved the discovery disputes, finding that Lead Plaintiffs were entitled to the requested information but that Defendants' proposal for searching for that information was reasonable. ECF No. 178. On July 19, 2023, the parties filed a joint motion regarding two discovery disputes: (i) whether redactions based on purported privilege should be logged, and (ii) whether privilege may be asserted over documents and communications involving Joele Frank, an external publicist hired by Defendants during the Class Period. ECF No. 196. On August 15, 2023, the Court resolved the dispute, holding that certain information about redacted documents should be provided to allow the parties to ascertain the basis of the asserted privilege and that privilege had not been categorically waived over all communications with Joele Frank. ECF No. 206.

On November 17, 2023, the Court held a status conference primarily focused on privilege issues. ECF No. 212. The Court ordered the parties to meet and confer regarding their various privilege disputes and to report back to the Court by December 15, 2023. *Id.* On January 7, 2023, the parties stipulated to an extension of the reporting deadline to facilitate ongoing settlement discussions. ECF No. 216. On January 9, 2024, Lead Plaintiff served Defendants with her Notice of FED. R. CIV. P. 30(b)(6) Deposition.

### D.    Settlement

During the March 3, 2023, Case Management Conference (ECF No. 151), the Court directed the parties to confer with respect to alternative dispute resolution, determine whether they intend to use a private mediator or instead ask for a settlement conference before a Magistrate Judge, and inform the Court of the parties' position by June 14, 2023. Pursuant to that directive, the parties conferred and informed the Court on June 14, 2023 that they had agreed to use a private mediator, Jed D. Melnick of JAMS. ECF No. 184. The Parties conducted a full day mediation with Mr. Melnick on November 29, 2023. Prior to this mediation, the parties exchanged mediation briefs and associated exhibits laying out their theory of the case and positions regarding prospective damages. Although the parties did not reach an agreement to settle the case during the November 29, 2023 mediation, they agreed that continued settlement negotiations would be fruitful and scheduled a second mediation for January 16,

1   2024. ECF No. 215.

2       On January 19, 2024, following the January 16 mediation session, the parties agreed in

3   principle to accept the mediator's proposal to resolve this matter for $27,500,000 in cash. On January

4   30, 2024, the parties notified the Court that they had an agreement in principle to resolve this matter

5   and requested that the Court stay proceedings to enable them to negotiate and agree to a formal

6   Stipulation of Settlement. ECF No. 218. On February 6, 2024, the Court stayed proceedings and

7   directed the parties to file a joint Case Management Statement by March 22, 2024. ECF No. 219.

8   **III.    SUMMARY AND REASONS FOR THE SETTLEMENT**

9       Given the foregoing, Lead Plaintiff entered this Settlement with a solid understanding of the

10  strengths and weaknesses of her claims. *See* § II, *supra*. Plaintiff also interviewed witnesses and

11  consulted with experts, all while researching applicable law pertaining to her claims and potential

12  defenses thereto. Considering the above, as well as the substantial expense and time necessary to

13  continue prosecuting this Litigation through the completion of merits and expert discovery, trial and

14  appeals, and the considerable uncertainties in predicting the outcome of complex litigation, Lead

15  Plaintiff concluded that a substantial risk existed that the Class could recover less than the Settlement,

16  or nothing at all, if the Litigation continued.

17      The Settlement requires Defendants to fund, or to cause their insurance carrier(s) to fund,

18  $27,500,000 (the "Settlement Amount"). The Settlement Amount, plus all interest gained thereon,

19  comprises the Settlement Fund. *See* Stipulation ¶¶ 1.27, 2.1. Under the Notice Order, the Settlement

20  Amount shall be deposited into the Escrow Account within 20 business days after the Court signs and

21  enters the Notice Order. *Id.* ¶ 2.1. The Settlement Fund will then begin earning interest for the benefit

22  of the Class. *Id.* ¶ 2.3.

23      Once Notice and Administration Expenses, Taxes and Tax Expenses, and Court-approved

24  attorneys' fees and expenses and awards to class representatives pursuant to 15 U.S.C. § 78u-4(a)(4)

25  have been paid from the Settlement Fund, the remaining amount (the "Net Settlement Fund") shall be

26  distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants. Stipulation

27  ¶ 6.2. Any balance that still remains in the Net Settlement Fund after reallocation(s) and payment(s)

28

and that is not feasible or economical to reallocate shall be contributed as a *cy pres* award to Mothers Against Drunk Driving ("MADD"), a 501(c)(3) organization which, *inter alia*, "supports the safe development of autonomous vehicles and works to build public acceptance for the adoption of this life saving technology."[6] Similarly, "Velodyne develop[ed] and market[ed] lidar solutions for autonomous vehicles, driver assistance, … and other uses." Compl. ¶ 47. Accordingly, a *cy pres* award to MADD complies with Northern District Guidance. *See* N.D. Cal. Guid. ¶ 8.[7] Lead Counsel has no relationship with the proposed *cy pres* recipient.

## IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.    The Law Favors and Encourages Settlements

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).[8] "Indeed, there is an overriding public interest in settling and quieting litigation and this is particularly true in class action suits." *Edwards v. Nat'l Milk Producers Fed'n*, 2017 U.S. Dist. LEXIS 145217, at *17 (N.D. Cal. 2017). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties . . . must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Young v. Cnty. of Contra Costa*, 2021 U.S. Dist. LEXIS 37813, at *16 (N.D. Cal. 2021). Recognizing that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation," courts favor approval of settlements. *Williams v. Condensed Curriculum Int'l, Inc.*, 2022 U.S. Dist. LEXIS 244178, at *7 (N.D. Cal. 2022).

---

[6]    *See* MADD, *Advanced Technology*, https://madd.org/advanced-technology/.

[7]    For ease of reference, a chart setting forth the N.D. Cal. procedural guidance requirements, along with where the information addressing the requirements is attached as **Appendix A**.

[8]    All emphasis added and internal citations omitted unless otherwise noted.

**B.    The Proposed Settlement Should be Preliminarily Approved**

Judicial approval of class action settlements occurs in two stages: (i) preliminary approval, followed by the distribution of notice to the class; and (ii) final approval. *Acosta v. Frito-Lay, Inc.*, 2018 U.S. Dist. LEXIS 75998, at *13 (N.D. Cal. 2018). In this first stage of the approval process, "the Court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class." *Id.*

Accordingly, at this preliminary approval stage, the "Court need only determine whether the proposed settlement appears on its face to be fair" and "falls within the range of possible approval." *Williams v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 19674, at *15-16 (S.D. Cal. 2010). The Court is not presently required to determine whether the proposed Settlement is fair, reasonable, and adequate. *Flynn v. Sientra, Inc.*, 2017 U.S. Dist. LEXIS 223044, at *36 (C.D. Cal. 2017) ("At the preliminary approval stage, there is an initial presumption of fairness"). That evaluation is made at the final approval stage, after notice of the proposed Settlement has been given to proposed Settlement Class Members and they have had an opportunity both to voice their views of the proposed Settlement and to exclude themselves from the Class. *In re Zynga Sec. Litig.*, 2015 U.S. Dist. LEXIS 145728, at *32 (N.D. Cal. 2015) ("[A] full fairness analysis is unnecessary at this [preliminary] stage.").

If the Court "finds the proposed settlement fair to its members," it will then "schedule[] a fairness hearing where it will make a final determination of the class settlement." *In re Haier Freezer Consumer Litig.*, 2013 U.S. Dist. LEXIS 72132, at *9 (N.D. Cal. 2013). At final approval, the Court will be asked to determine whether the Settlement is "fair, reasonable, and adequate." Under Rule 23, courts must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2)(A)–(D). *See also Etter v. Allstate Ins. Co.*, 2018 U.S. Dist. LEXIS 90287, at *3 (N.D. Cal. 2018) ("Preliminary approval is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (quotations omitted); *In re Illumina, Inc. Secs. Litig.*, 2019 U.S. Dist. LEXIS 217596, at *14-15 (S.D. Cal. 2019) (same).

In addition, the Ninth Circuit uses the following factors for preliminary approval, several of which overlap with Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (discussing the *Hanlon* factors).[9] As discussed below, the proposed Settlement readily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit *Hanlon* factors and Northern District Guidelines. Accordingly, Lead Plaintiff's motion requests that the Court take the first step and preliminarily approve the Settlement. Given the complexity of this litigation, the potential difficulty of proving certain elements of the Class's claims, and the continued risks if the parties proceeded to trial, the Settlement represents a favorable resolution of this Litigation and eliminates the risk that the Class might otherwise recover nothing.

Indeed, the ever-shifting landscape of Private Securities Litigation Reform Act of 1995 ("PSLRA") litigation demonstrates the risks of further litigation. *See*, *e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 383 (9th Cir. 2010) (affirming summary judgment on loss causation grounds);

---

[9]     "Because there is no governmental entity involved in this litigation," the seventh *Hanlon* factor ("presence of a governmental participant") is inapplicable. *Mendoza v. Hyundai Motor Co.*, 2017 U.S. Dist. LEXIS 9129, at *19 (N.D. Cal. 2017). Regarding the eighth *Hanlon* factor ("the reaction of the class members to the proposed settlement"), the Class's reaction is not yet available for consideration because Notice of the Settlement has not yet been provided to the Class. *See, e.g.,* *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 665 (E.D. Cal. 2008) (noting "a full fairness analysis is unnecessary" at the preliminary approval stage).

*Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 138 (2011) (redefining who "makes" a statement); *Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*, 774 F.3d 598, 604-05, 608 (9th Cir. 2014) (applying FED. R. CIV. P. 9 to loss causation element). Accordingly, the proposed Settlement satisfies the criteria for preliminary approval of a proposed settlement set forth above, and the proposed Settlement is well within the range of approval.

### 1. The Proposed Settlement Was Vigorously Negotiated, Is Supported by Experienced Counsel, and Was Reached with the Assistance of an Experienced and Neutral Mediator

Courts recognize that the opinion of experienced counsel supporting settlement after vigorous arm's-length negotiation is entitled to considerable weight. *See, e.g.*, *Chan v. Sutter Health Sacramento Sierra Region*, 2016 U.S. Dist. LEXIS 192338, at *34 (C.D. Cal. 2016) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *Nguyen v. Radient Pharms. Corp.*, 2014 U.S. Dist. LEXIS 63312, at *9 (C.D. Cal. 2014) (same). This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Williams*, 2022 U.S. Dist. LEXIS 244178, at *7; *Gudimetla v. Ambow Educ. Holding*, 2015 U.S. Dist. LEXIS 187106, at *15 (C.D. Cal. 2015) (same).

Preliminary approval is further warranted here because the parties' settlement negotiations were hard-fought, and included the determined assistance of an experienced mediator, Mr. Jed Melnick of JAMS. *Sudunagunta v. NantKwest, Inc.*, 2019 U.S. Dist. LEXIS 81337, at *11 (C.D. Cal. 2019) (noting that "assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). After submitting comprehensive and detailed mediation statements, counsel for the parties engaged in two separate full-day mediation sessions with Mr. Melnick. Following the second mediation, the parties were ultimately able to reach an agreement-in-principle, in which they accepted the mediator's proposal. *See Xuechen Yang v. Focus Media Holding, Ltd.*, 2014 U.S. Dist. LEXIS 126738, at *14 (S.D.N.Y. 2014) ("The participation of this highly qualified mediator [Mr. Melnick] strongly supports a finding that negotiations were conducted at arm's length and without collusion."); *see also Morales v. Stevco, Inc.*, 2011 U.S. Dist. LEXIS 130604, at *32 (E.D.

Cal. 2011) (granting preliminary approval where, *inter alia*, the parties utilized an "impartial mediator" and the matter was "resolved by means of a mediator's proposal").

"Class settlements are presumed fair when they are reached following sufficient discovery and genuine arms-length negotiation." *See Foster v. Adams & Assocs.*, 2022 U.S. Dist. LEXIS 25071, at *15 (N.D. Cal. 2022). In sum, Class Counsel—experienced securities litigators—were armed with extensive information generated through almost three years of litigation when negotiating the Settlement. Defendants have also been vigorously represented by Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") throughout this litigation and during settlement negotiations. Defense Counsel is equally well-informed regarding the case, and their representation of Defendants was no less rigorous than Lead Counsel's representation of the Class.  Defendants continue to deny all liability in this matter. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, it is well-suited for preliminary approval.

### 2.    Class Representative and Class Counsel have Adequately Represented the Class

Lead Plaintiff and Lead Counsel have adequately represented the Class and the Settlement is the result of nearly three years of vigorous and diligent prosecution of this action on behalf of the Class. *See* § II.A-B, *supra*; *see also Hefler v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 213045, at *18 (N.D. Cal. 2018) (finding Rule 23(e)(2)(A) satisfied when counsel "prosecuted this action through dispositive motion practice, [] discovery, and formal mediation"). The Ninth Circuit similarly requires trial courts to resolve two questions to determine "legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. The Court previously found Lead Plaintiff and Lead Counsel adequate to represent the Class, and Lead Counsel's vigorous prosecution of this Litigation since class certification has validated this finding. *See* ECF No. 193. Moreover, Lead Plaintiff and Lead Counsel have no interests antagonistic to other Class Members. Indeed, Lead Plaintiff's interest in obtaining the largest possible recovery for Velodyne investors is aligned with that of the Class. *See Mild v. PPG Indus.*, 2019 U.S. Dist. LEXIS

124352, at *7-8 (C.D. Cal. 2019). Finally, the substantial monetary recovery obtained after the almost three years of Litigation preceding the Settlement speaks for itself and is an excellent result for Lead Plaintiff and the Class.

### 3. The Proposed Settlement Provides a Favorable Recovery for the Class

The $27,500,000 cash recovery is to be allocated among Settlement Class Members following deduction of Court-approved fees and expenses. This non-reversionary, all cash Settlement is well-within the range of reasonableness under the circumstances to warrant preliminary approval of the Settlement. Lead Plaintiff's damages expert estimates that if: (1) the Class had fully prevailed on its claims after a jury trial; (2) the Court and jury accepted Lead Plaintiff's damages theory; and (3) the jury verdict survived the inevitable appeals, the total maximum aggregate damages would be approximately $190 million. *see* N.D. Cal. Guid. ¶ 1(c). Therefore, the Settlement recovers approximately 14.5% of the total maximum damages potentially recoverable in this Litigation. This is approximately eight times the median 1.8 percent ratio between investor losses and settlement value in 2023, a ratio which has held steady since 2021.[10]

As discussed more fully below, the benefits conferred on the Class by the Settlement far outweigh the costs, risks, and delay of further litigation, and the attorneys' fees and expenses to be requested are reasonable. Accordingly, the relief provided by the Settlement is undeniably an excellent result for the Class and supports approval. *See Wong v. Arlo Techs.*, 2021 U.S. Dist. LEXIS 58514, at *27-28 (N.D. Cal. 2021) (noting "relief" provided by settlement is a "central concern, though it is not enumerated among the factors of Rule 23(e)").

### 4. The Cost, Risks, and Delay of Trial and Appeal Support Approval of the Settlement

The $27,500,000 million recovery also provides a significant and immediate benefit to the Class, especially in light of the costs, risks, and delay posed by continued litigation. "Generally, unless

---

[10]    *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full Year Review*, at 24, 26, NERA ECON. CONSULTING (2024), https://www.nera.com/insights/publications/2024/recent-trends-in-securities-class-action-litigation--2023-full-y.html.

1  the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

2  expensive litigation with uncertain results." *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587

3  (N.D. Cal. 2015). "Courts have recognized that, in general, securities actions are highly complex and

4  that securities class litigation is notably difficult and notoriously uncertain." *Hefler*, 2018 U.S. Dist.

5  LEXIS 213045, at *37 (quotations omitted). Given the "complexity" of securities class actions,

6  settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long,

7  costly trials." *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 17588, at

8  *31 (S.D.N.Y. 2006).

9       While Lead Plaintiff at all times remained confident that she could prove her claims at trial,

10  she would be required to prove all elements of her claims to prevail, while Defendants needed to

11  succeed on only one defense to potentially defeat the entire action. As discussed in § II.A, *supra*,

12  Defendants advanced several arguments disputing both falsity and scienter. *See also Hayes v.

13  MagnaChip Semiconductor Corp.*, 2016 U.S. Dist. LEXIS 162120, at *16 (N.D. Cal. 2016) (granting

14  preliminary approval and noting that "[p]laintiffs may not ultimately have been able to adduce

15  sufficient facts to demonstrate [] scienter").

16       Absent settlement, this case would require the expenditure of substantial additional sums of

17  time and money at trial and beyond, with no guarantee that the Class would benefit and a significant

18  chance that it would recover nothing. Even if Lead Plaintiff succeeded at trial and met her burdens

19  with respect to falsity, materiality, scienter, class-wide reliance under the "fraud on the market"

20  presumption, loss causation, the measure of per-share damages (if any), and control person liability,

21  the case would still be far from over. Defendants would have had the opportunity to challenge an

22  individual Class Member's membership in the Class and challenge the amount of damages (if any).

23  Such a process would have been lengthy, complex, and extremely costly. Moreover, Defendants would

24  almost certainly file an appeal of any adverse jury verdict—a process that would further extend the

25  litigation for years. Conversely, the Settlement confers a substantial and immediate benefit on the

26  Class, and avoids the risks associated with obtaining a wholly speculative (though potentially larger)

27  sum in the future.

28

In sum, Defendants have denied any wrongdoing and had "significant defenses" that could limit or preclude the Class's recovery. *See Bower v. Cycle Gear, Inc.*, 2016 U.S. Dist. LEXIS 112455, at *9-10 (N.D. Cal. 2016) (approving settlement and finding that "the parties' submissions evidence that Defendant has several significant defenses to liability that could substantially reduce the class members' recovery (or preclude it entirely)."). The Settlement thus balances the risks, costs, and delay inherent in complex cases. Given the risks of continued litigation and the time and expense that would be incurred to prosecute this case through trial and beyond, the $27,500,000 Settlement is a meaningful recovery that is in the Class's best interests.

Indeed, Lead Plaintiff and the Class faced numerous factual and legal obstacles in obtaining any recovery at all. As in their Motion to Dismiss (*see generally* ECF No. 102), Defendants were prepared to make a multi-pronged defense at trial. Lead Plaintiff anticipates that Defendants would argue that: (i) there was no proof of a long-standing plan to remove Mr. Hall; (ii) the Audit Committee Investigation was properly disclosed; (iii) the challenged statements concerning Mr. Hall were not false when made; (iv) the safe harbor applied as a matter of law; and (v) the Individual Defendants did not act with the requisite scienter. The difficulty of prevailing in securities class action lawsuits such as this weighs in favor of settlement approval. *See In re Celera Corp. Sec. Litig.*, 2015 U.S. Dist. LEXIS 42228, at *14 (N.D. Cal. 2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial."); *In re Charles Schwab Corp. Secs. Litig.*, 2011 U.S. Dist. LEXIS 44547, at * 19 (N.D. Cal. 2011) ("Prosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential recovery . . . includ[ing] proving loss causation and the falsity of the representations at issue.").

### 5.    The Proposed Settlement Does Not Unjustly Favor any Settlement Class Members, Including Lead Plaintiff

The proposed Notice to the Settlement Class (*see* Exhibit A-1 to the Stipulation) and its Plan of Allocation provides for distribution of the Settlement Fund (after deduction of Court- approved fees and expenses) to Settlement Class Members who have a loss on their transactions in Velodyne Securities purchased or otherwise acquired during the Class Period. As developed by Lead Plaintiff's damages consultant, apportionment of the Net Settlement Fund is based on when Settlement Class

Members purchased, acquired and/or sold Velodyne Securities, and ensures that Settlement Class Members' recoveries are based upon the relative losses sustained. Settlement Class Members, including Lead Plaintiff, will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner.

Specifically, the Plan of Allocation provides formulas for calculating the recognized claim of each Settlement Class Member, based on the timing of the purchases and sales of Velodyne common stock and the declines that occurred in the price of the stock following the alleged corrective disclosures. *Rieckborn v. Velti PLC*, 2015 U.S. Dist. LEXIS 13542, at *35 (N.D. Cal. 2015). The Notice further discloses that Lead Plaintiff, who has shepherded this case since her appointment on July 2, 2021 (*see* ECF No. 63), may seek Court approval for reimbursement of reasonable costs and expenses (including lost wages) directly related to representation of the Class. 15 U.S.C. § 78u-4(a)(4).

Although Lead Plaintiff will share in the Net Settlement Fund in the same proportion as all Class Members, she may recover reasonable costs and expenses incurred as a result of activities undertaken on behalf, and directly related to her representation of, the Class. *See id.*; *In re Lyft Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 226982, at *16 (N.D. Cal. 2022) ("Because Lead Plaintiff's intent to seek reasonable costs and expenses is not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval."). Thus, the Settlement does not improperly grant preferential treatment to Lead Plaintiff or segments of the Class. *See id.* (granting preliminary approval because, *inter alia*, "the settlement agreement does not single out any segment of the class for favorable treatment."); *In re Portal Software Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, at *14-15 (N.D. Cal. 2007) (examining whether the settlement "improperly grant[s] preferential treatment to [the Lead Plaintiff] or segments of the class").

### 6.  The Range of Possible Recovery and the Point in the Ranges at Which Settlement is Reasonable Support Settlement

Although Lead Plaintiff and Defendants disagree as to the amount of maximum recoverable damages, the $27,500,000 Settlement is a substantial recovery. In determining where in the range of possible recovery a fair and adequate amount would lie, courts recognize that "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the

settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The settlement represents approximately 14.5% of total potential damages as estimated by Plaintiff's damages expert. Courts regularly approve securities class action settlements recovering far smaller percentages of estimated losses. *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 U.S. Dist. LEXIS 121886, at *27 (N.D. Cal. 2019) (settlement recovering between 5% and 9.5% of estimated maximum damages approved); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (settlement "just over 9%" of the maximum potential recovery asserted by either party" approved). And, as stated above, the ratio of settlement value to investor losses was 1.8% in 2023. *See* § IV.B.3, *supra*. If the Court credited Defendants' scienter and falsity arguments at summary judgment or trial, Lead Plaintiff and the Settlement Class would recover nothing. *See Lagarde v. Support.com*, Inc., 2013 U.S. Dist. LEXIS 42725, at *11 (N.D. Cal. 2013) (noting the "significant risk that this litigation would result in a lesser recovery for the class, or no recovery at all."). Accordingly, the range of possible recovery here is wide and uncertain, thus further supporting the Settlement.

### 7. The Stage of the Proceedings and the Discovery Completed Support Settlement

"Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'" *Ramirez v. Trans Union, L.L.C.*, 2022 U.S. Dist. LEXIS 226302, at *14 (N.D. Cal. 2022). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. at 527 (C.D. Cal. 2004) (quoting 5 *Moore's Federal Practice,* § 23.85[2][e] (Matthew Bender 3d ed.)). Hence, courts routinely approve class action settlements due, in part, to the parties' extensive engagement in discovery. *See In re MacBook Keyboard Litig.*, 2023 U.S. Dist. LEXIS 92063, at *25 (N.D. Cal. 2023) (finding "that the substantial discovery and the stage of proceedings weigh in favor of granting the settlement."); *Durham v. Sachs Elec. Co.*, 2022 U.S. Dist. LEXIS 113075, at *17-18 (N.D. Cal. 2022) (same); *Seb Inv. Mgmt. AB v. Symantec Corp.*, 2022 U.S. Dist. LEXIS 24241, at *21 (N.D. Cal. 2022) (same).

Lead Plaintiff and Lead Counsel have actively litigated this matter since 2021 against highly

capable and motivated defense counsel. The Court also held multiple hearings in this matter. *See* ECF No. 115 (Motion to Dismiss hearing held June 10, 2022); ECF No. 142 (Status Conference, held November 18, 2022); ECF No. 151 (Status Conference held March 3, 2023); ECF No. 175 (hearing re: motion to withdraw William Smith as Lead Plaintiff held on May 3, 2023); ECF No. 192 (Class Certification hearing held July 14, 2023); ECF No. 201 (Status Conference held July 28, 2023); ECF No. 212 (Status Conference held November 17, 2023).[11]

Lead Counsel also interviewed several witnesses, including, but not limited to: David Hall, Marta Hall, and Shetal Patel's counsel. And Lead Counsel subpoenaed, and engaged in discovery disputes with, multiple third parties represented by, *inter alia*, well-known firms like Keker, Haynes and Boone, LLP, White & Case, Faegre Drinker Biddle & Reath LLP, and K&L Gates LLP. Some of these discovery disputes, particularly the lengthy dispute with Keker, required the exchange of multiple letters and several meet and confers. In addition, as discussed in § II, *supra*, Lead Counsel investigated, researched, and analyzed the Class's claims, by, *inter alia*, reviewing SEC filings, analyst reports, news media, filings in related litigation, and approximately 341,780 pages of internal Velodyne and third-party documents received in response to Lead Plaintiff's discovery requests.

And shortly before the parties agreed in principle to settle this matter, Lead Counsel was actively preparing for a Court-ordered meet-and-confer with Defendants regarding several complex privilege disputes. *See* § II.C, *infra*; ECF No. 212; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 79679, at *4 (N.D. Cal. 2019) (approving settlement because, *inter alia*, "Lead Counsel vigorously litigated this action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations."); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 U.S. Dist. LEXIS 121886, at *22 (N.D. Cal. 2019) ("counsel has vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation."). Lead Plaintiff's and Lead Counsel's knowledge,

---

[11]    The Court also issued several Opinions and/or Orders detailing the parties' disputes. *Moradpour v. Velodyne Lidar, Inc.*, 2022 U.S. Dist. LEXIS 117273 (N.D. Cal. 2022); 2022 U.S. Dist. LEXIS 117272 (N.D. Cal. 2022); 2022 U.S. Dist. LEXIS 241994 (N.D. Cal. 2022); 2023 U.S. Dist. LEXIS 84234 (N.D. Cal. 2023) and 2023 U.S. Dist. LEXIS 142783 (N.D. Cal. 2023).

obtained during nearly three years of litigating this case, allows them to intelligently evaluate the litigation and propriety of settlement. Accordingly, Lead Counsel managed to resolve this matter on terms favorable to the Class without the substantial expense, risk, uncertainty and delay of additional protracted litigation.

### C.    The Proposed Notice to the Class is Adequate

Rule 23(c)(2)(B) requires a settlement to be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Rule 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement].") Notice "must 'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane*, 696 F.3d at 826.

Lead Counsel prepared the form of Notice to be disseminated to all Persons falling within the Class definition, and whose names and addresses have been or can be identified from or through Velodyne's shareholder lists. Epiq Decl. ¶ 21.[12] Individual copies of the Notice, together with a copy of the Proof of Claim, will be sent by first class mail, postage prepaid, to all potential Settlement Class Members. *Id.* ¶ 23. In addition, the Claims Administrator will mail copies of the Notice to entities which commonly hold securities in "street name" as nominees for the benefit of their clients who are the beneficial purchasers of the securities. *Id.* ¶ 33. Lead Plaintiff further proposes to supplement the mailed Notice with the Summary Notice of Pendency and Proposed Settlement of Class Action, Motion for Attorneys' Fees and Litigation Expenses, and Settlement Fairness Hearing ("Summary Notice")—an additional description of the Litigation and proposed Settlement—to be published in *Investor's Business Daily*. *See* Exhibits A-1 and A-2 to the Stipulation. Lead Counsel will also make copies of the Notice, Summary Notice, and Proof of Claim and Release form available for download *via* the website maintained by the Claims Administrator ("Website"). Epiq Decl. ¶¶ 19, 23, 30. The Website address is provided in the Notice and Summary Notice. *Id.* ¶¶ 23, 30. In addition, the Website

---

[12]    "Epiq Decl." refers to **Exhibit 3** to this Motion, a true and correct copy of the Declaration of Cameron R. Azari, Esq. Regarding Notice Plan.

1    will provide the Consolidated Amended Complaint and other important pleadings, as well as important

2    information regarding the Litigation and proposed Settlement. *Id.* The proposed methods for providing

3    notice satisfy the requirements of Rule 23, the PSLRA, and due process. *See, e.g.*, *In re MGM Mirage*

4    *Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); *Vataj v. Johnson*, 2021 U.S. Dist. LEXIS 214678,

5    at *16-17 (N.D. Cal. 2021) (finding notice by mail and publication in a nationwide newswire "provided

6    the best practicable notice to the class members").

7           Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all

8    parties and, for motions by class counsel, directed to class members in a reasonable manner." The

9    proposed Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead

10   Counsel will apply to the Court for attorneys' fees not to exceed 28% of the Settlement Amount, and

11   reimbursement of out-of-pocket expenses not to exceed $315,000, plus interest earned on both

12   amounts at the same rate earned on the Settlement Fund, to be paid from the Settlement Fund. Abadou

13   Decl. Ex. A-1. The proposed Notice includes the information required by the PSLRA, as well as

14   additional information.[13] *Id.* The proposed Notice describes the proposed Settlement and sets forth,

15   among other things: (i) the nature, history, and status of the litigation; (ii) the definition of the proposed

16   Class and who is excluded from the Class; (iii) the reasons the parties have proposed the Settlement;

17   (iv) the Settlement amount; (v) the estimated average recovery per damaged share; (vi) the Class's

18   claims and issues; (vii) the parties' disagreement over damages and liability; (viii) the maximum

19   amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final

20   settlement approval; (ix) the plan for allocating the Settlement proceeds to the Class; and (x) the date,

21   time, and place of the final settlement hearing. *Id.*

22          The proposed Notice discusses the rights Class Members have concerning the Settlement,

23   including to: (i) request exclusion and the manner for submitting such a request; (ii) object to the

24   Settlement, the Fee and Expense Application, the Plan of Allocation, or any other aspect thereof, and

25   the manner for filing and serving an objection; and (iii) participate in the Settlement and instructions

26   on how to complete and submit a Proof of Claim and Release form to the Claims Administrator. *Id.*

27

28   [13]    Lead Plaintiff's settlement notices fully comply with 15 U.S.C. § 78u-4(a)(7).

The Notice also provides contact information for Lead Counsel, as well as the postal address for the Court. *Id.* A Summary Notice will also be published. Abadou Decl. Ex. A-2. Lead Plaintiff respectfully suggests that the notice program exceeds the requirements of Rule 23, the PSLRA, and Local Guidance. *See* N.D. Cal. Guid. ¶ 3; *see also In re Portal Software Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, at *18-19 (N.D. Cal. 2007) (dissemination of notice to all reasonably identifiable class members including summary notice published in *Investor's Business Daily* approved as best notice practicable); *Davis v. Yelp, Inc.*, 2022 U.S. Dist. LEXIS 131628, at *15 (N.D. Cal. 2022) ("Courts have held that these methods of notice satisfy the requirements of Rule 23, the PSLRA, and due process."). Accordingly, in granting preliminary approval of the Settlement, Lead Plaintiff similarly requests that the Court approve the proposed form and method of giving notice to the Class.[14]

**D.    The Proposed Attorneys' Fees, Expenses, and Class Representative's Reimbursement Amount are Reasonable**

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Lead Counsel intends to seek an award of attorneys' fees of no more than 28% of the Settlement Fund and expenses in an amount not to exceed $315,000, plus interest on both amounts. *See* N.D. Cal. Guid. ¶ 6. Lead Counsel will provide more detailed information in its forthcoming applications for attorneys' fees and expenses, which will be filed with the Court prior to the Fairness Hearing. Although the Ninth Circuit in *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) stated that "25% of the common fund" was a "benchmark award for attorney fees," a guiding principle for fee awards in this Circuit remains the idea that they must be "reasonable under the circumstances." *See In re: Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1295 n.2 (9th Cir. 1994). As applied, this means that "in most common fund cases, the award exceeds that benchmark." *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047.

In view of the result obtained (*i.e.*, 14.5% recovery of the total maximum damages available

---

[14]    The Settling Parties have also agreed that, no later than 10 days following the filing of the Stipulation, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005) *et seq.* ("CAFA"). *See* Stipulation ¶ 4.2. The Settling Parties are not aware of any other such required notices to government entities or others. *See* N.D. Cal. Guid. ¶ 10.

to the Settlement Class), the contingent fee risk, the number of hours dedicated to this matter by Lead Counsel, and the important public policy advanced by securities litigation such as this, an award of up to 28% of the Settlement Fund is appropriate. Indeed, within the last year, multiple courts in the Ninth Circuit awarded attorneys' fees of 30% or more of a settlement fund in securities class actions. *See, e.g.*, *Davis et al. v. Yelp, Inc. et al.*, No. 18-cv-00400-EMC (N.D. Cal. 2023) (33.3% of $22,250,000 settlement fund); *Fleming et al. v. Impax Labs. Inc. et al.*, No. 16-cv-06557-HSG (N.D. Cal. 2022), ECF No. 133 at 6 (30% of $33,000,000 settlement fund); *In re Merit Med. Sys., Inc., Sec. Litig.*, No. 19-cv-02326-DOC (C.D. Cal. 2022) (30% of $18,250,000 settlement fund). This Court has also previously awarded 30% of a settlement fund in securities class actions. *See, e.g.*, *In re Gilead Scis. Sec. Litig.*, No. 03-cv-04999-SI (N.D. Cal. 2010) (30% of $8,250,000 settlement fund); *In re CV Therapeutics, Inc. Sec. Litig.*, No. 03-cv-03709-SI (N.D. Cal. Apr. 4, 2007) (30% of $13,000,000 settlement fund). The 14.5% recovery of maximum damages in this case also exceeds the percentage of maximum damages recovered in many of the cases cited herein where counsel received 30%.

Moreover, the proposed attorney fee award here is based on a lodestar of approximately $6.1 million as of the date of this Motion and accounts for the approximately 10,378 hours expended over the nearly three years of litigation. A fee award of up to 28% of the Settlement Fund would result in a multiplier of no more than 1.26. *See* N.D. Cal. Guid. ¶ 6. This multiplier is reasonable and within the range of lodestar multipliers that courts in this Circuit approve. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.,* 2013 U.S. Dist. LEXIS 49885, at *90-91 (N.D. Cal. 2013) (awarding attorney fee award applying 5.22 multiplier); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (granting fee award applying multiplier of 5.2). Lead Counsel will detail its current approximate lodestar of $6 million with its fee application prior to the Fairness Hearing.

Lead Counsel also intends to seek reimbursement of its litigation expenses in an amount not to exceed $315,000, which includes expert costs, mediation fees, and online legal and factual research, among other costs. Lead Counsel will provide appropriate detail in support of any request for reimbursement of litigation expenses with its fee and expense application prior to final approval. Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award.

*See* Stipulation ¶ 6.1. Approval of the requested attorneys' fees is also separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *Id.* ¶ 7.3.

Finally, Lead Counsel also intends to seek an award of up to $20,000 for Lead Plaintiff as reimbursement for Lead Plaintiff's (and her husband's) costs and expenses related to her representation of the Class. *See In re Wells Fargo & Co. S'holder Deriv. Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (noting $25,000 award "may be appropriate . . . where the class overall has greatly benefitted from the class representatives' efforts" and the award represents an "insignificant percentage" of the recovery). Here, Lead Plaintiff spent considerable time supervising and communicating with Lead Counsel, reviewing legal filings, preparing for her deposition, and assisting her husband in preparing for his deposition, due to his various health limitations. Lead Counsel believes this amount is fully supported by the work undertaken throughout the Litigation, which will be set forth in greater detail in connection with Lead Plaintiff's fee and expense motion. *See* N.D. Cal. Guid. ¶ 7.

## V.    THE PROPOSED CLAIMS ADMINISTRATOR

In connection with this motion, Lead Plaintiff also requests that the Court authorize the retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Claims Administrator for the Settlement. Epiq has extensive experience and is a nationally recognized notice and claims administration firm. Epiq Decl. ¶ 4. Lead Counsel selected Epiq in a competitive selection process. Speicifcally, Lead Plaintiff also solicited bids from claims administrators A.B. Data, Ltd. and Gilardi & Co., LLC. All proposed notice to the Class in substantially the same manner as presented here. *See* N.D. Cal. Guid. ¶ 2. Lead Counsel chose Epiq based on their estimated costs in comparison to their competitors. Other than Epiq's previous handling of notice to the Class after class certification in this matter, the undersigned Lead Counsel has retained Epiq in one matter over the past two years. Epiq has estimated that it will cost no more than $250,000 to fully administer the settlement of this case to be paid from the Settlement Fund. *Id*. ¶ 35.

## VI.    PROPOSED SCHEDULE OF EVENTS

As part of preliminarily approving the Settlement, the Court must also set dates for certain future events (*i.e.*, the Settlement Hearing, mailing and publication of notices, and deadlines for submitting claims or objecting to the Settlement). Lead Plaintiff respectfully proposes the schedule set forth below, as agreed to by the Settling Parties and set forth in the proposed Notice Order.

| Event | Date |
|---|---|
| Deadline to begin mailing the Notice and Proof of Claim to Settlement Class Member ("Notice Date") | 21 calendar days after entry of the Notice Order |
| Deadline for publishing the Summary Notice | 14 calendar days after entry of the Notice Order; Class Counsel shall, at least seven (7) calendar days before the Settlement Hearing, serve upon counsel for Defendants and file with the Court proof of publication of the Summary Notice |
| Deadline for Defendants to file proof of compliance with the Class Action Fairness Act of 2005 ("CAFA") | 35 calendar days prior to the Final Approval Hearing |
| Deadline for submitting Proofs of Claim | Within 120 calendar days after the deadline set by the Court for the Claims Administrator to mail the Notice to the Settlement Class |
| Deadline for filing papers in support of final settlement approval, Plan of Allocation, and request for attorneys' fees and expenses | 35 calendar days before the Settlement Hearing |
| Deadline for filing an objection to the Settlement, Plan of Allocation or to request exclusion from the Class | 21 calendar days before the Settlement Hearing |
| Deadline for filing reply memoranda in support of final settlement approval, Plan of Allocation, and request for attorneys' fees and expenses, and in response to any objections to the Settlement | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | At the Court's convenience |

## VII.    CONCLUSION

For the reasons set forth above, Class Representative respectfully requests that the Court preliminarily approve the proposed Settlement and enter the Notice Order.

Dated: March 13, 2024                    Respectfully submitted,

**KAHN SWICK & FOTI, LLP**

By:  *s/ Ramzi Abadou*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ramzi Abadou (SBN 222567)
KAHN SWICK & FOTI, LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

-and-

Lewis S. Kahn
(to be admitted *pro hac vice*)
Alexander L. Burns
(admitted *pro hac vice*)
James T. Fetter
(admitted *pro hac vice*)
Alexandra Pratt
(admitted *pro hac vice*)
KAHN SWICK & FOTI, LLC
1100 Poydras Street, Suite 960
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
alexander.burns@ksfcounsel.com
james.fetter@ksfcounsel.com
alexandra.pratt@ksfcounsel.com

*Class Counsel and Counsel for*
*Class Representative, Diane Smith*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Ramzi Abadou*
RAMZI ABADOU

**Mailing Information for a Case 3:21-cv-01486-SI Moradpour v. Velodyne Lidar, Inc. et al**

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com,Ashley.Errington@ksfcounsel.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **William Zachary Brenc**
  william.brenc@wilmerhale.com,william-brenc-3258@ecf.pacerpro.com,barbara.palomo@wilmerhale.com,whdocketing@wilmerhale.com

- **Alexander Louis Burns**
  alexander.burns@ksfcounsel.com

- **Robert Donoghue**
  robert.donoghue@wilmerhale.com

- **James Thomas Fetter**
  james.fetter@ksfcounsel.com

- **Tamar Kaplan-Marans**
  tamar.kaplan-marans@wilmerhale.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Sarah E. Maciel**
  Sarah.Maciel@wilmerhale.com

- **Kevin Peter Muck**
  Kevin.Muck@wilmerhale.com,linda.burch@wilmerhale.com,whdocketing@wilmerhale.com,lindy.patrick@wilmerhale.com

- **Susan Samuels Muck**
  susan.muck@wilmerhale.com,whdocketing@wilmerhale.com,susan-muck-3159@ecf.pacerpro.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,kperez@pomlaw.com,ahood@pomlaw.com,tsayre@pomlaw.com,egoodman@pomlaw.com,jlopiano@pomlaw.com,disaacson@pomlaw.com,ashr

- **Ivan Panchenko**
  panchenkoiv@sec.gov

- **Alexandra Pratt**
  alexandra.pratt@ksfcounsel.com

- **Pavithra Rajesh**
  prajesh@glancylaw.com,pavithra-rajesh-9402@ecf.pacerpro.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Brian Jared Schall**
  brian@schallfirm.com

- **Joshua Aisen Vittor**
  joshua.vittor@wilmerhale.com,whdocketing@wilmerhale.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)