1 | Ramzi Abadou (SBN 222567)
2 | KAHN SWICK & FOTI, LLP
 | 580 California Street, Suite 1200
3 | San Francisco, California 94104
 | Telephone: (415) 459-6900
4 | Facsimile: (504) 455-1498
 | ramzi.abadou@ksfcounsel.com
5 |
6 | *Class Counsel and Counsel for*
 | *Class Representative, Diane Smith*
7 |
 | *[Additional counsel on signature page]*
8 |

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MEYSAM MORADPOUR, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>VELODYNE LIDAR, INC., et al., )<br><br>Defendants. )<br>_____ ) | Case No. 3:21-CV-01486-SI<br><br>**CLASS REPRESENTATIVE DIANE SMITH'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>**CLASS ACTION**</u><br><br>Judge:      Hon. Susan Illston<br>Date:       August 16, 2024<br>Time:       10:00 a.m.<br>Courtroom:  1 – 17th Floor |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................2

II.     FACTUAL BACKGROUND AND HISTORY OF THE ACTION ...................................4

III.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ...................................4

     A.      Class Certification Remains Appropriate ................................................4

     B.      The Settlement Warrants Final Approval ................................................4

     C.      The Settlement Satisfies the Requirements of Rule 23(e)(2)..................6

          1.      Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ...................................................................................6

     D.      The Settlement Was Negotiated at Arm's Length after Mediation with an Experienced Mediator ...................................................................6

     E.      The Settlement Provides the Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and the Other Ninth Circuit Factors Addressing Whether a Settlement is Fair, Reasonable and Adequate ........................................8

          1.      The Amount Offered in the Settlement.........................................8

          2.      The Strength of Lead Plaintiff's Case..........................................9

          3.      The Complexity, Expense, and Duration of Continued Litigation .............9

          4.      The Risk of Maintaining Class Action Status.............................10

          5.      The Extent of Discovery Completed and the Stage of Proceedings ..........11

          6.      The Experience and Views of Counsel........................................11

          7.      The Reaction of Class Members to Date .....................................12

     F.      The Remaining Rule 23(e)(2) Factors Also Support Final Approval....................12

IV.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE AND WARRANTS FINAL APPROVAL ...............................................................14

V.      NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA ...............................................................16

VI.     CONCLUSION................................................................................................18

1

## TABLE OF AUTHORITIES

2

3
**Cases**                                                                    **Page(s)**

4
*Cabrera v. Google LLC*,
5
   2023 U.S. Dist. LEXIS 142643 (N.D. Cal. 2023) .......................................................... 6

6
*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ................................................................................. 4-5

7
*Chang v. Wells Fargo Bank, N.A.*,
8
   2023 U.S. LEXIS 188337 (N.D. Cal. 2023) ............................................................ 10

9
*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ................................................................. 5, 8, 9-10, 12

10

11
*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................. 14

12
*Destefano v. Zynga*,
   2016 U.S. Dist. LEXIS 17196 (N.D. Cal. 2016) ...................................................... 8

13

14
*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..................................................................................... 6

15
*Fleming v. Impax Lab'ys Inc.*,
   2021 U.S. Dist. LEXIS 225218 (N.D. Cal. 2021) ................................................... 15

16

17
*Fleming v. Impax Lab'ys Inc.*,
   2022 U.S. Dist. LEXIS 125595 (N.D. Cal. 2022) .......................................... 4, 10, 17

18

19
*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................... 4, 7

20
*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) ............................................................................. 10

21

22
*Hartless v. Clorox Co.*,
   473 F. App'x 716 (9th Cir. 2012) ............................................................................ 10

23
*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 U.S. Dist. LEXIS 162120 (N.D. Cal. 2016) ................................................... 17

24

25
*Hefler v. Wells Fargo & Co.*,
   2018 U.S. Dist. LEXIS 213045 (N.D. Cal. 2018) ................................................. 6, 8

26
*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 U.S. Dist, LEXIS 17588, at *31 (S.D.N.Y. 2006) ............................................ 9

27

28

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................... 7, 11

*In re BofI Holding, Inc. Sec. Litig.*,
    2022 U.S. Dist. LEXIS 188621 (S.D. Cal. 2022) ........................................ 16

*In re China Med. Corp. Sec. Litig.*,
    2014 U.S. Dist. LEXIS 196118 (C.D. Cal. 2014) ......................................... 7

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2019 U.S. Dist. LEXIS 75205 (N.D. Cal. 2019) .......................................... 5

*In re Google LLC St. View Elec. Commc'ns Litig.*,
    611 F. Supp. 3d 872 (N.D. Cal. 2020) ..................................................... 12

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................... 7, 9

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal 2007) ........................................ 11, 12, 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2011 U.S. Dist. LEXIS 154288 (N.D. Cal. 2011) ...................................... 13

*In re Veritas Software Corp. Sec. Litig.*,
    496 F.3d 962 (9th Cir. 2007) ................................................................. 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ................................................................... 5

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ..................................................... 9

*Kuraica v. Dropbox, Inc.*,
    2021 U.S. Dist. LEXIS 235394 (N.D. Cal. 2021) ...................................... 12

*Mendoza v. Hyundai Motor Co.*,
    2017 U.S. Dist. LEXIS 9129 (N.D. Cal. 2017) ........................................... 5

*Nachshin v. AOL, L.L.C.*,
    663 F.3d 1034 (9th Cir. 2011) ............................................................... 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................. 7

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ............................................................... 16

*Young v. LG Chem, Ltd.*,
    783 F. App'x 727 (9th Cir. 2019) ..................................................... 16, 17

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................. 17

**Rules**

FED. R. CIV. P. 23 ............................................................................................ *passim*

**Other**

Edward Flores and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2023 Full Year Review*, NERA ECON.
    CONSULTING (2024), https://www.nera.com/insights/publications/2024/recent-trends-in-
    securities-class-action-litigation--2023-full-y.html ....................................................... 8

### NOTICE OF MOTION AND MOTION

**TO:**   **ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

   **PLEASE TAKE NOTICE** that on August 16, 2024, at 10:00 a.m. PST, the Honorable Susan Illston presiding, the Court-appointed Lead Plaintiff and Class Representative, Diane Smith (hereinafter "Lead Plaintiff"), will and hereby does move for an Order pursuant to Federal Rule of Civil Procedure 23: (1) granting final approval of the proposed settlement (the "Settlement") set forth in the Stipulation of Settlement dated March 6, 2024 ("Stipulation"); and (2) approving the proposed Plan of Allocation.[1]

   This motion is based upon this Notice of Motion and Motion (together, the "Motion"); the supporting Memorandum that follows, the accompanying declarations, including the Declaration of Ramzi Abadou in Support of: (1) Class Representative Diane Smith's Motion for Final Approval of Proposed Class Action Settlement; and (2) Motion for an Award of Attorneys' Fees, Litigation Expenses, and Lead Plaintiff's Reimbursement of Reasonable Costs ("Abadou Decl.") and exhibits attached thereto, all prior pleadings in this Litigation, and such additional evidence or argument as may be requested by the Court.[2]

   Lead Plaintiff is not aware of any opposition to the Motion.

### STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Court should grant final approval of the proposed Settlement.

2.    Whether the Court should grant final approval of the Plan of Allocation.

---

[1]    Unless otherwise noted, capitalized terms shall have the meanings ascribed to them in the Stipulation of Settlement dated March 6, 2024 which was entered into by and among Lead Plaintiff and the Defendants (the "Stipulation"). *See* ECF No. 220-3 at 2-35.

[2]    The proposed Final Judgment and Order of Dismissal and proposed Orders granting approval of the Proposed Plan of Allocation and granting approval of the Motion for an Award of Attorneys' Fees, Litigation Expenses, and Lead Plaintiff's Reimbursement of Reasonable Costs will be submitted with Lead Plaintiff's August 9, 2024 reply once the July 26, 2024 deadline for Class Members to object to the Settlement or Plan of Allocation has passed.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23(e)"), Court-appointed Lead Plaintiff Diane Smith, by and through her counsel Kahn Swick & Foti, LLC ("KSF" or "Lead Counsel"), on behalf of herself and the Class, respectfully submits this Memorandum in support of her Motion for final approval of the proposed Settlement and Plan of Allocation in the above-captioned securities class action (the "Action") which the Court preliminarily approved by Order dated April 23, 2024 (the "Preliminary Approval Order"). [3] *See* ECF No. 227.

## I.    INTRODUCTION

Lead Plaintiff, through Lead Counsel, has obtained a Settlement for $27,500,000 in cash in exchange for the dismissal of all claims brought against Defendants Velodyne Lidar, Inc. ("Velodyne" or the "Company"), Anand Gopalan, James A. Graf, Michael Dee, and Andrew Hamer ("Individual Defendants" and collectively with Velodyne, the "Defendants"). The Settlement is an exceptional result for the Class and is significantly above the typical range of damages recovered in securities class actions, as it represents approximately 14.5% of the estimated maximum class-wide damages in this case. *See* Abadou Decl. ¶ 171.[4] Indeed, after mailing more than 222,000 settlement notice packets, as of July 8, 2024, no Class Member has objected to the Settlement or Plan of Allocation. *Id.* ¶ 239. Accordingly, Lead Plaintiff requests that the Court approve the Settlement.

The decision to settle the case was well-informed by an extensive investigation, hard-fought litigation, and arm's-length negotiations between the parties under the supervision of an experienced mediator, Jed Melnick, Esq. of JAMS. *See id.* ¶ 6. Based on these extensive efforts, Lead Plaintiff and Lead Counsel possessed a thorough understanding of the relative strengths and weaknesses of the claims and whether the Settlement obtained was fair, reasonable, and adequate. *Id.* ¶ 7. As made clear

---

[3]     The Class was certified by order of the Court dated July 14, 2023. ECF No. 193. The definition of the Class in the Stipulation is consistent with the Court's July 14, 2023 Order. *Id.*

[4]     Lead Plaintiff respectfully refers the Court to the Abadou Declaration filed herewith. The Abadou Declaration contains a detailed description of, among other things, the nature of the claims asserted, the procedural history of the Action, the negotiations leading up to the Settlement, and the terms of the Plan of Allocation.

during the litigation and settlement discussions, both sides believed in the strength of their claims and defenses. *Id.* at ¶¶ 6-7. Lead Counsel, moreover, consistently stated throughout the discussions that they were willing and able to take the case to trial rather than settle for less than fair value. *Id.* The result is an excellent recovery for the Class that readily satisfies Rule 23(e)(2)'s standards for final approval.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was detailed in the Notice of Pendency and Proposed Settlement of Class Action ("Notice"). *See id.* at ¶ 9; *see also* Notice, ECF No. 220-3, at ¶¶ 42-64. The Plan of Allocation governs the calculation of claims and the distribution of Settlement proceeds among Authorized Claimants. *Id.* Based on the analysis of Lead Plaintiff's expert, the Plan of Allocation subjects all Class Members to the same formulas for calculating damages (i.e., the difference between what Class Members paid for their Velodyne securities during the Class Period and what they would have paid had the alleged misstatements and omissions not been made). Abadou Decl. ¶¶ 182-85.

The Court granted preliminary approval of the Settlement on April 23, 2024. *See* ECF No. 227. In that Order, the Court approved the process by which Class Members would receive notice of the Settlement and submit claims and objections. *Id.* As of July 8, 2024, the Court-authorized Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), has disseminated over  222,000 copies of the Notice to Class Members and nominees. *See* Exhibit A, Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Plan ("Azari Declaration") ¶ 14. The Notice, Claim Form, and other key Settlement documents have been made available on a dedicated website maintained for the Settlement by Epiq. *Id*. ¶ 17. In addition, the Summary Notice was published in *Investor's Business Weekly*. *Id*. ¶ 16. While the deadline to submit objections is not until July 26, 2024, as of July 8, 2024, no Class Member has objected to the Settlement or Plan of Allocation.[5] *See id.* ¶ 20; Abadou Decl. ¶ 192. Moreover, Lead Plaintiff fully

---

[5]    The Northern District's *Procedural Guidance for Class Action Settlements*, Final Approval § 1 states that the motion for final approval briefing should include information about the number of undeliverable class notices and claim packets, the number of valid claims, the number of opt outs and

supports the Settlement. *See* Exhibit B, Declaration of Diane Smith ("Smith Decl.") ¶ 23.

For these reasons, Lead Plaintiff submits that the Settlement meets the standards for final approval under Rule 23 and is a fair, reasonable, and adequate result for the Class. As such, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and approve the Plan of Allocation as the method for distributing the Net Settlement Fund to the Class.

## II.    FACTUAL BACKGROUND AND HISTORY OF THE ACTION

Lead Counsel respectfully refers the Court to the accompanying Abadou Declaration for a detailed description of the procedural history of the Action, the claims asserted, the investigation and discovery undertaken, the Parties' motion practice, the negotiations and mediation process resulting in the Settlement, and the risks and uncertainties involved in prosecuting this Action through trial. *See generally*, Abadou Decl.

## III.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

### A.    Class Certification Remains Appropriate

"Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rules of Civil Procedure 23(a) and (b)." *Fleming v. Impax Lab'ys Inc.*, 2022 U.S. Dist. LEXIS 125595, at *13 (N.D. Cal. 2022) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-22 (9th Cir. 1998)).[6]  Class certification remains appropriate here, as no facts that would affect these requirements have changed since the Court certified the Class on July 14, 2023. *See Fleming*, 2022 U.S. Dist. LEXIS 125595, at *13; ECF No. 193.

### B.    The Settlement Warrants Final Approval

The Ninth Circuit recognizes a "'strong judicial policy that favors settlements, particularly

---

objections, and address any objections. The number of undeliverable notices and current objections to the Settlement is addressed in the Azari and Abadou Declarations. *See* Azari Decl. ¶¶ 14, 20; Abadou Decl. ¶ 179. Lead Counsel will address any objections and detail the number of valid claims received in the reply brief to be filed on or before August 9, 2024. *See* Abadou Decl. ¶ 179 n.10. As the Court preliminarily approved the Settlement with no second opportunity for Class Members to opt-out, such numbers are not addressed in the declaration from Epiq. *See* ECF No. 227.

[6]    All internal citations and quotations are omitted and emphasis is added unless otherwise stated.

where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020). "Deciding whether a settlement is fair is . . . best left to the district judge." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

Under Rule 23(e)(2), "a district court may approve a class action settlement only after finding that the settlement is 'fair, reasonable, and adequate.'" *Campbell*, 951 F.3d at 1120-21. In making that determination, the Court must consider the factors laid out in Rule 23(e)(2)(A)-(D), addressed below. Consistent with Rule 23(e)(2), courts in the Ninth Circuit look at the following factors when assessing final approval of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. [7]

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575-76 (9th Cir. 2004).

After a preliminary review, the Court found that the Settlement was fair, reasonable, and adequate, subject to further consideration at the Settlement hearing. *See* ECF No. 227. The Court's conclusion on preliminary approval is equally true now, as nothing has changed between April 23, 2024, and the present. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 75205, at \*29 (N.D. Cal. 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now."); *Davis v. Yelp, Inc.*, 2023 LEXIS 40323, at \*2 (N.D. Cal. 2023) (reaffirming finding at preliminary approval stage). Accordingly, the Settlement is fair, reasonable, and adequate and warrants final approval under the Rule 23(e)(2) factors and Ninth Circuit precedent.

---

[7]    "Because there is no governmental entity involved in this litigation, this [seventh] factor is inapplicable." *Mendoza v. Hyundai Motor Co.*, 2017 U.S. Dist. LEXIS 9129, \*19 (N.D. Cal. 2017).

**C.    The Settlement Satisfies the Requirements of Rule 23(e)(2)**

    **1.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Class**

When determining final approval of a class action settlement, the Court should consider whether Lead Plaintiff and Lead Counsel "have adequately represented the class." *See* Fed. R. Civ. P. 23(e)(2)(A). In evaluating adequacy, courts consider (1) whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and (2) whether "the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Cabrera v. Google LLC*, 2023 U.S. Dist. LEXIS 142643, at *64 (N.D. Cal. 2023) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).

Lead Plaintiff has no interests antagonistic to those of other Class Members, as both her and their claims are based on a common course of alleged wrongdoing by the Defendants. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (adequacy of representation depends on "an absence of antagonism" and "a sharing of interest" between representatives and absent class members). In addition, Lead Plaintiff and all Class Members share the same interest in obtaining the largest possible recovery from the Defendants.

As detailed in the accompanying Smith Declaration, Lead Plaintiff has also adequately represented the interests of the Class in her vigorous prosecution of the Action during the last three years. *See* Smith Decl. ¶¶ 3-20. Likewise, Lead Counsel is highly qualified and experienced in securities litigation, actively pursued the claims of Velodyne investors in this Court, and zealously advocated for the Class's best interests throughout the litigation and during Settlement negotiations. *See* Abadou Decl. ¶¶ 203-212. Rule 23(e)(2)(A)'s adequacy factor therefore clearly weighs in favor of the Settlement. *Hefler v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 213045, at *18-19 (N.D. Cal. 2018) (finding Rule 23(e)(2)(A) satisfied when counsel "prosecuted this action through dispositive motion practice, [] discovery, and formal mediation").

**D.    The Settlement Was Negotiated at Arm's Length after Mediation with an Experienced Mediator**

Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." Fed. R. Civ. P.

23(e)(2)(B). In assessing whether a settlement was negotiated at arm's length, the Court can look at circumstances supporting procedural fairness, including the (i) involvement of a mediator, *see In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007); and (ii) "the extent of discovery completed and the stage of the proceedings," *See Hanlon*, 150 F.3d at 1026.

Here, the proposed Settlement was achieved after two formal mediations and multiple teleconferences and written communications with Mr. Melnick—an experienced mediator with considerable knowledge, experience, and expertise in the field of securities law. *See* Abadou Decl. ¶¶ 6, 159-69. During the mediation sessions, Lead Counsel and Defendants' Counsel prepared and presented submissions to Mr. Melnick concerning their respective views on the merits of the Actions, along with supporting evidence obtained through discovery. *Id.* The protracted negotiations under the supervision of a neutral mediator like Mr. Melnick are evidence that the Settlement was reached at arm's length. *See In re China Med. Corp. Sec. Litig.*, 2014 U.S. Dist. LEXIS 196118, at *13 (C.D. Cal. 2014) (granting final approval following negotiations led by Mr. Melnick and stating that "Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive.")

In addition, Lead Plaintiff possessed a thorough understanding of the strengths and weaknesses of the case before approving the Settlement. *See* Smith Decl. ¶¶ 19-20; Abadou Decl. ¶¶ 7, 51. "Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'" *Foster v. Adams & Assocs., Inc.*, 2022 LEXIS 25071, at *16 (N.D. Cal. 2022) (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

Finally, there are no indicia of possible collusion identified by the Ninth Circuit, as Lead Counsel is not receiving a "disproportionate distribution of the settlement" and there are no provisions in the Stipulation allowing settlement proceeds to revert to the Defendants or preventing the Defendants from challenging Lead Counsel's request for attorneys' fees.[8] *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). In sum, these facts demonstrate that the

---

[8]    *See* Stipulation ¶ 1.23 ("The Settlement is non-recapture, *i.e.* it is not a claims-made settlement."); *id.* ¶¶ 7.1-7.5 (reflecting no agreement that the Defendants will not challenge Lead Counsel's fee application).

Settlement is the result of arm's-length negotiations and readily satisfies Rule 23(e)(2)(B).

**E.** **The Settlement Provides the Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and the Other Ninth Circuit Factors Addressing Whether a Settlement is Fair, Reasonable and Adequate**

The issue considered under Rule 23(e)(2)(C)—whether the "relief provided for the class is adequate"—overlaps considerably with the additional Ninth Circuit factors used to assess final approval of a settlement, and all entail "a 'substantive' review of the terms of the proposed settlement" that evaluate the fairness of the "relief that the settlement is expected to provide." *See* FED. R. CIV. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendment; *see also Churchill*, 361 F.3d at 575-77. As demonstrated below, these considerations weigh in favor of the Settlement.

**1.** **The Amount Offered in the Settlement**

In evaluating the adequacy of a recovery coming from a settlement, "courts primarily consider [the] expected recovery balanced against the value of the settlement offer." *See Hefler*, 2018 U.S. Dist. LEXIS 213045, at *24; see also *Destefano v. Zynga*, 2016 U.S. Dist. LEXIS 17196, at *36 (N.D. Cal. 2016) (amount of settlement is "generally considered the most important" factor).

As previously described in support of preliminary approval, the $27.5 million Settlement constitutes an exceptional result for the Class. Lead Plaintiff's damages expert estimated that, in the best-case scenario, the total maximum aggregate damages would be approximately $190 million. *See* Abadou Decl. ¶ 171. Therefore, the Settlement recovers approximately 14.5% of the total maximum damages potentially recoverable in this case. *Id.* Such a recovery is approximately eight times the median 1.8 % ratio between investor losses and settlement value in 2023, a ratio which has held steady since 2021.[9] As discussed more fully below, the benefits conferred on Class Members by the Settlement far outweigh the costs, risks, and delays of further litigation. Accordingly, the relief provided by the Settlement supports approval.

---

[9]    *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full Year Review*, at 24, 26, NERA ECON. CONSULTING (2024), https://www.nera.com/insights/publications/2024/recent-trends-in-securities-class-action-litigation--2023-full-y.html.

## 2.    The Strength of Lead Plaintiff's Case

To determine whether the Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of [a] recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). Given the "complexity" of securities class actions, settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long, costly trials." *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist, LEXIS 17588, at *31 (S.D.N.Y. 2006).

While Lead Plaintiff at all times remained confident in her ability to ultimately prove her claims at trial, she would be required to prove all elements of her claims to prevail, while the Defendants needed to succeed on only one defense to potentially defeat the entire action. Over the course of the litigation, including the mediation sessions, the Defendants disputed the falsity and materiality of their alleged misstatements and vigorously challenged scienter. *See* Abadou Decl. ¶¶ 32, 41, 221; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1172 (noting that scienter is "complex and difficult to establish at trial").

Other substantial obstacles to Lead Plaintiff's success at trial included Defendants' likely arguments that: (i) there was no proof of a long-standing plan to remove Mr. Hall; (ii) the Audit Committee Investigation was properly disclosed; (iii) the challenged statements concerning Mr. Hall were not false when made; (iv) the safe harbor applied as a matter of law; and (v) the Individual Defendants did not act with the requisite scienter. Lead Counsel carefully analyzed all of these risks prior to reaching the Settlement Agreement and recognized that, had the Defendants succeeded on only one of their defenses, there would have been no recovery for the Class. *See* Abadou Decl. ¶¶ 219-24. In contrast, the resolution of the litigation through the Settlement guarantees the Class a recovery of $27.5 million. This factor strongly supports final approval of the Settlement.

## 3.    The Complexity, Expense, and Duration of Continued Litigation

In evaluating the fairness of the Settlement, the Court should also account for the "expense,

complexity, and likely duration of further litigation," *Churchill*, 361 F.3d at 576, or "delay of trial and appeal," FED. R. CIV. P. 23(e)(2)(C)(i). In general, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *See Chang v. Wells Fargo Bank, N.A.*, 2023 U.S. LEXIS 188337, at *13 (N.D. Cal. 2023); *see also Fleming*, 2022 U.S. Dist. LEXIS 125595, at *17 ("Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case.").

Barring the Settlement, the continued litigation of the Action would require the expenditure of substantial additional sums of time and money at trial and beyond, with no guarantee that any additional benefit would be provided to the Class. Even if Lead Plaintiff prevailed at trial and met her burdens in establishing falsity, materiality, class-wide reliance under the "fraud on the market" presumption, loss causation, the measure of per-share damages (if any), and control person liability, the case would still be far from over. *See* Abadou Decl. ¶¶ 221-23. For example, the Defendants would have had the opportunity to challenge an individual Class Member's membership in the Class, the presumption of reliance for any Class Member, and the amount of damages due each Class Member. *Id.* ¶ 223. Moreover, the Defendants would have certainly filed an appeal, which would further delay (and risk entirely) any additional benefit received via trial. *Id.*

As opposed to continued litigation, with its risk, expense, and potential delay, the Settlement provides a certain, near-term recovery for the Class. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action."). This factor favors the Court granting final approval of the Settlement.

### 4.    The Risk of Maintaining Class Action Status

At the time the parties reached the Settlement, the parties had yet to move for summary judgment. *See* Abadou Decl. ¶ 222. Therefore, Lead Counsel believes the risk of maintaining class action status through the end of trial was minimal. *Id.* ¶ 222 n.14. Nevertheless, this factor still favors the Settlement, as Rule 23(c)(1) allows a class certification order to be altered or amended at any time prior to a decision on the merits. *Id.* In other words, the Defendants still could have moved to decertify

the Class or shorten the Class Period up until the time the jury reached a verdict. *See In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal 2007) ("[T]here is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.").

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

The extent of discovery completed and the stage of the proceedings at which settlement was achieved supports final approval of the Settlement. The discovery provided significant insight into the strengths and challenges of the Action, and the Settling Parties had a thorough understanding of the arguments, evidence, and potential witnesses that would inform the trial. *See* Abadou Decl. ¶¶ 7, 51. There can be no question that Lead Plaintiff and Lead Counsel had sufficient information to evaluate the case and the merits of the Settlement by the time it was reached. *See Foster*, 2022 LEXIS 25071, at *16 (finding "[p]laintiffs were 'armed with sufficient information about the case' to broker a fair settlement" given the discovery conducted, years of litigation, and multiple settlement conferences). In addition, the fact that the Action was certified as a class action further supports final approval of the settlement in this matter. *See In re Bluetooth*, 654 F.3d at 947 (stating that when a settlement agreement is negotiated prior to formal class certification, "settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'").

### 6.    The Experience and Views of Counsel

The opinion of experienced counsel as to the merits of a class settlement after arm's-length negotiation is entitled to considerable weight. *See Omnivision*, 559 F. Supp. 2d at 1043 ("'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.' … In addition to being familiar with the present dispute, Lead Counsel has significant experience in securities litigation.").

Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. *See* Abadou Decl. ¶ 212; *see also* ECF No. 157-8. Lead Counsel has successfully investigated and drafted a consolidated amended complaint, defeated a motion to dismiss, obtained class certification, and

reviewed thousands of documents obtained in discovery from Defendants and third parties. *See* Abadou Decl. ¶ 203. Based on these extensive efforts, Lead Counsel possessed a firm understanding of Lead Plaintiff's claims by the time the Settlement was reached, and accordingly, Lead Counsel concluded that the Settlement is an outstanding result for the Class. *Id.* ¶ 224. Therefore, in this case, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043.

### 7.    The Reaction of Class Members to Date

In assessing the fairness of a class action settlement, "courts within the Ninth Circuit typically consider 'the reaction of the class members to the proposed settlement.'" *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 896 (N.D. Cal. 2020); *see also Churchill*, 361 F.3d at 577. Specifically, "[a] court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Kuraica v. Dropbox, Inc.*, 2021 U.S. Dist. LEXIS 235394, at \*17 (N.D. Cal. 2021). While the deadline to object to the Settlement is July 26, 2024, as of July 8, 2024, no objections have been received. *See* Abadou Decl. ¶ 179. Lead Plaintiff supports the Settlement as well. *See* Smith Decl. ¶ 21. The lack of objections from Class Members favors approval of the Settlement.

### F.    The Remaining Rule 23(e)(2) Factors Also Support Final Approval

Under Rule 23(e)(2), the Court should consider the remaining factors in evaluating the Settlement: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class member claims; (ii) the terms of any proposed award of attorneys' fees, including the timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. *See* FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv), (e)(2)(D). These additional Rule 23(e)(2) factors also support the Court's approval of the Settlement.

To start, the proposed method of distribution and claims processing ensures equitable treatment of Class Members, as their claims will be processed and the Net Settlement Fund distributed pursuant to a standard method routinely approved in securities class actions. *See* FED. R. CIV. P. 23(e)(2)(C)(ii),

(e)(2)(D); *see* § IV, *infra*. The Court-authorized Claims Administrator, Epiq, will review and process all the received Claims, provide each Claimant an opportunity to cure any deficiency in a Claim or request judicial review of a denied Claim, if applicable, and if the Settlement is approved, will distribute Authorized Claimants their *pro-rata* share of the Net Settlement Fund, as calculated under the Plan of Allocation. *See* Abadou Decl. ¶ 189; § IV, *infra*.

Furthermore, the Settlement relief remains adequate when considering the proposed award of attorneys' fees and litigation expenses incurred in prosecuting the Action, including the timing of any such Court-approved payments. *See* FED. R. CIV. P. 23(e)(2)(C)(iii). As detailed in the fee and expense papers accompanying this Motion, the requested attorneys' fees of 28% of the Settlement Fund, to be paid upon the Court's approval, are reasonable based on Lead Counsel's efforts and the risks undertaken in obtaining the exceptional result of a $27.5 million cash recovery, and are in line with fee awards granted in the Ninth Circuit.[10] Any fee award is also separate from approval of the Settlement, and no Party may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* Stipulation ¶¶ 1.9, 7.3, 8.4. In addition, the proposal that any attorneys' fees be paid upon the entry of the Court's order is reasonable and consistent with common practice in similar cases, as the Stipulation states that if the Settlement is terminated or any fee award is subsequently modified, Lead Counsel must repay the subject amount with interest.[11] *See* Stipulation ¶ 7.2.

Finally, the parties have not made any agreement in connection with the settlement outside of the Stipulation.

For the reasons set forth above and in the accompanying declarations, the Settlement is fair,

---

[10]    In connection with the fee request, Lead Counsel also seeks payment from the Settlement Fund of their expenses in the total amount of $314,393.56 and Lead Plaintiff's and her husband's—and former co-Lead Plaintiff's—costs incurred in representing the Class in the amount of $20,000.

[11]    "With respect the 'quick pay' provisions, Federal courts, including this Court and others in this District, routinely approve settlements that provide for payment of attorneys' fees prior to final disposition in complex class actions." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 U.S. Dist. LEXIS 154288, at *1 (N.D. Cal. 2011) (collecting cases).

reasonable, and adequate when evaluated under the Rule 23(e) and Ninth Circuit standards, and therefore, warrants the Court's final approval.

## IV. THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE AND WARRANTS FINAL APPROVAL

Along with requesting final approval of the Settlement, Lead Plaintiff requests final approval of the Plan of Allocation that the Court preliminarily approved on April 23, 2024. *See* ECF No. 227 at 2. Per Rules 23(e)(2)(C)(ii) and (e)(2)(D), the Plan of Allocation must "treat[] class members equitably relative to each other" and be "effective[]." Assessment of the Plan of Allocation "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045; *see also Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992).

Developed in consultation with Lead Plaintiff's damages expert, Chad Coffman, the Plan of Allocation details the method for equitably distributing the Net Settlement Fund to Class Members who suffered economic losses as a result of the alleged violations of the Exchange Act as set forth in the Consolidate Amended Complaint and timely submit a valid Claim. *See* Abadou Decl. ¶¶ 182-83. To have a Recognized Claim and recover under the Plan of Allocation, a Claimant must have purchased Velodyne securities between July 2, 2020 and March 17, 2021, inclusive (*i.e.*, the Class Period) and held those shares through January 8, 2021 when the initial alleged corrective disclosure occurred and removed the alleged artificial inflation from the price of Velodyne securities. *Id.* ¶ 187. The artificial inflation used to calculate a Recognized Claim is consistent with what Mr. Coffman calculated in his merits expert report.[12] *Id.* ¶ 185.

A Recognized Claim is the sum of a Claimant's Recognized Loss Amounts for all of his, her, or its Class Period transactions. *See Id.* In general, Recognized Loss Amounts are based primarily on the difference in the amount of alleged artificial inflation in the prices of Velodyne securities at the

---

[12]     Specifically, for the Plan of Allocation, Mr. Coffman calculated the estimated amount of artificial inflation in the per-share closing price of Velodyne securities which was allegedly proximately caused by the Defendants' alleged materially false and misleading statements and omissions during the Class Period. *See* Abadou Decl. ¶ 185.

time of purchase and at the time of sale (*i.e.*, the difference between the actual purchase price and sale price). *Id.* ¶ 186; *see, generally*, ECF No. 220-3 ¶¶ 44-46. Recognized Loss Amounts will depend upon several factors, including the date(s) the shares were purchased, whether such shares were sold, and if sold, the date and price of the sale(s), taking into the account the PSLRA's limitation on recoverable damages.[13] *Id.*

In the calculation of a Claimant's Recognized Loss, all purchase and sale prices shall exclude any fees, taxes and commissions. If a Recognized Loss amount is calculated to be a negative number, that Recognized Loss shall be set to zero. *Id.* Any transactions in Velodyne Securities executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session for the U.S. financial markets.

The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id.* ¶ 189; *see also Fleming v. Impax Lab'ys Inc.*, 2021 U.S. Dist. LEXIS 225218, at *34 (N.D. Cal. 2021) (approving allocation "on a *pro rata* basis according to each class member's recognized loss"). One hundred percent of the Net Settlement Fund will be distributed to Authorized Claimants. *Id.* ¶ 190. If any funds remain after an initial distribution to Authorized Claimants, subsequent cost-effective distributions will be conducted. *Id.* Any balance that still remains in the Net Settlement Fund after reallocation(s) and payment(s) and that is not feasible or economical to reallocate shall be contributed as a *cy pres* award to Mothers Against Drunk Driving ("MADD"), a 501(c)(3) organization which, *inter alia*, "supports the safe development of autonomous vehicles and works to build public acceptance for the adoption of this life saving technology."[14] *Id.* ¶ 191; *see Nachshin v. AOL, L.L.C.*, 663 F.3d 1034, 1036 (9th Cir. 2011) ("The *cy pres* doctrine allows

---

[13]     In practice, and as detailed in the Plan of Allocation, for Velodyne securities purchased during the Class Period, and sold before January 8, 2021, the Recognized Loss Amount will be $0.00. *See* Abadou Decl. ¶ 187. For all other Velodyne securities purchased during the Class Period, the calculation of a Class Member's Recognized Loss is detailed in the Notice of Pendency and Proposed Settlement of Class Action. ECF No. 220-3 at 70-73.

[14]     *See* MADD, *Advanced Technology*, https://madd.org/advanced-technology/.

a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries."). Similarly, "Velodyne develop[ed] and market[ed] lidar solutions for autonomous vehicles, driver assistance, . . . and other uses." Compl., ECF No. 99, ¶ 47. Lead Counsel has no relationship with the proposed *cy pres* recipient. Abadou Decl. ¶ 191; s*ee Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307-08 (9th Cir. 1990).

Critically, more than 222,000 notice packets advising Class Members of the Plan of Allocation and their right to object to the Plan of Allocation have been mailed to potential Class Members and Nominees. Azari Decl. ¶ 14. As of July 8, 2024, there have been no objections to the Plan of Allocation. *See* Abadou Decl. ¶ 192.

Based on the foregoing, the Plan of Allocation is fair, reasonable, and adequate, and it should be approved. *See In re BofI Holding, Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 188621, at *25-26 (S.D. Cal. 2022) ("The Court finds no indication that the distribution and allocation methods proposed … will result in unequitable treatment of Class Members" where the "Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon the information submitted in the Proof of Claim Form and based on the calculation of recognized loss, distributed on a *pro rata* basis").

## V.    NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA

A district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," FED. R. CIV. P. 23(e)(1)(B), and "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," FED. R. CIV. P. 23(c)(2)(B). The notice also must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Young v. LG Chem, Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019). The PSLRA further requires that the settlement notice include a statement explaining a plaintiff's recovery "to allow class members to evaluate a proposed settlement." *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

The substance of the Notice, which the Court preliminarily approved, satisfies Rule 23 and due process. The Claims Administrator has mailed more than 222,000 copies of the Court-approved Notice to potential Class Members and their nominees who could be identified with reasonable effort. *See* Azari Decl. ¶ 14. In addition, the Court-approved Summary Notice was published in *Investor's Business Weekly*. *Id.* ¶ 16. The Claims Administrator also provided all information regarding the Settlement online through the Settlement website, which also provided access to downloadable copies of the Notice, Claim Form, and other Settlement related documents. *Id.* ¶ 17. Pursuant to the Stipulation, Defendants issued notice pursuant to CAFA. *See* ECF No. 224.

The notice program provides the necessary information for Class Members to make an informed decision regarding the proposed Settlement, as required by the PSLRA. Specifically, the Notice and Summary Notice apprise Class Members of, *inter alia*: (i) the Settlement amount; (ii) the reasons why the Parties are proposing the Settlement; (iii) the estimated average recovery per affected Velodyne securities; (iv) the maximum amount of attorneys' fees and expenses that will be sought; (v) the identity and contact information for a representative from Lead Counsel to answer questions concerning the Settlement; (vi) the right of Class Members to object to the Settlement; (vii) the binding effect of a judgment on Class Members; (viii) the dates and deadlines for certain Settlement-related events; and (ix) the opportunity to obtain additional information about the Action and the Settlement by contacting Lead Counsel, the Claims Administrator, or visiting the Settlement website. *See* Abadou Decl. ¶ 178; *see also* FED. R. CIV. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The Notice also details the Plan of Allocation and further explains that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim under the Plan of Allocation. *See* Abadou Decl. ¶¶ 180, 189.

Based on the foregoing, the notice program fairly apprises Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval order, Rule 23, the PSLRA, and due process. *See, e.g., Young*, 783 F. App'x at 736; *Fleming*, 2022 U.S. Dist. LEXIS 125595, at *15-16; *Hayes v. MagnaChip Semiconductor Corp.*, 2016 U.S. Dist. LEXIS 162120, at *13-15 (N.D. Cal. 2016).

## VI.    CONCLUSION

Lead Plaintiff and Lead Counsel achieved an outstanding settlement for the Class. Lead Plaintiff therefore respectfully requests that the Court approve the Settlement and Plan of Allocation.

Dated: July 12, 2024

Respectfully submitted,

**KAHN SWICK & FOTI, LLP**

By:  *s/ Ramzi Abadou*
Ramzi Abadou (SBN 222567)
KAHN SWICK & FOTI, LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

-and-

Alexander L. Burns
(admitted *pro hac vice*)
James T. Fetter
(admitted *pro hac vice*)
Alexandra Pratt
(admitted *pro hac vice*)
KAHN SWICK & FOTI, LLC
1100 Poydras Street, Suite 960
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
alexander.burns@ksfcounsel.com
james.fetter@ksfcounsel.com
alexandra.pratt@ksfcounsel.com

*Class Counsel and Counsel for*
*Class Representative, Diane Smith*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Ramzi Abadou*
RAMZI ABADOU

## Mailing Information for a Case 3:21-cv-01486-SI Moradpour v. Velodyne Lidar, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com,Ashley.Errington@ksfcounsel.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **William Zachary Brenc**
  william.brenc@wilmerhale.com,william-brenc-3258@ecf.pacerpro.com,barbara.palomo@wilmerhale.com,whdocketing@wilmerhale.com

- **Alexander Louis Burns**
  alexander.burns@ksfcounsel.com

- **Robert Donoghue**
  robert.donoghue@wilmerhale.com

- **James Thomas Fetter**
  james.fetter@ksfcounsel.com

- **Noah Stephen Guiney**
  noah.guiney@wilmerhale.com,whdocketing@wilmerhale.com

- **Tamar Kaplan-Marans**
  tamar.kaplan-marans@wilmerhale.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Sarah E. Maciel**
  Sarah.Maciel@wilmerhale.com

- **Kevin Peter Muck**
  Kevin.Muck@wilmerhale.com,linda.burch@wilmerhale.com,whdocketing@wilmerhale.com,lindy.patrick@wilmerhale.com

- **Susan Samuels Muck**
  susan.muck@wilmerhale.com,whdocketing@wilmerhale.com,susan-muck-3159@ecf.pacerpro.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,tsayre@pomlaw.com,egoodman@pomlaw.com,jlopiano@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com

- **Ivan Panchenko**
  panchenkoiv@sec.gov

- **Alexandra Pratt**
  alexandra.pratt@ksfcounsel.com

- **Pavithra Rajesh**
  prajesh@glancylaw.com,pavithra-rajesh-9402@ecf.pacerpro.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Brian Jared Schall**
  brian@schallfirm.com

- **Joshua Aisen Vittor**
  joshua.vittor@wilmerhale.com,whdocketing@wilmerhale.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`