Ramzi Abadou (SBN 222567)
KAHN SWICK & FOTI, LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

*Class Counsel and Counsel for
Class Representative, Diane Smith*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MEYSAM MORADPOUR, et al., | Case No. 3:21-CV-01486-SI |
| Plaintiffs, | **LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND LEAD PLAINTIFF REIMBURSEMENT, AND MEMORANDUM IN SUPPORT THEREOF** |
| v. | |
| VELODYNE LIDAR, INC., et al., | |
| Defendants. | **CLASS ACTION** |

Judge:      Hon. Susan Illston
Date:        August 16, 2024
Time:       10:00 a.m.
Courtroom:  1 – 17th Floor

NOTICE & MOTION FOR AN AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND
LEAD PLAINTIFF'S REIMBURSEMENT OF
REASONABLE COSTS, AND MEMORANDUM IN
SUPPORT THEREOF

CASE NO. 3:21-CV-01486-SI

## **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................2

II.  FACTUAL BACKGROUND AND HISTORY OF THE ACTION ...................................4

III. ARGUMENT ..............................................................................................................5

    A.  The Requested Attorneys' Fee Award is Fair and Reasonable and Should Be Approved...................................................................................................5

        1.  Lead Counsel is Entitled to an Award of Attorneys' Fees from the Settlement Fund .............................................................................5

        2.  The Court Should Calculate the Fee as a Percentage of the Settlement Fund .......................................................................................6

        3.  The Requested Fee's Approval is Supported by the Factors Considered by Courts in the Ninth Circuit.....................................................7

        4.  A Lodestar Cross-check Supports the Requested Fee ..............................16

IV.  THE REQUESTED LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ..........................................................................................19

V.   LEAD PLAINTIFF AND HER HUSBAND SHOULD BE REIMBURSED THEIR REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. § 78u-4(a)(4) ..............20

VI.  CONCLUSION..........................................................................................................24

NOTICE & MOTION FOR AN AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND
LEAD PLAINTIFF'S REIMBURSEMENT OF
REASONABLE FEES, AND MEMORANDUM IN
SUPPORT THEREOF

i

CASE NO. 3:21-CV-01486-SI

1

## TABLE OF AUTHORITIES

2

3

**Cases**                                                                            **Page(s)**

*Abadilla v. Precigen, Inc.*,
2023 U.S. Dist. LEXIS 199150 (N.D. Cal. 2023) ......................................................... 8

*Ambrosino v. Home Depot U.S.A., Inc.*,
2014 U.S. Dist. LEXIS 111109 (S.D. Cal. 2014) ......................................................... 15

*Baker v. Seaworld Ent., Inc.*,
2020 U.S. Dist. LEXIS 131109 (S.D. Cal. 2020) ......................................................... 7

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ......................................................... 12

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ......................................................... 5

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ......................................................... 15

*Blum v. Stenson*,
465 U.S. 886 (1984) ......................................................... 5

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ......................................................... 5

*Brown v. China Integrated Energy*,
2016 U.S. Dist. LEXIS 204416 (C.D. Cal. 2016) ......................................................... 10, 20

*Davis et al. v. Yelp, Inc. et al.*,
No. 3:18-cv-00400-EMC, slip op (N.D. Cal. Apr. 21, 2022) ......................................................... 15

*Davis et al. v. Yelp, Inc., et al.*,
No. 3:18-cv-00400-EMC, slip op (N.D. Cal. Jan. 27, 2023) ......................................................... 14

*Davis v. Yelp, Inc.*,
2023 U.S. Dist. LEXIS 40323 (N.D. Cal. 2023) ......................................................... 4

*Destefano v. Zynga, Inc.*,
2016 U.S. Dist. LEXIS 17196 (N.D. Cal. 2016) ......................................................... 9, 12, 19

*Dougherty v. Esperion Therapeutics*, *Inc.*,
2020 U.S. Dist. LEXIS 216515 (E.D. Mich. 2020) ......................................................... 11

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ................................................................ 9

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ...................................... 8-9

*Fischel v. Eq. Life Assur. Soc'y of the U.S.*,
    307 F.3d 997 (9th Cir. 2002) ........................................... 18

*Fleming et al. v. Impax Lab'ys Inc., et al.*,
    No. 4:16-cv-06557-HSG, slip op (N.D. Cal. July 15, 2022) ................. 14

*Fleming et al. v.Impax Lab'ys Inc. et al.*,
    No. 4:16-cv-06557-HSG, slip op (N.D. Cal. July 30, 2021) ................. 15

*Glass v. UBS Fin. Servs.*,
    331 F. App'x 452 (9th Cir. 2009) ................................... 6, 16-17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ........................................... 13

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ............................................. 5

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................... 8

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 94) ............................................... 19

*Hayes v. MagnaChip Semiconductor Corp.*,
    2016 U.S. Dist. LEXIS 162120 (N.D. Cal. 2016) ......................... 10

*Hefler v. Wells Fargo & Co.*,
    2018 U.S. Dist. LEXIS 213045 (N.D. Cal. 2018) ..................... 18, 19

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .................................................... 7

*Hunt v. Bloom Energy Corp.*,
    2024 U.S. Dist. LEXIS 82465 (N.D. Cal. 2024) ................... 11, 13, 19

*In re : Wash. Pub. Power Supply Sys. Secs. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .................................. 5, 7, 12, 13

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ................................. 6, 14

*In re Allergan Proxy Violation Derivatives Litig.*,
  2018 U.S. Dist. LEXIS 221122 (C.D. Cal. 2018) ........................................................ 14

*In re Am. Apparel S'holder Litig.*,
  2014 U.S. Dist. LEXIS 184548 (C.D. Cal. 2014) ........................................... 6-7, 11, 17

*In re Apollo Grp. Secs. Litig.*,
  2012 U.S. Dist. LEXIS 55622 (D. Ariz. 2012) ........................................................ 17

*In re Apple Inc. Device Performance Litig.*,
  2021 U.S. Dist. LEXIS 50546 (N.D. Cal. 2021) ........................................................ 11

*In re Apple Inc. Device Performance Litig.*,
  2023 U.S. Dist. LEXIS 27892 (N.D. Cal. 2023) ........................................................ 11

*In re Apple Inc. Sec. Litig.*,
  2024 U.S. Dist. LEXIS 118573 (N.D. Cal. 2024) ........................................................ 10

*In re Banc of Cal. Secs. Litig.*,
  2020 U.S. Dist. LEXIS 48778 (C.D. Cal. 2020) ........................................................ 14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ........................................................ 16

*In re CV Therapeutics, Inc.*,
  2007 U.S. Dist. LEXIS 98244 (N.D. Cal. 2007) ........................................... 3, 10, 21

*In re CV Therapeutics, Inc. Sec. Litig.*,
  No. 3:03-cv-03709-SI, slip op (N.D. Cal. Apr. 4, 2007) ........................................ 14-15

*In re CV Therapeutics, Inc. Sec. Litig.*,
  No. 3:03-cv-03709-SI, slip op (N.D. Cal. Mar. 2, 2007) ........................................ 15

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. 2015) ........................................................ 12

*In re Fibrogen, Inc.*,
  2024 U.S. Dist. LEXIS 25384 (N.D. Cal. 2024) ........................................................ 10

*In re Gilead Scis. Sec. Litig.*,
  No. 3:03-cv-04999-SI, slip op (N.D. Cal. Nov. 5, 2010) ........................................ 14

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................ 16

*In re Google Referrer Header Priv. Litig.*,
  869 F.3d 737 (9th Cir. 2017) ........................................................ 16

*In re Health Ins. Innovations Secs. Litig.*,
  2020 U.S. Dist. LEXIS 231055 (M.D. Fla. 2020) ........................................................ 11

NOTICE & MOTION FOR AN AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND
LEAD PLAINTIFF'S REIMBURSEMENT OF
REASONABLE FEES, AND MEMORANDUM IN
SUPPORT THEREOF

iv

CASE NO. 3:21-CV-01486-SI

*In re HPL Techs., Inc., Sec. Litig.*,
　366 F. Supp. 2d 912 (N.D. Cal. 2005) ........................................................................ 16

*In re Immune Response Sec. Litig.*,
　497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......................................................... 15, 20, 21

*In re Lucent Techs., Inc. Sec. Litig.*,
　327 F. Supp. 2d 426 (D.N.J. 2004) ............................................................................ 15

*In re Lyft Inc. Sec. Litig.*,
　2023 U.S. Dist. LEXIS 137198 (N.D. Cal. 2023) ...................................................... 18

*In re MacBook Keyboard Litig.*,
　2023 U.S. Dist. LEXIS 92063 (N.D. Cal. 2023) .................................................. 11, 12

*In re Merit Med. Sys., Inc. Sec. Litig.*,
　No. 8:19-cv-036-DOC, slip op (C.D. Cal. Apr. 15, 0) ............................................... 14

*In re Merit Med. Sys., Inc. Sec. Litig.*,
　No. 8:19-cv-02326-DOC, slip op (C.D. Cal. Mar. 9, 2022) ....................................... 15

*In re Omnicom Grp., Inc. Sec. Litig.*,
　597 F.3d 501 (2d Cir. 2010) ...................................................................................... 13

*In re Omnivision Techs., Inc.*,
　559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. *passim*

*In re Online DVD-Rental Antitrust Litig.*,
　779 F.3d 934 (9th Cir. 2015) ....................................................................................... 6

*In re Oracle Corp. Sec. Litig.*,
　2009 U.S. Dist. LEXIS 50995 (N.D. Cal. 2009) ....................................................... 13

*In re Pac. Enters. Sec. Litig.*,
　47 F.3d 373 (9th Cir. 1995) ................................................................................. 10, 14

*In re Quintus Sec. Litig.*,
　2006 U.S. Dist. LEXIS 99466 (N.D. Cal. 2006) ....................................................... 21

*In re Tezos Sec. Litig.*,
　No. 3:17-cv-06779-RS, slip op (N.D. Cal. Aug. 8, 00) .............................................. 14

*In re Tyco Int'l, Ltd.*,
　535 F. Supp. 2d 249 (D.N.H. 2007) ...................................................................... 16-17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
　2017 U.S. Dist. LEXIS 39115 (N.D. Cal. 2017) ....................................................... 18

NOTICE & MOTION FOR AN AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND
LEAD PLAINTIFF'S REIMBURSEMENT OF
REASONABLE FEES, AND MEMORANDUM IN
SUPPORT THEREOF

v

CASE NO. 3:21-CV-01486-SI

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020) ....................................................... 21

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
    845 F. App'x 563 (9th Cir. 2021) ............................................................. 21

*Kasper et al. v. AAC Holdings, Inc. et al.*,
    No. 3:15-CV-00923-JPM, slip op (M.D. Tenn. June 11, 2018) ................... 21

*Khoja v. Orexigen Therapeutics*,
    2021 U.S. Dist. LEXIS 77777 (S.D. Cal. 2021) ......................................... 11

*Khoja v. Orexigen Therapeutics*,
    2021 U.S. Dist. LEXIS 230105 (S.D. Cal. 2021) .................................... 3, 21

*Luna v. Marvell Tech. Grp.*,
    2018 U.S. Dist. LEXIS 67181 (N.D. Cal. 2018) ........................................... 9

*Mauss v. NuVasive, Inc.*,
    2018 U.S. Dist. LEXIS 206387 (S.D. Cal. 2018) .......................................... 8

*Moradpour v. Velodyne Lidar, Inc.*,
    2022 U.S. Dist. LEXIS 117273 (N.D. Cal. 2022) ...................................... 2-3

*Patel v. Axesstel, Inc.*,
    2015 U.S. Dist. LEXIS 146949 (S.D. Cal. 2015) .......................................... 4

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) .................................................................... 6

*Pearlstein v. Blackberry Ltd.*,
    2022 U.S. Dist. LEXIS 177786 (S.D.N.Y. 2022) ......................................... 9

*Quiruz v. Specialty Commodities*,
    2020 U.S. Dist. LEXIS 209498 (N.D. Cal. 2020) ........................................ 7

*Ramsey v. MRV Commc'ns. Inc.*,
    2010 U.S. Dist. LEXIS 161816 (C.D. Cal. 2010) ...................................... 21

*Roberts et al. v. Zuora, Inc. et al.*,
    No. 3:19-cv-03422-SI, slip op (N.D. Cal. Jan. 16, 2024) ......................... 14

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948, 958 (9th Cir. 2009) ............................................................ 20

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ................................................................... 6

NOTICE & MOTION FOR AN AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND
LEAD PLAINTIFF'S REIMBURSEMENT OF
REASONABLE FEES, AND MEMORANDUM IN
SUPPORT THEREOF

vi

CASE NO. 3:21-CV-01486-SI

*Spann v. J.C. Penney Corp.*,
 211 F. Supp. 3d 1244, 1264 (C.D. Cal. 2016) ............................................................ 13

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ................................................................................ 5, 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ................................................................................................. 5

*Testone v. Barlean's Organic Oils, LLC*,
 2023 U.S. Dist. LEXIS 37308 (S.D. Cal. 2023) ........................................................ 6

*Torrisi v. Tucson Elec. Power Co.*,
 8 F.3d 1370 (9th Cir. 1993) ...................................................................................... 6

*Van Vranken v. Atl. Richfield Co.*,
 901 F. Supp. 294 (N.D. Cal. 1995) .................................................................... 20, 22

*Vataj v. Johnson*,
 2021 U.S. Dist. LEXIS 214678 (N.D. Cal. 2021) ..................................................... 18

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ........................................................................... *passim*

**Statutes**

15 U.S.C. § 78u-4 ..................................................................................... *passim*
15 U.S.C. § 78j(b) ............................................................................................... 2
15 U.S.C. § 78t(b) ............................................................................................... 2

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 1
Fed. R. Civ. P. 26 .............................................................................................. 22

**Other**

Edward Flores and Svetlana Starykh,
 *Recent Trends in Securities Class Action Litigation: 2023 Full Year Review*, NERA Econ.
 Consulting (2024) ............................................................................................. 3-4

Notice & Motion for an Award of
Attorneys' Fees, Litigation Expenses, and
Lead Plaintiff's Reimbursement of
Reasonable Fees, and Memorandum in
Support Thereof

vii

Case No. 3:21-CV-01486-SI

## NOTICE OF MOTION AND MOTION

TO:   **ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that on August 16, 2024, at 10:00 a.m., the Honorable Susan Illston presiding, the Court-appointed Lead Counsel Kahn Swick & Foti, LLC will and does hereby move the Court for an Order pursuant to Federal Rule of Civil Procedure 23 granting an award of attorneys' fees, litigation expenses, and reimbursement to Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(4).[1]

This Motion is based upon this Notice of Motion and Motion (together, the "Motion"); the supporting Memorandum of Points and Authorities below, the accompanying declarations, including the Declaration of Ramzi Abadou in Support of: (1) Class Representative Diane Smith's Motion for Approval of Proposed Class Action Settlement; and (2) Motion for an Award of Attorneys' Fees, Litigation Expenses, and Lead Plaintiff's Reimbursement of Reasonable Costs ("Abadou Decl.") and the Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Plan ("Azari Decl."), the exhibits attached thereto, the Stipulation, and all prior pleadings in this Litigation, and such additional evidence or argument as may be requested by the Court.

Lead Counsel is not aware of any opposition to the Motion. Pursuant to the Court's preliminary approval order (ECF No. 227), any objections to the request for attorneys' fees and litigation expenses must be filed by July 26, 2024, and will be addressed in Lead Counsel's reply papers to be filed on or before August 9, 2024.[2]

---

[1]   All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation of Settlement (the "Stipulation"). *See* ECF No. 220-3 at 2-35.

[2]   The proposed Final Judgment and Order of Dismissal and proposed Orders granting approval of the proposed Plan of Allocation and this Motion will be submitted with Lead Plaintiff's August 9, 2024 reply once the July 26, 2024 deadline for Class Members to object to the Settlement or Plan of Allocation has passed.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Court should approve Lead Counsel's request for an award of 28% of the Settlement Fund as attorneys' fees.

2. Whether the Court should approve Lead Counsel's request for reimbursement of litigation expenses.

3. Whether the Court should approve Lead Counsel's request for reimbursement for Class Representative and Lead Plaintiff Diane Smith and former Lead Plaintiff William Smith, pursuant to 15 U.S.C. § 78u-4(a)(4)

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Counsel respectfully submits this Memorandum of Points and Authorities in support of its motion for: (i) an award of attorneys' fees in the amount of 28% of the Settlement Fund; (ii) reimbursement of litigation expenses in the amount of $314,393.56; and (iii) reimbursement of reasonable costs accrued by Class Representative and Lead Plaintiff Diane Smith (hereinafter "Lead Plaintiff") in the amount of $20,000. *See* Declaration of Diane Smith in Support of: (1) Motion for Final Approval of Proposed Class Action Settlement; (2) Motion for an Award of Attorneys' Fees, Litigation Expenses; and (3) Lead Plaintiff's Reimbursement of Reasonable Costs ("Smith Decl.") at ¶ 25.

**I.    INTRODUCTION**

Kahn Swick & Foti, LLC ("Lead Counsel" or "KSF") respectfully submits this memorandum of law in support of the Motion for an Award of Attorneys' Fees, Litigation Expenses, and Lead Plaintiff's Reimbursement of Reasonable Costs. Over three years ago, Lead Counsel undertook this risky and uncertain matter on a fully contingent basis. It was a challenging case from the outset as indicated by this Court's partial dismissal of Lead Plaintiff's Consolidated Amended Complaint which the Court held failed to allege claims under Sections 10(a) and 20(b) of the Exchange Act against any defendant based on: (i) Velodyne's financial projections and revenue outlook; (ii) Ford's investment in Velodyne; and (iii) the Company's internal controls. *Moradpour v. Velodyne Lidar, Inc.*, 2022 U.S.

NOTICE & MOTION FOR AN AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND
LEAD PLAINTIFF'S REIMBURSEMENT OF
REASONABLE FEES, AND MEMORANDUM IN
SUPPORT THEREOF

2

CASE NO. 3:21-CV-01486-SI

Dist. LEXIS 117273, at *56-57 (N.D. Cal. 2022).[3]

For over three years, Lead Counsel, consistent with its fiduciary obligations to Lead Plaintiff and the Class: (i) investigated, drafted and filed a comprehensive Consolidated Complaint and Consolidated Amended Complaint; (ii) defeated Defendants' Motion to Dismiss, in part; (iii) filed a Motion for Class Certification, which the Court granted following the depositions of Lead Plaintiff and her husband as a condition of his withdrawal as Lead Plaintiff; (iv) obtained and reviewed approximately 341,780 pages of documents from Defendants and numerous third parties; (v) engaged in several rounds of briefing regarding discovery disputes with Defendants; (vi) prepared and noticed an exhaustive 30(b)(6) deposition of Velodyne; and (vii) participated in an arm's-length mediation process, including two lengthy mediation sessions with Defendants and extensive negotiations outside those sessions *via* the mediator that involved detailed briefs from the parties. These unique and determined efforts justify an upward departure from the benchmark 25% fee awards typically awarded in this Circuit. *In re CV Therapeutics, Inc.*, 2007 U.S. Dist. LEXIS 98244, at *2 (N.D. Cal. 2007) (awarding 30% of the $13,350,000 settlement fund) (Illston, J.);[4] *Khoja v. Orexigen Therapeutics*, 2021 U.S. Dist. LEXIS 230105, at *32 (S.D. Cal. 2021) (approving 33% of $4,800,000 settlement fund in case which settled before class certification).

Lead Counsel's efforts, which it undertook on an entirely contingent basis for over three years, resulted in a remarkable $27,500,000 recovery for the Class. That result is extraordinary—especially given that it constitutes a recovery of approximately 14.5% of the total maximum damages potentially recoverable in this litigation, which is around eight times the median 1.8% ratio between investor losses and settlement value in 2023.[5] Further, the Lead Plaintiff fully supports Lead Counsel's fee

---

[3]      All internal citations and quotations are omitted and emphasis is added unless otherwise stated.

[4]      *See In re CV Therapeutics, Inc.*, 3:03-cv-03709-SI, slip op. at 3 (N.D. Cal. Dec. 18, 2006) (indicating that the settlement fund in that case was $13,350,000).

[5]      *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full Year Review*, at 24, 26, NERA ECON. CONSULTING (2024),

request stating that "I approve KSF's request for an award of attorney's fees in the amount of 28% of the Settlement Fund and find the request fair and reasonable considering the work my attorneys performed, the litigation risks faced, and the substantial recovery obtained for the Class in the Action." *See* Smith Decl. at ¶ 21-22. [6]

Given the recovery obtained, and the significant risks it undertook to pursue this matter for over three years, Lead Counsel respectfully moves the Court for: (i) an award of attorneys' fees in the amount of 28% of the Settlement Fund; (ii) reimbursement of $314,393.56 in expenses reasonably and necessarily incurred by Lead Counsel in the prosecution of this Action; and (iii) reimbursement to Lead Plaintiff Diane Smith and her husband (and former co-Lead Plaintiff) William Smith in the amount of $20,000 for the costs, expenses and efforts incurred in connection with their steadfast representation of the Class.

Finally, not a single objection to the fee request—or any other aspect of this Settlement—has been received as of July 8, 2024. *See Davis v. Yelp, Inc.*, 2023 U.S. Dist. LEXIS 40323, at *5-6 (N.D. Cal. 2023) (collecting cases and holding that upward departure was "justified by the positive result obtained, the contingent fee risk, the hours dedicated, the financial commitment, and the important public policy advanced by securities litigation."); *Patel v. Axesstel, Inc.*, 2015 U.S. Dist. LEXIS 146949, at *21 (S.D. Cal. 2015) (upward departure from benchmark warranted "[i]n light of the result achieved here, the complexity of securities litigation, the lodestar crosscheck, and the lack of any objection from the class members[.]"). Accordingly, the motion should be granted.

## II.     FACTUAL BACKGROUND AND HISTORY OF THE ACTION

Lead Counsel respectfully refers the Court to the accompanying Abadou Declaration for a detailed description of the procedural history, the claims asserted, the investigation undertaken, the

---

https://www.nera.com/insights/publications/2024/recent-trends-in-securities-class-action-litigation--2023-full-y.

[6]     Diane Smith's declaration is submitted herewith as Exhibit B to the Abadou Decl. which further details the efforts taken to secure the Settlement.

Parties' extensive motion practice and discovery efforts, the negotiations and mediation process that resulted in the Settlement, and the risks and uncertainties involved in prosecuting this Action.

## III.   ARGUMENT

### A.   The Requested Attorneys' Fee Award is Fair and Reasonable and Should Be Approved

#### 1.   Lead Counsel is Entitled to an Award of Attorneys' Fees from the Settlement Fund

In common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 903 n.16 (1984). Courts have long held that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (same). Awarding attorneys' fees from a common fund supports the policy rationale that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *See In re : Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). An award of attorneys' fees from a common fund also ensures that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

Furthermore, by bringing this action to enforce antifraud securities laws, Lead Counsel has provided "an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd., 5*51 U.S. 308, 313 (2007); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) ("[W]e repeatedly have emphasized that implied private actions provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [Securities and Exchange] Commission action"). The facts and circumstances of this case support the common practice of awarding fees from a settlement fund.

NOTICE & MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND LEAD PLAINTIFF'S REIMBURSEMENT OF REASONABLE FEES, AND MEMORANDUM IN SUPPORT THEREOF

5

CASE NO. 3:21-CV-01486-SI

### 2. The Court Should Calculate the Fee as a Percentage of the Settlement Fund

Courts in the Ninth Circuit award attorneys' fees in common fund cases under either the "percentage-of-recovery" method or the "lodestar" method. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). Although district courts retain discretion over whether to apply the percentage-of-recovery approach or lodestar method in determining attorneys' fees in a common fund case, the percentage-of-recovery method is the prevailing standard in the Ninth Circuit. *See Glass v. UBS Fin. Servs.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (overruling objection based on use of percentage-of-the-fund approach); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989); *see also Testone v. Barlean's Organic Oils, LLC*, 2023 U.S. Dist. LEXIS 37308, at *13 (S.D. Cal. 2023); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing cases).

Despite the discretion to use the lodestar method, courts prefer the percentage-of-recovery method for awarding attorneys' fees in cases with a common fund because it (i) aligns with the common use of percentage-based contingency fee contracts in private litigation; (ii) ensures the lawyers' interests align with those of the class in achieving the maximum possible recovery; and (iii) reduces the court's burden by eliminating the detailed and time-consuming lodestar analysis. *See Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). In contrast, applying the lodestar method "to common fund cases does not achieve the stated purposes of proportionality, predictability and protection of the class" but rather "encourages abuses such as unjustified work and protracting the litigation." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).

Likewise, the percentage approach is endorsed by the Private Securities Litigation Reform Act ("PSLRA"), which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and

NOTICE & MOTION FOR AN AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND
LEAD PLAINTIFF'S REIMBURSEMENT OF
REASONABLE FEES, AND MEMORANDUM IN
SUPPORT THEREOF

6

CASE NO. 3:21-CV-01486-SI

1

2

3

4

prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see also In re Am. Apparel S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548, at *66-67 (C.D. Cal. 2014) ("[T]he percentage method is proper in a securities fraud case"). Accordingly, Lead Plaintiff and Lead Counsel respectfully suggest that this Court adopt that approach here.

5

6

7

Nevertheless, given the 1.13 multiplier here as described in § III.A.4, *infra*, a lodestar crosscheck confirms the reasonableness of the requested fee award. *See Vizcaino*, 290 F.3d at 1050 n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure[.]").

8

9

### 3. The Requested Fee's Approval is Supported by the Factors Considered by Courts in the Ninth Circuit

10

11

12

13

14

15

16

17

18

19

A guiding principle for fee awards in the Ninth Circuit is that they must be "reasonable under the circumstances." *See In re : Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d at 1295 n.2. In making such a determination, the Court should consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Class; and (6) awards made in similar cases. *See Omnivision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino*, 290 F.3d at 1048-51). The Ninth Circuit has explained that these factors are not a rigid checklist and should not be weighed individually, but rather, should be evaluated considering the totality of the circumstances. *Vizcaino*, 290 F.3d at 1048-50. As detailed below, each of these factors, along with the lodestar cross-check, support approving the requested fee.

20

### a. The quality of the result achieved supports the fee request

21

22

23

24

25

26

Courts generally acknowledge that the quality of the result achieved is the most important factor in determining an appropriate fee award. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Quiruz v. Specialty Commodities*, 2020 U.S. Dist. LEXIS 209498, at *31 (N.D. Cal. 2020) ("The foremost consideration is the benefit obtained for the class."); *Baker v. Seaworld Ent., Inc.*, 2020 U.S. Dist. LEXIS 131109, at *30 (S.D. Cal. 2020) (same).

27

28

NOTICE & MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND LEAD PLAINTIFF'S REIMBURSEMENT OF REASONABLE FEES, AND MEMORANDUM IN SUPPORT THEREOF

7

CASE NO. 3:21-CV-01486-SI

1        As explained in the preliminary approval motion (ECF No. 220), Lead Plaintiff's damages

2   expert estimates that if: (1) the Class had fully prevailed on its claims after a jury trial; (2) the Court

3   and jury accepted Lead Plaintiff's damages theory; and (3) the jury verdict survived the inevitable

4   appeals, the total maximum aggregate damages would be approximately $190 million. *See* Abadou

5   Decl. ¶ 171. Therefore, the Settlement recovers approximately 14.5% of the total maximum damages

6   potentially recoverable in this Litigation, approximately eight times the median 1.8 percent ratio

7   between investor losses and settlement value in 2023.[7] *Id.*

8        Given the possible alternative results in this litigation, including the risk of no recovery

9   whatsoever, the establishment of the $27.5 million Settlement Fund constitutes a considerable

10  achievement and weighs heavily in favor of the requested fee.

### b.  The substantial risks of the litigation support the fee request

12       When awarding attorneys' fees, courts in the Ninth Circuit also consider "[t]he risk that further

13  litigation might result in [p]laintiffs not recovering at all, particularly in a case involving complicated

14  legal issues." *See Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (noting

15  "[r]isk is a relevant circumstance" in awarding attorneys' fees). Courts also "evaluate 'the strength of

16  the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the

17  risk of maintaining class action status throughout the trial.'" *Abadilla v. Precigen, Inc.*, 2023 U.S. Dist.

18  LEXIS 199150, at *34 (N.D. Cal. 2023) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

19  Cir. 1998)). These and similar risks are omnipresent in securities class actions, which are "complex

20  actions to litigate." *Mauss v. NuVasive, Inc.*, 2018 U.S. Dist. LEXIS 206387, at *15 (S.D. Cal. 2018).

21       From the outset, Lead Counsel faced substantial risks in prosecuting the Action. For example,

22  the PSLRA's heightened pleading standard meant overcoming the motion to dismiss was no sure thing.

23  *See* Abadou Decl. ¶ 199; *see also Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th

24  Cir. 2003) ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an

---

[7]      *See* n.4, *supra*.

unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness. This is not an easy standard to comply with—it was not intended to be[.]"). Although Defendants chose not to contest class certification, they also expressly reserved the right to move to decertify the class at a later date. ECF No. 182. Accordingly, there was no guarantee that the class would have remained certified through trial. *See Omnivision*, 559 F. Supp. 2d at 1041 (noting that "Defendants might have sought decertification or modification of the class.").

The Court should also consider that this was not a restatement case, which created additional hurdles to overcome. *See Luna v. Marvell Tech. Grp.*, 2018 U.S. Dist. LEXIS 67181, at *9 (N.D. Cal. 2018) (noting that among the risks plaintiffs faced was the fact that the case did not involve an accounting restatement). In restating financials, companies admit to a material misstatement of their financial reporting. Accordingly, a case based on a restatement is less risky because the misstatement and materiality elements of a securities fraud claim are already met. *See, e.g.*, *Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *33, *35 (N.D. Cal. 2016) (noting that "some typical hallmarks of scienter in securities fraud cases, such as a restatement, SEC action or investigation, or criminal action or investigation" were absent there and finding that this factor weighed in favor of approving the settlement); *Pearlstein v. Blackberry Ltd.*, 2022 U.S. Dist. LEXIS 177786, at *15 (S.D.N.Y. 2022) ("Defendants would diligently contest this issue and, at trial, would argue, *inter alia*, that . . . lack of a restatement of BlackBerry's financials[] . . . further negate[s] scienter.") (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005)); *Luna*, 2018 U.S. Dist. LEXIS 67181, at *9 ("the risks include lead plaintiff's ability to . . . show that Marvell's use of pull-ins gave rise to an actionable claim despite the lack of an accounting restatement and an attestation from the Company's auditor that Marvell's financial statements were GAAP-compliant.").

The litigation risks certainly did not end with investigating the claims, filing the complaint, and obtaining class certification. Here, as discussed in greater detail in the Abadou Declaration, Defendants advanced several arguments over the course of the litigation disputing both liability and damages. For example, Defendants challenged the falsity and materiality of their alleged

NOTICE & MOTION FOR AN AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND
LEAD PLAINTIFF'S REIMBURSEMENT OF
REASONABLE FEES, AND MEMORANDUM IN
SUPPORT THEREOF

9

CASE NO. 3:21-CV-01486-SI

misstatements and vigorously disputed scienter. *See* Abadou Decl. ¶ 221; *see also In re Fibrogen, Inc.*, 2024 U.S. Dist. LEXIS 25384, at *10 (N.D. Cal. 2024) ("the settlement discount is warranted by merits-based risks presented in litigation, including challenges to falsity of statements, scienter, and loss causation."); *Brown v. China Integrated Energy*, 2016 U.S. Dist. LEXIS 204416, at *32-33 (C.D. Cal. 2016) ("To prevail, Plaintiffs would have to establish Defendants acted with scienter, which can be particularly difficult to establish."); *Hayes v. MagnaChip Semiconductor Corp.*, 2016 U.S. Dist. LEXIS 162120, at *16 (N.D. Cal. 2016) (noting "[p]laintiffs may not ultimately have been able to adduce sufficient facts to demonstrate the scienter or causation elements of their securities fraud claim.").

Defendants also hotly contested whether numerous communications with third parties related to David Hall's ouster were privileged. *See* Abadou Decl. ¶¶ 134-47. Had they prevailed in maintaining privilege over all or some of these communications, Lead Plaintiff's case may have failed for lack of evidence. *Id.* And assuming Lead Plaintiff survived summary judgment, this Action would not have gone to trial until August 4, 2025, at the earliest. ECF No. 202; *see also In re Apple Inc. Sec. Litig.*, 2024 U.S. Dist. LEXIS 118573, at *10 (N.D. Cal. 2024) ("Further litigation, absent settlement would likely be lengthy and would present several difficulties to resolve.").

It is beyond doubt that the risks posed by litigation were substantial and were present every step of the way (including an inevitable appeal had Lead Plaintiff succeeded at summary judgement or trial). Given the possibility of no recovery whatsoever, the Settlement is a considerable achievement and weighs heavily in favor of the requested fee. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding attorneys' fees of 33% "justified because of the complexity of the issues and the risks"); *In re CV Therapeutics, Inc.*, 2007 U.S. Dist. LEXIS 98244, at *2 (awarding 30% of the settlement fund as attorneys' fees).

### c.   The skill required and the quality of work performed support the fee request

In determining the reasonableness of a fee award, courts also look at the skill required and the

quality of the work performed. *See Hunt v. Bloom Energy Corp.*, 2024 U.S. Dist. LEXIS 82465, at *23 (N.D. Cal. 2024). Courts recognize that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *Omnivision*, 559 F. Supp. 2d at 1047. "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Id.*

Lead Counsel's efforts in securing the Settlement are a testament to their skill, quality, and tenacity. Lead Counsel also has extensive experience prosecuting complex securities class actions. *See* ECF No. 157-8; *Khoja v. Orexigen Therapeutics*, 2021 U.S. Dist. LEXIS 77777, at *14 (S.D. Cal. 2021) ("Class Counsel have significant securities class action litigation experience."); *In re Health Ins. Innovations Secs. Litig.*, 2020 U.S. Dist. LEXIS 231055, at *13 (M.D. Fla. 2020) ("KSF is highly experienced in prosecuting securities class actions."); *Dougherty v. Esperion Therapeutics, Inc.*, 2020 U.S. Dist. LEXIS 216515, at *23 (E.D. Mich. 2020) (KSF has "significant . . . experience in class [action] litigation[.]"). The Court should consider KSF's efforts, and the quality of determined defense counsel to measure the skill needed to litigate this case successfully. *In re Apple Inc. Device Performance Litig.*, 2021 U.S. Dist. LEXIS 50546, at *31 (N.D. Cal. 2021); *Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at *22 (same).

Here, Lead Counsel demonstrated this experience and skill through the effective prosecution of this complex case, culminating in the Settlement. *See* Abadou Decl. ¶ 217. Moreover, the fact that the Action did not settle during the first day of mediation meant that Lead Counsel and Lead Plaintiff refused to settle cheaply. *Id.* ¶ 212. Lead Counsel's extensive efforts, zealous advocacy, skill, and demonstrated willingness to litigate rather than accept a below-value settlement directly resulted in the recovery of $27.5 million and strongly supports the requested fee. *Id.* ¶ 203.

The quality of opposing counsel is also important in evaluating the Lead Counsel's work. *See In re MacBook Keyboard Litig.*, 2023 U.S. Dist. LEXIS 92063, at *42 (N.D. Cal. 2023); *In re Apple Inc. Device Performance Litig.*, 2023 U.S. Dist. LEXIS 27892, at *65 (N.D. Cal. 2023). Defendants in this Action were represented by experienced counsel from Wilmer Cutler Pickering Hale and Dorr

NOTICE & MOTION FOR AN AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND
LEAD PLAINTIFF'S REIMBURSEMENT OF
REASONABLE FEES, AND MEMORANDUM IN
SUPPORT THEREOF

11

CASE NO. 3:21-CV-01486-SI

1   LLP, an extremely capable and highly respected national law firm that vigorously defended the case.

2   *See* Abadou Decl. ¶ 213. In the face of this formidable opposition, Lead Counsel obtained a highly

3   favorable recovery for the Class, thereby supporting an award of the requested fee. *MacBook*, 2023

4   U.S. Dist. LEXIS 92063, at *42 (approving requested 30% fee and finding that "[t]he quality of

5   opposing counsel[] . . . further speaks to Class Counsel's skill and diligent prosecution of this

6   action."); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013)("The quality of

7   opposing counsel is important in evaluating the quality of Class Counsel's work.").

### d.  The contingent nature of the fee and the financial burden carried by counsel support the fee request

In assessing a requested fee, courts recognize that a premium is appropriate where attorney

fees are contingent in nature, given the risk that counsel will receive no compensation for their efforts.

*See In re : Wash. Pub. Power Supply Sys.*, 19 F.3d at 1299 ("It is an established practice in the private

legal market to reward attorneys for taking the risk of non-payment by paying them a premium over

their normal hourly rates for winning contingency cases."); *see also Omnivision*, 559 F. Supp. 2d at

1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise

afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-

fee basis a larger fee[.]"). This is especially true where Lead Counsel "has significant experience in

the particular type of litigation at issue; indeed, in such contexts, courts have awarded an even higher

33 percent fee award." *Destefano*, 2016 U.S. Dist. LEXIS 17196, at *60.

Lead Counsel has to date received no compensation, has worked 10,900 hours equating to a

total lodestar of $6,800,000, and has incurred expenses of $314,393.56 in prosecuting this Action. *See*

Abadou Decl. ¶¶ 207, 227; Ex. C. Implementing the Settlement and claims administration will also

require additional work. *Id.* at ¶ 208; *see also In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 U.S.

Dist. LEXIS 152668, at *27 (S.D.N.Y. 2015) (noting the "need to oversee the claims process, respond

to inquiries, and assist Class Members in submitting their Proof of Claims . . . support a conclusion

that a 33% fee award in this matter is reasonable.").

1    Since the start of this case, Lead Counsel has shouldered the risk that any compensation and

2    expense reimbursement would depend on the result achieved, as well as on the Court's discretion in

3    awarding fees and expenses. *See* Abadou Decl. ¶ 229. Indeed, there have been many class actions in

4    which plaintiffs' counsel pursued claims on a contingency basis and expended thousands of hours and

5    millions of dollars, yet received no remuneration whatsoever. *See, e.g.*, *In re Omnicom Grp., Inc. Sec.*

6    *Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming grant of summary judgment in favor of defendant

7    on loss-causation grounds after years of litigation); *In re Oracle Corp. Sec. Litig.*, 2009 U.S. Dist.

8    LEXIS 50995 (N.D. Cal. 2009) (granting summary judgment to defendants after eight years of

9    litigation), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Even plaintiffs who prevail at trial may have favorable

10   judgments overturned on appeal or on a post-trial motion. *See, e.g., Glickenhaus & Co. v. Household*

11   *Int'l, Inc.*, 787 F.3d 408, 412 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion

12   after 13 years of litigation on loss causation grounds and error injury instruction).

13   Here, Lead Counsel committed significant resources, time, and money to prosecute this Action

14   for the Class's benefit without any compensation or any guarantee of a fee. *See* Abadou Decl. ¶ 10.

15   Under circumstances like these, "[t]he contingent nature of the work performed by class counsel here,

16   including the risk they took in advancing costs, also weighs in favor of granting the fee request." *Spann*

17   *v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1264 (C.D. Cal. 2016).

18              **e.   A 28% fee award is consistent with fee awards in similar, complex,**
19                    **contingent litigation**

20   Although the Ninth Circuit in *Staton*, 327 F.3d at 968, stated that "25% of the common fund"

21   was a "benchmark award for attorney fees," a guiding principle for fee awards in this Circuit remains

22   the idea that they must be "reasonable under the circumstances." *See In re : Wash. Pub. Power Supply*

23   *Sys.*, 19 F.3d at 1295 n.2; *see also Vizcaino*, 290 F.3d at 1048 ("Selection of the benchmark or any

24   other rate must be supported by findings that take into account all of the circumstances of the case").

25   As applied, this means that "in most common fund cases, the award exceeds that benchmark." *See*

26   *Omnivision*, 559 F. Supp. 2d at 1047; *Hunt*, 2024 U.S. Dist. LEXIS 82465, at *23 (awarding 30% of

27
28

1    the common fund as attorneys' fees in securities class action); *In re CV Therapeutics, Inc.*, 2007 U.S.

2    Dist. LEXIS 98244, at *2 (same); *see also In re Activision Sec. Litig.*, 723 F. Supp. at 1377-78

3    (surveying securities cases nationwide and noting, "[t]his court's review of recent reported cases

4    discloses that nearly all common fund awards range around 30% . . . ."); *In re Pac. Enterprises Sec.*

5    *Litig.*, 47 F.3d at 379 (affirming award of 33% of the common fund in simultaneous securities and

6    derivative class action).

7          In view of the result obtained (*i.e.*, approximately 14.5% recovery of the total maximum

8    damages available to the Class), the contingent fee risk, the number of hours and financial commitment

9    dedicated to this matter by Lead Counsel, and the important public policy advanced by securities

10    litigation such as this Action, an award of 28% of the Settlement Fund is appropriate. *See In re*

11    *Allergan Proxy Violation Derivatives Litig.*, 2018 U.S. Dist. LEXIS 221122, at *2 (C.D. Cal. 2018)

12    (noting that a 30% award is "the norm" in the Ninth Circuit). Indeed, within the last several years,

13    multiple courts in the Ninth Circuit awarded attorneys' fees of more than 28% of a settlement fund in

14    securities class actions. *See, e.g.*, *Davis et al. v. Yelp, Inc. et al.*, No. 3:18-cv-00400-EMC, slip op. at

15    3 (N.D. Cal. Jan. 27, 2023) (awarding counsel 33.3% of $22,250,000 settlement fund); *Fleming et al.*

16    *v. Impax Lab'ys Inc. et al.*, No. 4:16-cv-06557-HSG, slip op. at 6 (N.D. Cal. July 15, 2022) (awarding

17    counsel 30% of $33,000,000 settlement fund); *In re Merit Med. Sys., Inc. Sec. Litig.*, No. 8:19-cv-

18    02326-DOC, slip op. at 2 (C.D. Cal. Apr. 15, 2022) (awarding counsel 30% of $18,250,000 settlement

19    fund); *In re Banc of Cal. Secs. Litig.*, 2020 U.S. Dist. LEXIS 48778, at *4-5 (C.D. Cal. 2020)

20    (awarding 33% of $19.75 million settlement fund); *In re Tezos Sec. Litig.*, No. 3:17-cv-06779-RS, slip

21    op. at 2 (N.D. Cal. Aug. 28, 2020) (awarding 33.33% of $25 million settlement fund).

22          This Court has also previously awarded 30% of a settlement fund in securities class actions,

23    including in a recent case. *See, e.g.*, *Roberts et al. v. Zuora, Inc. et al.*, No. 3:19-cv-03422-SI, slip op.

24    at 2 (N.D. Cal. Jan. 16, 2024) (awarding 30% of $75,500,000 settlement fund in securities class action

25    to lead counsel as attorneys' fees); *In re Gilead Scis. Sec. Litig.*, No. 3:03-cv-04999-SI, slip op. at 1

26    (N.D. Cal. Nov. 5, 2010) (awarding counsel 30% of $8,250,000 settlement fund); *In re CV*

27

28

NOTICE & MOTION FOR AN AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND
LEAD PLAINTIFF'S REIMBURSEMENT OF
REASONABLE FEES, AND MEMORANDUM IN
SUPPORT THEREOF

14

CASE NO. 3:21-CV-01486-SI

*Therapeutics, Inc. Sec. Litig.*, No. 3:03-cv-03709-SI, slip op. at 1 (N.D. Cal. Apr. 4, 2007) (awarding counsel 30% of $13,000,000 settlement fund). Notably, the 14.5% recovery of maximum damages in this case exceeds the percentage of maximum damages recovered in several of the aforementioned cases.[8] In sum, Lead Counsel's fee request is in line with other comparable complex cases and should be approved.

### f.   The reaction of the Class supports the requested fee

"The existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) (cleaned up). While Class Members have until July 26, 2024, to object to the requested fee and expenses, as of July 8, 2024, not a single objection has been received by Lead Counsel or filed with the Court. Abadou Decl. ¶ 226. "The lack of objection from any Class Member supports the attorneys' fees award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007); *Omnivision*, 559 F. Supp. 2d at 1048 (same).

Lead Plaintiff Diane Smith and her husband William Smith, both of whom took an active role in the Action and closely supervised the work of Lead Counsel, also support the approval of the requested fee based on the risks undertaken and the result obtained. *See* Smith Decl. ¶ 22; Abadou Decl. ¶ 225. This endorsement of the fee request further supports its approval. *See, e.g.*, *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom [have] great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request."); *Ambrosino v. Home Depot U.S.A., Inc.*, 2014 U.S. Dist. LEXIS 111109, at *6 (S.D. Cal. Aug. 11, 2014) (approving requested fee and noting that

---

[8]   See, *e.g.*, *Davis et al. v. Yelp, Inc. et al.*, No. 3:18-cv-00400-EMC, slip op. at 16 (N.D. Cal. Apr. 21, 2022) (recovered 12.4% of maximum damages); *Fleming et al. v. Impax Lab'ys Inc. et al.*, No. 4:16-cv-06557-HSG, slip op. at 21 (N.D. Cal. July 30, 2021) (recovered 12.5% of maximum damages); *In re Merit Med. Sys., Inc. Sec. Litig.*, No. 8:19-cv-02326-DOC, slip op. at 12 (C.D. Cal. Mar. 9, 2022) (recovered at a minimum 12% of maximum damages); *In re CV Therapeutics, Inc. Sec. Litig.*, No. 3:03-cv-03709-SI, slip op. at 8 (N.D. Cal. Mar. 2, 2007) (recovered 13.35% of maximum damages).

1  "each plaintiff has approved this amount").

2       Furthermore, Lead Plaintiff and her husband negotiated the 28% fee arrangement when they

3  retained KSF, before moving for appointment as Lead Plaintiffs in the Action. Abadou Decl. ¶ 10.

4  Because Lead Plaintiff agreed to the 28% fee *ex ante*, it is presumptively reasonable. *In re HPL Techs.,*

5  *Inc., Sec. Litig.*, 366 F. Supp. 2d 912, 916 (N.D. Cal. 2005) ("As a matter of first principles, the earlier

6  a fee arrangement is concluded between lead plaintiff and lead counsel, the more deference the court

7  should pay to that fee agreement. This is because fee agreements set early in the litigation — *ex ante*,

8  so to speak — are more likely than *ex post* fee agreements to be the product of market forces . . . .")

9  (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718-19 (7th Cir. 2001)); *see also In re Cendant*

10  *Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001) ("under the PSLRA, ***courts should accord a***

11  ***presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that***

12  ***was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel.***");

13  *In re Glob. Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 466 (S.D.N.Y. 2004) (according a

14  presumption of reasonableness to fee agreement which, like the one at issue here, "was negotiated at

15  arm's length before this litigation commenced, when each party operated behind a veil of ignorance

16  regarding how the case would ultimately fare.").

17       **4.**    **A Lodestar Cross-check Supports the Requested Fee**

18       Although not required, courts in this Circuit may cross-check the proposed fee award against

19  counsel's lodestar to ensure the reasonableness of a fee awarded under the percentage-of-recovery

20  method. *See In re Google Referrer Header Priv. Litig.*, 869 F.3d 737, 748 (9th Cir. 2017) ("Although

21  not required to do so, the district court took an extra step, cross-checking this result by using the

22  lodestar method"), *vacated on other grounds sub nom. Frank v. Gaos*, 139 S. Ct. 1041 (2019).

23       Under the lodestar method, courts routinely award positive multipliers to account for the

24  contingent nature or risk involved in the case and the quality of the attorneys' work. *See Vizcaino*, 290

25  F.3d at 1051. When the lodestar is used as a cross-check, "the focus is not on the 'necessity and

26  reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award

27
28

appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *see also Glass*, 331 F. App'x at 456.

Here, the lodestar method—whether used directly or as a "cross-check" on the percentage method—demonstrates the reasonableness of the requested fee. Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of approximately 10,900 hours to the prosecution of this Action. *See* Abadou Decl. ¶ 207. Lead Counsel believes the hours submitted in support of the lodestar calculation were necessary for the successful and efficient litigation of the case. *Id.* Lead Counsel utilized attorneys with the appropriate experience level to conduct the various tasks, including employing staff attorneys to review documents, assigning associates with drafting all briefs and preparing and responding to discovery, and having the partner conduct higher-level review of drafts of various briefs before filing. Abadou Decl. ¶¶ 204, 210.

For purposes of a lodestar cross-check, Lead Counsel is submitting a chart that includes a schedule breaking down its lodestar by individual, position, billing rate, and hours billed for specific tasks. [9] *See* Abadou Decl. Exhibit D.[10] The hourly rates utilized by Lead Counsel in calculating their lodestar range from: (i) $1100 to $1200 per hour for partners; (ii) $350 to $750 for other attorneys; and (iii) $300 to $400 per hour for paralegals and other support staff. *Id.* Such hourly rates are within the range of reasonable rates for attorneys and staff working on sophisticated class action litigation in

---

[9]     For purposes of this fee request, Lead Counsel has only included time through July 1, 2024. *See* Abadou Decl. ¶ 207. Lead Counsel will continue to perform legal work on behalf of the Class should the Court approve the Settlement, including addressing inquiries and working with the Claims Administrator, Epiq Class Action and Claims Solutions, Inc., to ensure the smooth progression of claims processing and distribution of the Net Settlement Fund. *Id.* ¶ 208. No additional legal fees will be sought for this work. *Id.*

[10]     *See Northern District of California Procedural Guidance for Class Action Settlements*, Final Approval, § 2; *see also In re Apollo Grp. Secs. Litig.*, 2012 U.S. Dist. LEXIS 55622, at *26 n.2 (D. Ariz. 2012) ("an itemized statement of legal services is not necessary for an appropriate lodestar cross-check"); *In re Am. Apparel S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548, at *76 ("In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.").

NOTICE & MOTION FOR AN AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND
LEAD PLAINTIFF'S REIMBURSEMENT OF
REASONABLE FEES, AND MEMORANDUM IN
SUPPORT THEREOF

17

CASE NO. 3:21-CV-01486-SI

the Northern District of California. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 213045, at \*39-40 (N.D. Cal. 2018) (approving fee based on rates from \$650 to \$1,250 for partners or senior counsel and \$400 to \$650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 39115, at \*732 (N.D. Cal. 2017) (approving fee following lodestar cross-check calculated using "billing rates ranging from \$275 to \$1600 for partners, \$150 to \$790 for associates, and \$80 to \$490 for paralegals").

Based on current hourly rates, Lead Counsel's lodestar is \$6,800,000.[11] *See* Abadou Decl. ¶ 206. Thus, the 28% fee request (equal to \$7,700,000) yields a multiplier of 1.13. *See id.* As more fully explained in the Abadou Declaration, given the risk undertaken by Lead Counsel and the result achieved for the Class—14.5% recovery of the maximum total damages—a multiplier of 1.13 is reasonable here and is also on the low end of the range of lodestar multipliers that courts in the Ninth Circuit approve. *Vizcaino*, 290 F.3d at 1051 n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the 1.0 to 4.0 range and 54% in the 1.5 to 3.0 range); *In re Lyft Inc. Sec. Litig.*, 2023 U.S. Dist. LEXIS 137198, at \*38-39 (N.D. Cal. 2023) (approving 1.47 multiplier in securities case); *Vataj v. Johnson*, 2021 U.S. Dist. LEXIS 214678, at \*28 (N.D. Cal. 2021) (approving 2.5 multiplier in securities case). Since Lead Counsel will oversee the claims administration process and respond to shareholder inquiries, the multiplier will diminish before distribution of the Settlement Fund is complete, because Lead Counsel will not seek any additional compensation for this work. *See* Abadou Decl. ¶ 207.

In sum, Lead Counsel's requested fee award is reasonable, justified, and consistent with what courts in the Ninth Circuit have awarded counsel in cases like this, whether calculated as a percentage of the fund or as a multiple of Lead Counsel's lodestar. Further, the Lead Plaintiff fully supports Lead Counsel's fee request stating that "I approve KSF's request for an award of attorney's fees in the

---

[11]     Courts use current rather than historic rates to ensure that "attorneys in common fund cases [are] compensated for any delay in payment." *See Fischel v. Eq. Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002).

NOTICE & MOTION FOR AN AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND
LEAD PLAINTIFF'S REIMBURSEMENT OF
REASONABLE FEES, AND MEMORANDUM IN
SUPPORT THEREOF

18

CASE NO. 3:21-CV-01486-SI

1    amount of 28% of the Settlement Fund and find the request fair and reasonable considering the work

2    my attorneys performed, the litigation risks faced, and the substantial recovery obtained for the Class

3    in the Action. We believe KSF handled this Litigation in an efficient and ethical manner and zealously

4    represented us and the Class." *See* Smith Decl. at ¶ 22.

5    ## IV.    THE REQUESTED LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

6
7          "Class counsel is entitled to . . . reimbursement of litigation expenses from the common fund

     they created for the benefit of a class." *Hunt*, 2024 U.S. Dist. LEXIS 82465, at *19. In deciding which
8
     expenses are compensable in a common fund case, the appropriate analysis to apply is whether the
9
     particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See*
10
     *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would
11
     typically be billed to paying clients in non-contingency matters."); *Hefler*, 2018 U.S. Dist. LEXIS
12
     213045, at *16 ("An attorney is entitled to 'recover as part of the award of attorney's fees those out-
13
     of-pocket expenses that would normally be charged to a fee paying client.'") (quoting *Harris v.*
14
     *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).
15
           The expenses sought by Lead Counsel were required to prosecute the litigation and are of the
16
     type typically charged to paying clients. *See Destefano*, 2016 U.S. Dist. LEXIS 17196, at *74 ("courts
17
     throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying,
18
     printing, postage, court costs, research on online databases, experts and consultants, and reasonable
19
     travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses
20
     in non-contingent litigation."). From the start of the litigation, Lead Counsel was aware that they would
21
     not be reimbursed for expenses or receive fees without successful resolution of the case. *See* Abadou
22
     Decl. ¶ 229. Therefore, Lead Counsel minimized expenses when practicable without sacrificing the
23
     vigorous and efficient prosecution of the case. *Id.*
24
           In total, Lead Counsel incurred $314,393.56 in expenses in prosecuting this Action on behalf
25
     of the Class. *See* Abadou Decl. ¶ 215. The amount sought, as detailed in the Abadou Declaration, is
26
27
28

less than the $350,000 maximum amount published in the Class Notice, to which no Class Member has objected as of July 8, 2024. *Id*. ¶ 239. The vast majority of these expenses were for Lead Plaintiff's damages expert ($220,930.00), the mediator ($44,071.40), professional services ($16,362.82) and an e-discovery document management system ($13,912.74). *See* Abadou Decl. ¶¶ 231-36; Exhibit E. These expenses total $295,276.96 or approximately 94% of the total litigation expenses. *Id*. Courts routinely approve litigation expenses such as these, and there is no basis not to approve them here. *See In re Immune Response*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees").

## V.    LEAD PLAINTIFF AND HER HUSBAND SHOULD BE REIMBURSED THEIR REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. § 78u-4(a)(4)

"In the context of class action cases, incentive awards for the named representatives are discretionary but nevertheless 'fairly typical.'" *Brown v. China Integrated Energy*, 2016 U.S. Dist. LEXIS 204416, at *40 (C.D. Cal. 2016) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Incentive awards are designed 'to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'" *Id*. (quoting *Rodriguez*, 563 F.3d at 958-59).

> The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *see also Brown*, 2016 U.S. Dist. LEXIS 204416, at *41-42 (quoting *Van Vranken* and awarding $10,000 to each of two lead plaintiffs in securities class action based on *Van Vranken* factors).

NOTICE & MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND LEAD PLAINTIFF'S REIMBURSEMENT OF REASONABLE FEES, AND MEMORANDUM IN SUPPORT THEREOF

CASE NO. 3:21-CV-01486-SI

1     As part of its application for fees and costs, Lead Counsel also respectfully requests $20,000

2  for Lead Plaintiff Diane Smith, and her husband and former co-Lead Plaintiff William Smith, for their

3  representation of the Class. The PSLRA permits the Lead Plaintiff in this case, and indeed "any

4  representative party serving on behalf of a class[,]" to recoup litigation costs incurred while ensuring

5  that the Class was adequately represented. 15 U.S.C. § 78u-4(a)(4). Courts in this Circuit have

6  routinely granted such reimbursements to plaintiffs, including amounts greater than those requested

7  here. *See, e.g.*, *In re Immune Response*, 497 F. Supp. 2d at 1173-74 (approving $40,000 reimbursement

8  to lead plaintiff); *Khoja v. Orexigen Therapeutics*, 2021 U.S. Dist. LEXIS 230105, at *36 (S.D. Cal.

9  2021) (approving $9,230 reimbursement to lead plaintiff in case which settled before class

10  certification); *In re Wells Fargo & Co. S'holder Deriv. Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal.

11  2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (noting $25,000 reimbursement "may be appropriate

12  . . . where the class overall has greatly benefitted from the class representatives' efforts" and the award

13  represents an "insignificant percentage" of the recovery); *Ramsey v. MRV Commc'ns. Inc.*, 2010 U.S.

14  Dist. LEXIS 161816, at *31 (C.D. Cal. 2010) (granting reimbursement of $11,000 to lead plaintiff);

15  *In re Quintus Sec. Litig.*, 2006 U.S. Dist. LEXIS 99466, at *12-13 (N.D. Cal. 2006) (reimbursing

16  $12,000 to lead plaintiff). The requested reimbursements are also consistent with reimbursement

17  requests from lead plaintiffs granted by this Court. *See, e.g.*, *Zuora, Inc. et al.*, No. 3:19-cv-03422-SI,

18  slip op. at 2 (providing $25,000 reimbursement to lead plaintiff in securities class action); *In re CV

19  Therapeutics, Inc.*, 2007 U.S. Dist. LEXIS 98244, at *5 (reimbursing $26,000 to lead plaintiff for

20  expenses incurred in securities class action). And when, as here, a lead plaintiff was forced to withdraw

21  for medical reasons, courts have nevertheless granted the withdrawing lead plaintiff a reimbursement

22  for expenses they incurred while serving as lead plaintiff. *See, e.g.*, *Kasper et al. v. AAC Holdings,

23  Inc. et al.*, No. 3:15-CV-00923-JPM, slip op. at 5 (M.D. Tenn. June 11, 2018) (reimbursing $8,825 to

24  lead plaintiff who withdrew from consideration to serve as class representative for health reasons).[12]

25  _____

26  [12]     *See id.*, slip op. at 1 (Dec. 21, 2016) (withdrawing lead plaintiff, who was later reimbursed the
   sum of $8,225, as a proposed class representative "due to adverse health issues").

27  NOTICE & MOTION FOR AN AWARD OF                    21                    CASE NO. 3:21-CV-01486-SI
   ATTORNEYS' FEES, LITIGATION EXPENSES, AND
28  LEAD PLAINTIFF'S REIMBURSEMENT OF
   REASONABLE FEES, AND MEMORANDUM IN
   SUPPORT THEREOF

1       Consistent with the Northern District Guidelines, Lead Plaintiff has submitted a declaration

2  setting forth the time and effort spent monitoring the Action and directing Lead Counsel. Among other

3  things, Lead Plaintiff (and her husband, William Smith, before his withdrawal): (i) reviewed all three

4  related complaints prior to moving for appointment as lead plaintiff; (ii) provided trade confirmations

5  detailing their transactions in Velodyne securities during the Class Period; (iii) discussed with KSF

6  the six competing motions for appointment as lead plaintiff; (iv) oversaw KSF's preparation of the

7  Consolidated Complaint and the Consolidated Amended Complaint; (v) reviewed and discussed with

8  KSF both Motions to Dismiss filed by Defendants and Lead Plaintiffs' Oppositions thereto; (vi)

9  produced and reviewed written discovery responses including Lead Plaintiffs' Rule 26 Initial

10  Disclosures and Lead Plaintiffs' Responses And Objections To Defendants' Interrogatories and

11  Requests For Production; (viii) authorized KSF to retain damages expert Chad Coffman; (ix) prepared

12  and sat for depositions in association with the Motion for Class Certification; (x) reviewed all

13  important filings and Court orders; (xi) engaged in frequent communication with Lead Counsel

14  regarding the progress and status of the case, including its strengths and weaknesses, litigation

15  strategy, and key evidence uncovered during discovery; (xii) consulted with counsel regarding the

16  mediations and ultimately approved the Settlement; and (xiii) communicated with counsel regarding

17  the process for finalizing the Settlement. *See* Smith Decl. ¶¶ 3-20. These efforts required both Lead

18  Plaintiff Diane Smith and her husband William to dedicate substantial time—approximately 60

19  hours—to the Action. *Id*. ¶ 28.

20       In addition, the Smiths faced several ongoing personal difficulties—the second *Van Vranken*

21  factor—in serving as Lead Plaintiffs due to William Smith's quadriplegia and associated medical

22  complications. For William to review significant pleadings and other documents, Diane had to either

23  read the document to him or assist him by turning the pages of the document, because William cannot

24  do so independently due to his disability. *Id*. ¶¶ 4, 15. Dep. of Diane Smith ("D. Smith Dep."), ECF

25  No. 173-1, at 38:25-39:12; 96:11-13 ("Q: Does Mr. Smith use a computer? A: He does not have use

26  of his hands, so I would have to use the computer for him."); *see also* Dep. of William Smith ("W.

27
28

1    Smith Dep."), ECF No. 183-1, at 8:6-8 ("We understand that Ms. Smith is in the room to assist you,

2    to physically assist you during this deposition"). Diane had to juggle her duties as Lead Plaintiff with

3    those as her husband's sole caregiver. Smith Decl. ¶ 26. During her deposition, Diane had to take

4    breaks to ensure that William was safe and medically stable. *Id.* ¶ 14. William also needed to take

5    several breaks during his 1.3-hour deposition; his disability makes it hard for him to speak for long

6    periods of time, because breathing is difficult for him. *Id.* ¶ 15.

7              William also had several medical setbacks during his time serving as Lead Plaintiff, which

8    presented additional hardships for him to prepare and sit for a deposition. *Id.* ¶ 26; D. Smith Dep. at

9    30:17-31:6 (Diane testifying that William had a medical emergency the day before her deposition);

10   31:12-20 (Diane testifying that William was hospitalized with pneumonia a few months before her

11   deposition and had a weak speaking voice). In connection with William's decision to withdraw as

12   Lead Plaintiff, the Smiths had to consult with his physician to obtain advice detailing the extent of his

13   impairments and ability to give an oral deposition in this Action as they were concerned that, due to

14   his difficulty breathing, an extended deposition could threaten his health and safety. *See* Smith Decl.

15   ¶ 27; ECF No. 180-1. Indeed, the frequent difficulties defense counsel had in understanding William

16   during his deposition because of the weakness of his voice demonstrated that the Smiths' concerns

17   were well-founded. *See* Smith Decl. ¶ 27; W. Smith Dep. 9:8-20; 10:22-11:5; 16:10-18; 22:15-22;

18   23:14-21. Despite these limitations, Mr. Smith fully participated in the litigation, until he withdrew as

19   Lead Plaintiff on May 3, 2023 (ECF No. 174) and continued to track the progress of the case thereafter.

20   Smith Decl. ¶ 18; W. Smith Dep. 27:4-6 ("Diane and I are as one. Diane makes decisions; I render my

21   advice. We're in it together.").

22             The Notice advises Class Members that "Lead Counsel also will apply for . . . the reasonable

23   costs and expenses of Lead Plaintiff directly related to her representation of the Class pursuant to 15

24   U.S.C § 78u-4(a)(4) in an amount not to exceed $20,000." ECF No. 220-3, at ¶ 5. As of July 8, 2024,

25   there have been no objections to this request. Abadou Decl. ¶ 179. For the reasons stated herein, the

26   amount sought here is reasonable and justified under the PSLRA and should be granted.

27
28

1

## VI.    CONCLUSION

2

For the foregoing reasons, Lead Counsel respectfully requests that the Court grant the Motion.

3      Dated: July 12, 2024                                    Respectfully submitted,

4                                                              **KAHN SWICK & FOTI, LLP**

5
                                                              By:_____*s/ Ramzi Abadou*_____
6                                                             Ramzi Abadou (SBN 222567)
                                                              KAHN SWICK & FOTI, LLP
7                                                             580 California Street, Suite 1200
                                                              San Francisco, California 94104
8                                                             Telephone: (415) 459-6900
                                                              Facsimile: (504) 455-1498
9                                                             ramzi.abadou@ksfcounsel.com

10
                                                              -and-
11
                                                              Alexander L. Burns
12                                                            (admitted *pro hac vice*)
                                                              James T. Fetter
13                                                            (admitted *pro hac vice*)
                                                              Alexandra Pratt
14                                                            (admitted *pro hac vice*)
                                                              KAHN SWICK & FOTI, LLC
15                                                            1100 Poydras Street, Suite 960
                                                              New Orleans, Louisiana 70163
16                                                            Telephone: (504) 455-1400
                                                              Facsimile: (504) 455-1498
17                                                            alexander.burns@ksfcounsel.com
                                                              james.fetter@ksfcounsel.com
18                                                            alexandra.pratt@ksfcounsel.com
19
20                                                            *Class Counsel and Counsel for*
                                                              *Class Representative, Diane Smith*
21

22

23

24

25

26

27                                                                 24

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

_____*s/ Ramzi Abadou*_____
RAMZI ABADOU

NOTICE & MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND LEAD PLAINTIFF'S REIMBURSEMENT OF REASONABLE FEES, AND MEMORANDUM IN SUPPORT THEREOF

25

CASE NO. 3:21-CV-01486-SI

## Mailing Information for a Case 3:21-cv-01486-SI Moradpour v. Velodyne Lidar, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com,Ashley.Errington@ksfcounsel.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **William Zachary Brenc**
  william.brenc@wilmerhale.com,william-brenc-3258@ecf.pacerpro.com,barbara.palomo@wilmerhale.com,whdocketing@wilmerhale.com

- **Alexander Louis Burns**
  alexander.burns@ksfcounsel.com

- **Robert Donoghue**
  robert.donoghue@wilmerhale.com

- **James Thomas Fetter**
  james.fetter@ksfcounsel.com

- **Noah Stephen Guiney**
  noah.guiney@wilmerhale.com,whdocketing@wilmerhale.com

- **Tamar Kaplan-Marans**
  tamar.kaplan-marans@wilmerhale.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Sarah E. Maciel**
  Sarah.Maciel@wilmerhale.com

- **Kevin Peter Muck**
  Kevin.Muck@wilmerhale.com,linda.burch@wilmerhale.com,whdocketing@wilmerhale.com,lindy.patrick@wilmerhale.com

- **Susan Samuels Muck**
  susan.muck@wilmerhale.com,whdocketing@wilmerhale.com,susan-muck-3159@ecf.pacerpro.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,tsayre@pomlaw.com,egoodman@pomlaw.com,jlopiano@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com

- **Ivan Panchenko**
  panchenkoiv@sec.gov

- **Alexandra Pratt**
  alexandra.pratt@ksfcounsel.com

- **Pavithra Rajesh**
  prajesh@glancylaw.com,pavithra-rajesh-9402@ecf.pacerpro.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Brian Jared Schall**
  brian@schallfirm.com

- **Joshua Aisen Vittor**
  joshua.vittor@wilmerhale.com,whdocketing@wilmerhale.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)