UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MEYSAM MORADPOUR, et al.,

Plaintiffs,

v.

VELODYNE LIDAR, INC., et al.,

Defendants.

Case No.  21-cv-01486-SI

**ORDER APPROVING DISTRIBUTION OF THE NET SETTLEMENT FUND**

Re: Dkt. No. 242

Court-appointed Lead Plaintiff and Class Representative Diane Smith ("Plaintiff") moved this Court for an order approving distribution of the Net Settlement Fund in the above-captioned securities class action ("Action"). Having reviewed and considered all the materials and arguments submitted in support of the Motion, including the supporting Memorandum of Points and Authorities and the Declaration of Michael McGuinness in Support of Lead Plaintiff's Motion for Approval of Distribution of the Net Settlement Fund (the "McGuinness Declaration") submitted on behalf of the Court-approved Claims Administrator Epiq Class Action and Claims Solutions, Inc. ("Epiq" or "Claims Administrator").

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation of Settlement dated as of March 6, 2024 (ECF No. 220-3) ("Stipulation"), the Notice of Pendency and Proposed Settlement ("Notice"), and the McGuinness Declaration, and all terms used in this Order shall have the same meanings as defined in the Stipulation, Notice, and the McGuinness Declaration.

2.      This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members.

3.      Plaintiff's plan for distribution of the Net Settlement Fund to Authorized Claimants

is **APPROVED**. Accordingly:

(a)     The administrative determinations of the Court-approved Claims Administrator, Epiq, to accept the Timely Eligible Claims set forth in Exhibit B-1 to the McGuinness Declaration and the Late But Otherwise Eligible Claims set forth in Exhibit B-2 to the McGuinness Declaration are adopted.

(b)     The Claims Administrator's administrative determinations to reject the Rejected Claims, as set forth in Exhibit B-3 to the McGuinness Declaration are adopted.

(c)     Epiq is directed to conduct the Initial Distribution of the Net Settlement Fund after deducting all payments previously allowed, payments approved by this Order, and any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees.  Specifically, as set forth in ¶ 45 of the McGuinness Declaration:

(1)     Epiq will calculate each Authorized Claimant's pro rata share of the Net Settlement Fund based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants;

(2)     Epiq will eliminate from the Initial Distribution any Authorized Claimant whose pro rata share of the Net Settlement Fund calculates to less than $10.00. These Claimants will not receive any payment from the Net Settlement Fund and will be so notified by Epiq;

(3)     After eliminating Claimants who would have received less than $10.00, Epiq will then recalculate the pro rata share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more pursuant to the calculations described in subparagraph ¶ 45(a)(ii) in the McGuinness Declaration. An Authorized Claimant's pro rata share of the Net Settlement Fund (as recalculated in the previous sentence) is the Authorized Claimant's "Distribution

United States District Court
Northern District of California

Amount"

(4)   To the extent monies remain after the Initial Distribution, the remainder, if determined by Lead Counsel and Epiq to be cost-effective, will be distributed in a Second Distribution described in subparagraph (f) below.

(d)   To encourage Authorized Claimants to cash their checks promptly, Plaintiff proposes that all distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED 120 DAYS AFTER ISSUE DATE." Lead Counsel and Epiq are authorized to take appropriate action to locate and contact Authorized Claimants who have not cashed their checks within said time as detailed in ¶ 45(a)(iv) of the McGuinness Declaration.

(e)   Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or on the conditions set forth in ¶ 45(a)(iv) of the McGuinness Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be distributed to other Authorized Claimants in the Second Distribution. Similarly, Authorized Claimants who do not cash their distribution checks in the Second Distribution or subsequent distributions, should such distributions occur, within the time allotted or on the conditions set forth in ¶ 45(a)(iv) of the McGuinness Declaration will irrevocably forfeit any further recovery from the Net Settlement Fund.

(f)   After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than nine (9) months after the Initial Distribution, Epiq will, after consulting with Lead Counsel and if it is cost-effective to do so, conduct the Second Distribution, in which any amount remaining in the Net Settlement Fund, after deducting any unpaid fees and expenses incurred, will be distributed to all Authorized

United States District Court
Northern District of California

3

United States District Court
Northern District of California

Claimants (other than Claims Paid in Full) who cashed their Initial Distribution check and are entitled to receive at least $10.00 from the Second Distribution based on their pro rata shares of the funds remaining in the Net Settlement Fund. If any funds remain in the Net Settlement Fund after the Second Distribution, and if cost-effective, subsequent distributions will take place.

(g) When Lead Counsel, in consultation with Epiq, determines that further distribution of the funds remaining in the Net Settlement Fund is not cost-effective, if sufficient funds remain to warrant the processing of Post-Distribution and Late-Adjusted Claims, Epiq will process those Claims. Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an upward adjustment was received after July 14, 2025, may be paid in accordance with subparagraph (h) below. If any funds remain in the Net Settlement Fund after payment of these Claims and unpaid fees or expenses, the remaining funds will, **after Court approval,** be contributed to Mothers Against Drunk Driving ("MADD") **if approved by the Court.**

(h) No new Claims received after July 14, 2025 may be accepted, and no further adjustments to Claims received on or before July 14, 2025, that would result in an increased Recognized Claim may be made for any reason, subject to the following exception. If Claims are received after July 14, 2025 or adjusted after July 14, 2025, that would have been eligible for payment or additional payment under the Plan of Allocation if timely received, then, at the time that Lead Counsel, in consultation with Epiq, determines that further distribution is not cost-effective as provided in subparagraph (e) above, and after deducting any additional fees and expenses incurred in connection with administering the Settlement (to the extent Epiq's fees do not exceed $250,000, in total) and after deducting any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, such Claimants, at the

4

discretion of Lead Counsel, may be paid their distribution amounts or additional distribution amounts on a pro rata basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent possible.

4. The Court finds that the administration of the Settlement and the proposed distribution of the Net Settlement Fund comply with the terms of the Stipulation and Plan of Allocation approved by this Court and that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of that involvement, and all Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

5. All of Epiq's fees and expenses incurred in the administration of the Settlement, up to $275,000, in total, are approved, and Lead Counsel is directed to pay the outstanding balance of $189,484.35 out of the Settlement Fund to Epiq.

6. Unless otherwise ordered by the Court, one (1) year after the Initial Distribution, or the Second Distribution if it occurs, Epiq will destroy the paper copies of the Claim Forms and all supporting documentation, and one (1) year after all funds have been distributed, Epiq will destroy electronic copies of the same.

7. This Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and any other and further relief that this Court deems appropriate.

8. Lead Counsel shall file a Post-Distribution Accounting at an appropriate time, as directed by the Northern District of California's Procedural Guidance for Class Action Settlements. See https://cand.uscourts.gov/forms/procedural-guidance-for-class-actionsettlements.

United States District Court
Northern District of California

5

**IT IS SO ORDERED**.

Dated: November 26, 2025

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California